UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                                  :

UNITED STATES OF AMERICA,        :
                                                                  : ECF CASE

              Plaintiff,           : 12 Cr. 125 (JSR)

      vs.                           :

DOUG WHITMAN,               :

            Defendant.         :
-------------------------------------------------------------- X

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## DOUGLAS F. WHITMAN'S MOTION TO DISMISS

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice* )
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND ........................................................................................................................1

ARGUMENT...............................................................................................................................2

    I.    THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE THAT MR. WHITMAN KNEW OF ANY PERSONAL BENEFIT ALLEGEDLY PROVIDED TO CORPORATE INSIDERS. .................3

CONCLUSION..........................................................................................................................12

DC1 2393868v.7

## **TABLE OF AUTHORITIES**

**Page**

**CASES**

*Almendarez-Torres v. United States*,
   523 U.S. 224 (1998) .................................................................................................................. 9

*Dirks v. SEC*,
   463 U.S. 646 (1983) ........................................................................................................ *passim*

*Ingram v. United States*,
   360 U.S. 672 (1959) ................................................................................................................. 4

*Russell v. United States*,
   369 U.S. 749 (1962) ............................................................................................................... 11

*SEC v. Adler*,
   137 F.3d 1325 (11th Cir. 1998) ............................................................................................... 6

*SEC v. Anton*,
   No. 06 Civ. 2274, 2009 WL 1109324 (E.D. Pa. Apr. 23, 2009) ............................................. 6

*SEC v. Maxwell*,
   341 F. Supp. 2d 941 (S.D. Ohio 2004) ............................................................................ 6, 7, 8

*SEC v. Rorech*,
   720 F. Supp. 2d 367 (S.D.N.Y. 2010) .................................................................................. 6, 7

*Stirone v. United States*,
   361 U.S. 212 (1960) ............................................................................................................... 10

*United States v. Berlin*,
   472 F.2d 1002 (2d Cir. 1973) .................................................................................................. 9

*United States v. Cassese*,
   428 F.3d 92 (2d Cir. 2005) ...................................................................................................... 3

*United States v. Du Bo*,
   186 F.3d 1177 (9th Cir. 1999) ................................................................................................. 9

*United States v. Edelman*,
   No. 06 Cr. 2, 2006 WL 1148701 (S.D.N.Y. Apr. 24, 2006) .................................................... 7

*United States v. Jackson*,
   327 F.3d 273 (4th Cir. 2003) ................................................................................................. 10

*United States v. Kaiser*,
    609 F.3d 556 (2d Cir. 2010).................................................................................................. 5

*United States v. Keith*,
    605 F.2d 462 (9th Cir. 1979) .............................................................................................. 11

*United States v. Libera*,
    989 F.2d 596 (2d Cir. 1993) ..................................................................................................7

*United States v. O'Hagan*,
    521 U.S. 642 (1997)......................................................................................................... 3, 4

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000)................................................................................................. 11

*United States v. Rajaratnam*,
    802 F. Supp. 2d 491 (S.D.N.Y. 2011)............................................................................... 4, 7

*United States v. Seeger*,
    303 F.2d 478 (2d Cir. 1962)................................................................................................. 9

*United States v. Thompson*,
    356 F.2d 216 (2d Cir. 1965)................................................................................................. 9

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994)............................................................................................................... 5

## STATUTES, REGULATIONS, AND RULES

15 U.S.C. § 78ff(a)....................................................................................................................... 3

17 C.F.R. pt. 243 .......................................................................................................................... 8

Fed. R. Crim. P. 12(b) ................................................................................................................. 1

## OTHER AUTHORITIES

Model Penal Code § 2.02(1) ........................................................................................................ 5

1 Wayne R. LaFave, *Substantive Criminal Law* (2d ed. 2003) ...................................................... 5

2 Leonard B. Sand et al., *Modern Federal Jury Instructions-Criminal* (2011).............................. 4

1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* (4th ed.
    2008) .................................................................................................................................... 9

Defendant Douglas F. Whitman respectfully submits this memorandum of law in support of his motion pursuant to Federal Rule of Criminal Procedure 12(b) to dismiss the indictment. The indictment fails to allege an essential element of the crimes with which Mr. Whitman is charged: that Mr. Whitman knew that personal benefits were allegedly provided to company insiders in return for the information at issue in this case.

BACKGROUND

On February 8, 2012, a grand jury in the Southern District of New York returned an indictment against Mr. Whitman charging him with two counts of conspiracy to commit securities fraud and two counts of securities fraud. *See* Indictment, No. 12 Cr. 125 (S.D.N.Y. filed Feb. 8, 2012), ¶¶ 9-10, 24-25, 29 (Exhibit A to the Declaration of David M. Rody in Support of Defendant Douglas F. Whitman's Motion to Dismiss, dated April 13, 2012 ("Rody Decl.")). In Count One of the indictment, the prosecution alleges that Mr. Whitman, Karl Motey ("Motey"), and others conspired to trade in the securities of Marvell Technology Group, Ltd. ("Marvell") on the basis of material, nonpublic information. *Id.* ¶¶ 4-12. The indictment alleges that certain unnamed Marvell employees "tipped" Motey with inside information, and that Motey, in turn, passed that information to Mr. Whitman, making Mr. Whitman what is sometimes referred to as a "remote tippee." *Id.* ¶¶ 5-6. The prosecution further alleges that the Marvell insiders disclosed information to Motey "in violation of their duties of trust and confidence" they owed to Marvell and "for personal benefit." *Id.* ¶ 5. The indictment does not specify what "personal benefit" was allegedly provided to the Marvell insiders, or by whom. It also does not allege that Mr. Whitman, or even Motey, knew about any such benefit.

In Count Two of the indictment, the indictment alleges that Mr. Whitman, Roomy Khan ("Khan"), and others conspired to trade in the securities of Polycom, Inc. ("Polycom") and Google, Inc. ("Google") on the basis of material, nonpublic information. *Id.* ¶¶ 13-27.

1

Regarding Polycom, the indictment alleges that an unnamed employee at Polycom, an insider, furnished Khan with inside information, and that Khan (like Motey, functioning as an intermediary) passed that information to Mr. Whitman as a remote tippee. *Id.* ¶¶ 16-18. Regarding Google, the indictment alleges that an unnamed employee at an outside investor relations firm that provided services to Google "tipped" Khan, and Khan passed that information to Mr. Whitman. *Id.* ¶¶ 20-21. Similar to Count One, Count Two also alleges that the Polycom and Google insiders disclosed information to Khan "in violation of . . . duties of trust and confidence" they owed to their employers and "for personal benefit." *Id.* ¶¶ 17, 20. Again, however, the indictment does not specify the "personal benefit" allegedly provided or who provided it, and it does not allege that Mr. Whitman, or even Khan, knew about such a benefit.

Counts Three and Four of the indictment contain substantive securities fraud charges based on the exact same conduct and factual allegations underlying the conspiracy charge in Count Two: In Count Three, the prosecution alleges that Mr. Whitman's January 2006 trades in Polycom amounted to insider trading, *id.* ¶ 29, and in Count Four, the prosecution alleges that his July 2007 trades in Google constituted insider trading. *Id.*

ARGUMENT

To convict Mr. Whitman of insider trading, the prosecution must, among other things, allege and prove beyond a reasonable doubt that Mr. Whitman, an alleged remote tippee, knew that the Marvell, Polycom, and Google insiders disclosed inside information "for their personal gain." *Dirks v. SEC,* 463 U.S. 646, 659 (1983). The personal benefit requirement is a critical element of these offenses: it helps to define insider trading as a species of corruption, and separates it from a wide array of non-criminal information-gathering that is essential to our capital markets and go on every day among analysts, traders, and other market participants. *See id.* at 658-59. Absent knowledge that a corporate insider breached legal duties and divulged

2

inside information in return for some personal benefit, an insider trading defendant such as Mr. Whitman could be morally innocent, simply believing that information relayed by intermediaries such as Motey or Khan was accidentally or carelessly divulged by their purported sources within a company, or was otherwise legitimately obtained by the intermediaries. As the Supreme Court has noted, "[a]ll disclosures of confidential corporate information are not inconsistent with the duty insiders owe to shareholders." *Id.* at 661-62. Whatever ordinary securities market "grapevine" behavior may be, it is not a federal crime. The indictment, however, nowhere alleges that Mr. Whitman had any knowledge of any personal benefit allegedly provided to the insiders who supposedly tipped Motey or Khan. Because Mr. Whitman's knowledge of the alleged insiders' personal benefit is an essential element of the crimes charged, the indictment is defective and should be dismissed.

I. THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE THAT MR. WHITMAN KNEW OF ANY PERSONAL BENEFIT ALLEGEDLY PROVIDED TO CORPORATE INSIDERS.

As with most federal felonies, specific intent is an essential element of insider trading. The Securities Exchange Act of 1934 ("Exchange Act") requires the prosecution to prove beyond a reasonable doubt that any criminal violation of the Act or rules promulgated thereunder was done "willfully." 15 U.S.C. § 78ff(a); *see United States v. O'Hagan*, 521 U.S. 642, 665-66 (1997) ("To establish a criminal violation of Rule 10b-5, the Government must prove that a person 'willfully' violated the provision."). The Second Circuit has defined willfulness in this context "as 'a realization on the defendant's part that he was doing a wrongful act' under the securities laws." *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) (quoting *United States v. Peltz*, 433 F.2d 48, 55 (2d Cir. 1970)).[1] In other words, a defendant in an insider trading

---

[1] The *mens rea* requirement applies equally to the two substantive counts of securities fraud and the two conspiracy counts in the indictment. This is because "'[c]onspiracy to commit a

3

action must know and intend for his conduct to be wrongful; good faith is a complete defense. *See* 2 Leonard B. Sand et al., *Modern Federal Jury Instructions-Criminal* § 40.01, Instruction No. 40-14 (2011); *see also* Jury Charge, Trial Tr. at 5625, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), (S.D.N.Y. filed Apr. 25, 2011) ("Since an essential element of the crime charged is intent to defraud it follows that good faith on the part of the defendant is a complete defense to a charge of securities fraud.") (Rody Decl. Exh. B).

A primary purpose of the *mens rea* requirement in insider trading cases is to protect a wide variety of innocent and socially useful market conduct from being prosecuted, and thereby chilled. *See O'Hagan*, 521 U.S. at 666 ("[T]he [Exchange Act's] 'requirement of the presence of culpable intent as a necessary element of the offense does much to destroy any force in the argument that application of the [statute]' . . . is unjust.") (third alteration in original) (quoting *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 342 (1952)); *Dirks*, 463 U.S. at 659-60. Such protection is particularly important here, because the Supreme Court has stated that it is perfectly legal, and even necessary, for market participants to "ferret out and analyze information" that is obtained "by meeting with and questioning corporate officers and others who are insiders." *Dirks*, 463 U.S. at 658 (internal quotation marks omitted). Indeed, such information-gathering forms the basis for "judgments as to the market worth of a corporation's securities," and facilitates the efficient functioning of a "healthy market." *Id.* at 658-59.

Without strict enforcement of pleading and proof requirements for *mens rea* in insider trading actions, a market participant could be convicted for gathering information that he believed to be nothing more than gossip, speculation, or informed prediction. Worse yet, absent allegations concerning the requisite knowledge, a market participant could be convicted on the

---

particular substantive offense cannot exist without *at least* the degree of criminal intent necessary for the substantive offense itself.'" *Ingram v. United States*, 360 U.S. 672, 678 (1959).

4

basis of information that he believed flowed legitimately, or as a result of a mere mistake or slip of the tongue, from an insider. *See id.*; *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010) (noting that "insider trading does not necessarily involve deception, and it is easy to imagine an insider trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful").

This is precisely why the Supreme Court in *Dirks* refused to hold that insider trading is committed "solely because a person knowingly receives material nonpublic information from an insider and trades on it." *Dirks*, 463 U.S. at 658. A trader must know more than that before he commits a felony. Culpable knowledge that an insider breached legal duties to obtain a personal benefit is the critical missing piece: it is what separates the criminal from the ordinary trader.

Establishing such knowledge on the part of the defendant is thus a vital element of the prosecution's proof in an insider trading case. As a general matter, when a criminal statute requires knowledge, that knowledge must embrace each and every essential element of the offense, particularly where, as with insider trading, the statute at issue risks criminalizing otherwise innocent conduct. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (noting that "the presumption in favor of a scienter requirement should apply to each of the statutory elements that criminalize otherwise innocent conduct"); *see generally* Model Penal Code § 2.02(1) (stating that "a person is not guilty of an offense unless he acted" with the required mental state "with respect to each material element of the offense"); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.1, at 338 n.20 (2d ed. 2003) (noting that an essential or material element is "an element that does not relate exclusively to the statue of limitations, jurisdiction, venue, or to any other matter similarly unconnected with . . . the harm or evil . . . sought to be prevented by the law defining the offense"). That the personal benefit requirement

5

is an essential element of the insider trading offense has been clear at least since the Supreme Court's decision in *Dirks*. *See Dirks*, 463 U.S. at 659-64. There, the Court said that in tip cases, personal benefit functions as "the test" to enable the tippee (or a jury or judge) to determine whether information was passed along properly or improperly: if the insider who provided a tip "personally will benefit, directly or indirectly, from his disclosure," then there might be insider trading. *Id.* at 662. If, on the other hand, "there is no evidence [the insider] received a personal benefit from the alleged disclosure, there can be no insider trading violation." *SEC v. Anton*, No. 06 Civ. 2274, 2009 WL 1109324, at *9 (E.D. Pa. Apr. 23, 2009).

In *Dirks* and subsequent cases, the Supreme Court and lower federal courts have recognized the importance of personal benefit as an essential confirmatory marker of other critical elements of the insider trading offense, including an insider's breach of legal duty; the material, nonpublic nature of the information being passed; or the fraudulent intent of the defendant. *See, e.g., Dirks*, 463 U.S. at 662; *SEC v. Adler*, 137 F.3d 1325, 1333-34 (11th Cir. 1998) (noting that "the *Dirks* Court's holding that an inside tipper must gain some personal advantage in order for an outside tippee to be liable for trading on material nonpublic information, suggests that knowing possession of material nonpublic information at the time of trading" is not enough to establish an insider trading violation, because personal benefit focuses the inquiry on "fraud, deception, and manipulation"); *SEC v. Maxwell*, 341 F. Supp. 2d 941, 947-50 (S.D. Ohio 2004) (recognizing that the utility of personal benefit in analyzing the separate element of an insider's breach of fiduciary duty). But given its centrality to the overall scheme of tippee liability, it has become clear in the almost thirty years since *Dirks* was decided that personal benefit is a separate and independent requirement of the government's proof. *See, e.g., SEC v. Rorech*, 720 F. Supp. 367, 373, 416 (S.D.N.Y. 2010); *Anton*, 2009 WL 1109324, at *9;

6

*Maxwell*, 341 F. Supp. at 947.[2]  This Court's recent jury instructions clearly reflect this requirement.  *See United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011) (Holwell, J.) (holding that "'knowledge of *each element* [of the insider trading crime], including the personal benefit'" is required for conviction) (quoting *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984)); *see also* Jury Charge, Trial Tr. at 5623, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH) (S.D.N.Y. filed Apr. 25, 2011) ("To meet its burden of establishing an insider trading scheme, . . . . [t]he government must show that [the defendant] knew that the information was material, non-public information that if disclosed by an insider would directly or indirectly obtain some personal benefit from the disclosure.") (Rody Decl. Exh. B).

---

[2] Although the Second Circuit earlier declined to decide whether the personal benefit requirement applied to misappropriation cases, it did so in a case where the prosecution had, in fact, proved that the insider obtained a personal benefit.  *See United States v. Libera*, 989 F.2d 596, 599 (2d Cir. 1993) (the tippee paid the tipper weekly in cash for advance copies of the Inside Wall Street column in *Business Week*).  And because the logic of the personal benefit requirement applies equally if not more compellingly in misappropriation cases, numerous courts, including this one, have subsequently had little difficulty concluding that personal benefit is an element of the offense under either the classical or misappropriation theories.  *See, e.g.*, *Rorech*, 720 F. Supp. 2d at 416 (holding that although the tippee purchased $10 million in bonds from the tipper, which would affect the tipper's bonus, the purchase was not the "quantifiable or direct financial benefit" that would support an insider-trading charge); *United States v. Edelman*, No. 06 Cr. 002 (RWS), 2006 WL 1148701, at *4 (S.D.N.Y. Apr. 24, 2006) (citing personal benefit as an element of misappropriation while sentencing a defendant).  Several courts, including this one, have recently instructed juries accordingly, at the request of the government.  *See, e.g.,* The Court's Instructions of Law to the Jury, at 12, *United States v. Jiau*, No. 11 Cr. 161 (JSR) (S.D.N.Y. filed June 17, 2011) (Dkt. No. 95) (Rody Decl. Exh. C); and Government's Requests to Charge, at 30, *United States v. Jiau*, No. 11 Cr. 161 (JSR) (S.D.N.Y. filed May 25, 2011) (Dkt. No. 84) ("In addition, the government must establish that the tipper personally benefitted in some way, directly or indirectly, from disclosing material nonpublic information.") (Rody Decl. Exh. D); *see also* Jury Charge, Trial Tr. at 5622, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH) (S.D.N.Y. filed Apr. 25, 2011) ("The government must also prove beyond a reasonable doubt that the insider who disclosed the information personally benefitted in some way, directly or indirectly, from disclosing that information.") (Rody Decl. Exh. B); and Government's Requests to Charge, at 36, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH) (S.D.N.Y. filed Feb. 2, 2011) (Dkt. No. 187) ("Request No. 21, Securities Fraud:  First Element – Scheme or Artifice to Defraud – Benefit.") (Rody Decl. Exh. E).

Requiring knowledge of the personal benefit element of an insider trading violation is especially important in a case like this one. For a fund manager such as Mr. Whitman who retains and pays third-party researchers and analysts such as Motey,[3] it is no exaggeration to say that it is the red line that separates criminal from innocent conduct, and allows the manager to know when his third-party researchers or other intermediaries have obtained information in ways that make it unlawful for him trade. *See Dirks*, 463 U.S. at 662-63. To illustrate the point, consider two hypothetical scenarios. In the first, Motey reports back to Mr. Whitman that, while at a local Starbucks, he has run into an old friend who works at a technology company and learned information about the company while chatting with his friend in line. In the second, Motey reports that he obtained the same information by giving his friend $10,000 in cash.

In the first scenario, Motey has simply gotten lucky, and so has Mr. Whitman: the insider made a mistake and disseminated information into the marketplace that he should not have. Mr. Whitman and his investors are the beneficiaries, because Mr. Whitman has, through his contract researcher, kept his ear close to the ground. That error by the insider may have regulatory or other legal consequences for him or his employer, such as a potential violation of Regulation FD, 17 C.F.R. pt. 243, but Mr. Whitman commits no crime when he trades. *See, e.g., Maxwell*, 341 F. Supp. at 948 (holding an executive who tipped his long-time barber not liable for insider trading because there was no benefit to the executive). Indeed, his trading is part of the process by which accurate price discovery occurs in the market. *See Dirks*, 463 U.S. at 658-59. In the second scenario, by contrast, Motey, the insider, and Mr. Whitman have all committed federal

---

[3] The work of such researchers and analysts is in substance the same as that of sell-side analysts who work for brokerage houses; fund managers such as Mr. Whitman often need to hire this kind of help because their funds are not large enough to receive fresh research and priority treatment from the sell-side analysts who work for their brokers.

felonies if Mr. Whitman trades on the information he learns: the integrity of the market has been corrupted by an actual scheme to defraud.

Because personal benefit is an essential element of an insider trading violation, the indictment must allege that Mr. Whitman knew that the insiders who allegedly tipped Motey and Khan did so "for their personal gain." *Id.* at 659. The prosecution is required to allege "[e]very essential element of the offense" in the indictment. *See* 1 Charles Alan Wright & Andrew D. Leipold, *Federal Practice and Procedure* § 125, at 546 (4th ed. 2008); *see also Almendarez-Torres v. United States*, 523 U.S. 224, 228 (1998) ("An indictment must set forth each element of the crime that it charges."); *United States v. Seeger*, 303 F.2d 478, 482 (2d Cir. 1962) ("[I]t has been long recognized that 'every ingredient of which the offence is composed must be accurately and clearly alleged in the indictment.'") (quoting *United States v. Cook*, 84 U.S. (17 Wall.) 168, 174 (1872)). This includes all the critical components of knowledge that define the culpable mental state. *See, e.g.*, *United States v. Du Bo*, 186 F.3d 1177, 1180 (9th Cir. 1999) ("[Defendant's] conviction . . . must be overturned because his indictment lacks a necessary allegation of criminal intent."); *United States v. Berlin*, 472 F.2d 1002, 1006-09 (2d Cir. 1973) (holding an indictment deficient where it failed to allege the *mens rea* requirement for material elements of the statute at issue); *United States v. Thompson*, 356 F.2d 216, 226 (2d Cir. 1965) (holding that where the "essential element" of intent was omitted for a material part of the crime charged, "the indictment certainly was defective"). Here, that means the indictment must allege that Mr. Whitman knew that the insiders who allegedly tipped Motey and Khan did so for "a direct or indirect personal benefit from the disclosure, such as a pecuniary gain or a reputational benefit that will translate into future earnings." *Dirks,* 463 U.S. at 663.

9

The indictment omits this critical allegation. Without it, the indictment is defective: it does not charge Mr. Whitman with a crime. The indictment alleges that Mr. Whitman obtained information about Marvell, Polycom, and Google from intermediaries, who in turn obtained it from unnamed corporate insiders. But the indictment does not allege that he knew the most critical fact about his intermediaries' relationships with those insiders: that they were tainted with alleged impropriety through the provision of personal benefits. *See* Indictment, ¶¶ 5-6, 16-18, 20-21; *see also Dirks*, 463 U.S. at 662-63. If Mr. Whitman received material nonpublic information from Motey or Khan knowing only, as the indictment alleges, that they received it from insiders who breached their duties in disclosing it, there is nothing that would prevent Mr. Whitman from being convicted in the Starbucks scenario described above—that is, with a wholly innocent state of mind.

The government's failure to include allegations regarding Mr. Whitman's knowledge of the insiders' personal benefit is not a technical flaw that can be glossed over, ignored, or cured at trial. To permit the prosecution to attempt to cure this defect through amendment or jury instructions would vitiate Mr. Whitman's grand jury rights.

> [T]he Fifth Amendment right to be charged by an indictment containing every element of the offense is no less demanding than the Sixth Amendment right to have every element of the offense found by the jury. Under this symmetry between indictment and factfinding, the indictment, which serves as a notice-giving document, must charge each element on which the factfinder must focus to determine the defendant's innocence or guilt on the charge.

*United States v. Jackson*, 327 F.3d 273, 285 (4th Cir. 2003) (citation omitted); *accord Stirone v. United States*, 361 U.S. 212, 217 (1960) ("[A] court cannot permit a defendant to be tried on charges that are not made in the indictment against him."). Indeed, "[t]o allow the prosecutor or the court to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection" the grand jury

10

was designed to secure, because "a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell v. United States*, 369 U.S. 749, 770 (1962); *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (same); *United States v. Keith*, 605 F.2d 462, 464 (9th Cir. 1979) (same).

      Neither is the absence of this allegation in the indictment an accident:  it has not been alleged because it did not happen.  We expect the testimony at trial to establish that Mr. Whitman had conversations with Motey and Khan, and that at least some of those conversations included at least some discussion of the companies in question.[4]  What those conversations did not include was any suggestion that information being provided to Mr. Whitman by Motey or Khan had been procured by them unlawfully by giving improper personal benefits to insiders to induce them to breach legal duties.  Without this, the prosecution cannot prove its case against Mr. Whitman.  Because this evidence does not exist, it cannot have been presented to the grand jury, and the grand jury cannot have found probable cause to believe that this element of the offense was satisfied.  This critical gap in the evidence and in the grand jury's findings is reflected in the indictment it returned.  That indictment fails to allege an essential aspect of the knowledge element of the crimes charged and is therefore defective.

---

[4] Unlike certain other insider trading cases brought in the Southern District, the tape-recorded telephone calls in this case are not of the alleged "tip" conversations; indeed, in many instances, the calls in this case occurred years after the trades in question and make at best oblique reference to those trades.

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss the indictment against Mr. Whitman.

Dated: April 13, 2012

Respectfully submitted,

s/ David L. Anderson

David L. Anderson
(dlanderson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
(drody@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(bberenson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*