UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

UNITED STATES OF AMERICA,

                          Plaintiff,

                 vs.

DOUG WHITMAN,

                        Defendant.

------------------------------------------------------------ X

:
:
:   ECF CASE
:   Case No. 12 CR 125 (JSR)
:
:
:
:
:
:
:
:

## DECLARATION OF DAVID M. RODY IN SUPPORT OF
## DEFENDANT DOUGLAS F. WHITMAN'S MOTION TO DISMISS

David M. Rody, pursuant to 28 U.S.C. § 1746, declares as follows:

      1.     I am a partner at Sidley Austin LLP, attorneys for defendant Douglas F. Whitman, and respectfully submit this declaration in support of Mr. Whitman's Motion to Dismiss for the sole purpose of providing the Court with true copies of documents relevant to the disposition of that motion.

      2.     Attached as Exhibit A is a true copy of the indictment in *United States v. Whitman*, 12 Cr. 125 (JSR), dated February 8, 2012.

      3.     Attached as Exhibit B is a true copy of relevant pages of the transcript in *United States v. Rajaratnam*, 09 Cr. 1184 (RJH), dated April 25, 2011.

      4.     Attached as Exhibit C is a true copy of relevant pages of the Court's Instructions of Law to the Jury in *United States v. Jiau*, 11 Cr. 161 (JSR), dated June 17, 2011.

      5.     Attached as Exhibit D is a true copy of relevant pages of the Government's Requests to Charge in *United States v. Jiau*, S1 11 Cr. 161 (JSR), dated May 25, 2011.

6.      Attached as Exhibit E is a true copy of relevant pages of the Government's

Requests to Charge in *United States v. Rajaratnam*, S2 09 Cr. 1184 (RJH), dated February 2,

2011.

I declare under penalty of perjury that the foregoing is true and correct.


Dated:  New York, New York                    _____/s David M. Rody_____
        April 13, 2012                             David M. Rody

                                              SIDLEY AUSTIN LLP
                                              *Attorneys for Douglas F. Whitman*

                                              787 Seventh Avenue
                                              New York, New York 10019
                                              (212) 839-5300
                                              (212) 839-5599 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that I caused a true and correct copy of the foregoing Notice of Motion to

Dismiss and the accompanying Memorandum of Law to be served on April 13, 2012 via ECF

filing notification on the following counsel of record:

Jillian Berman
Christopher LaVigne
United States Attorney's Office
Southern District of New York
One Saint Andrew's Plaza
New York, NY 10007


Dated:  New York, New York              Respectfully submitted,
        April 13, 2012
                                         /s David M. Rody
                                        _____

                                        David M. Rody

                                        SIDLEY AUSTIN LLP
                                        *Attorneys for Douglas F. Whitman*

                                        787 Seventh Avenue
                                        New York, New York 10019
                                        (212) 839-5300
                                        (212) 839-5599 (fax)

3

NYI 8124067v.1

# EXHIBIT A

🗋 ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/8/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :          **INDICTMENT**
                                :
         -v.-                   :
                                :       **12 CRIM 125**
DOUG WHITMAN,                   :
                                :
              Defendant.        :
                                :
- - - - - - - - - - - - - - - X

## COUNT ONE

(Conspiracy to Commit Securities Fraud)

The Grand Jury charges:

### Relevant Entities and Individuals

1.   At all times relevant to this Indictment, Whitman
Capital, LLC ("Whitman Capital") operated as an investment
advisory firm located in California focusing on technology
companies.  Whitman Capital managed Whitman Partners, L.P.
("Whitman Partners"), a private partnership that invested in the
securities of various technology companies.

2.   At all times relevant to this Indictment, DOUG
WHITMAN, the defendant, served as the President of Whitman
Capital and the principal portfolio manager of Whitman Partners.

3.   At all times relevant to this Indictment, Karl
Motey ("Motey") worked as a research analyst and provided
services to hedge fund clients and others in the investment

1

**JUDGE PRESKA**

community.

### The Insider Trading Scheme

4.    From at least in or about 2007 through in or about
2009, DOUG WHITMAN, the defendant, Karl Motey, and others known
and unknown, participated in a scheme to defraud by disclosing
material, nonpublic information ("Inside Information") and/or
executing securities transactions based on Inside Information
pertaining to publicly traded companies, including Marvell
Technology Group, Ltd. ("Marvell"), a public company that trades
on the Nasdaq Stock Market.

5.    More specifically, Karl Motey obtained earnings,
revenue, and/or other material financial and business information
("Marvell Inside Information") from one or more individuals not
named as defendants herein who worked as employees at Marvell
("Marvell Inside Sources").  The Marvell Inside Sources disclosed
Marvell Inside Information to Motey in violation of their duties
of trust and confidence that they owed to Marvell and Marvell
shareholders and for personal benefit.

6.    After obtaining the Marvell Inside Information
from the Marvell Inside Sources, Motey provided the Marvell
Inside Information to DOUG WHITMAN, the defendant, and others.
WHITMAN knew that the Marvell Inside Information that Motey
provided to him was obtained in violation of duties of trust and

confidence that the Marvell Inside Sources owed to Marvell and
Marvell shareholders.

  7. After receiving the Marvell Inside Information
from Motey, DOUG WHITMAN, the defendant, caused securities
transactions to be executed based, at least in part, on the
Marvell Inside Information.

  8. In exchange for the Marvell Inside Information
provided by Motey, DOUG WHITMAN, the defendant, caused Whitman
Capital and/or Whitman Partners to pay Motey through soft dollar
payments.

### The Conspiracy

  9. From at least in or about 2007 through in or about
2009, in the Southern District of New York and elsewhere, DOUG
WHITMAN, the defendant, and others known and unknown, willfully
and knowingly, did combine, conspire, confederate and agree
together and with each other to commit offenses against the
United States, to wit, securities fraud, in violation of Title
15, United States Code, Sections 78j(b) & 78ff, and Title 17,
Code of Federal Regulations, Section 240.10b-5.

  10. It was a part and object of the conspiracy that
DOUG WHITMAN, the defendant, and others known and unknown,
willfully and knowingly, directly and indirectly, by the use of
the means and instrumentalities of interstate commerce, and of

the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

### Means and Methods

11.  Some of the means by which DOUG WHITMAN, the defendant, and his co-conspirators effectuated the fraudulent scheme were as follows:

a.  Karl Motey obtained Marvell Inside Information from Marvell Inside Sources.

b.  The Marvell Inside Sources provided the Marvell Inside Information to Motey in violation of their duties of trust and confidence.

4

c.   Motey communicated the Marvell Inside Information to WHITMAN, who executed securities transactions on the basis of the information.

### Overt Acts

12.   In furtherance of the conspiracy and to effect the illegal object thereof, DOUG WHITMAN, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   In or about May 2008, WHITMAN, using a prime brokerage firm located in New York, New York, caused the sale of call option contracts for Marvell stock on an exchange located in New York, New York.

b.   In or about October 2008, WHITMAN, using a prime brokerage firm located in New York, New York, caused the sale of Marvell stock.

c.   On or about November 3, 2008, WHITMAN, using a prime brokerage firm located in New York, New York, caused the sale of call option contracts for Marvell stock on an exchange located in New York, New York.

d.   In or about January 2009, WHITMAN, using a prime brokerage firm located in New York, New York, caused the sale of call option contracts for Marvell stock.

(Title 18, United States Code, Section 371.)

5

### COUNT TWO

(Conspiracy to Commit Securities Fraud)

The Grand Jury further charges:

13.   The allegations contained in paragraphs 1 and 2 are repeated and realleged as though fully set forth herein.

14.   At all times relevant to this Indictment, Roomy Khan ("Khan") worked in the hedge fund industry.

### The Insider Trading Scheme

15.   From at least in or about 2006 through in or about 2007, DOUG WHITMAN, the defendant, Roomy Khan, and others known and unknown, participated in a scheme to defraud by disclosing Inside Information and/or executing securities transactions based on Inside Information pertaining to publicly traded companies, including Polycom, Inc. ("Polycom") and Google, Inc. ("Google").

16.   More specifically, Roomy Khan obtained earnings and/or other material financial and business information relating to Polycom ("Polycom Inside Information") from an individual not named as a defendant herein ("Polycom Inside Source") who worked as an employee at Polycom, a public company that trades on the Nasdaq Stock Market.

17.   The Polycom Inside Source disclosed the Polycom Inside Information to Khan in violation of his duties of trust and confidence that he owed to Polycom and Polycom shareholders

and for personal benefit.

18. After obtaining the Polycom Inside Information from the Polycom Inside Source, Khan provided the Polycom Inside Information to DOUG WHITMAN, the defendant, and others. WHITMAN knew that the Polycom Inside Information that Khan provided to him was obtained in violation of duties of trust and confidence that the Polycom Inside Source owed to Polycom and Polycom shareholders.

19. After receiving the Polycom Inside Information from Khan, DOUG WHITMAN, the defendant, caused securities transactions to be executed based, at least in part, on the Polycom Inside Information.

20. In addition, Roomy Khan also obtained earnings and/or other material financial and business information relating to Google ("Google Inside Information") from an individual not named as a defendant herein ("Google Inside Source") who worked as an employee at a firm who contracted to provide investor relations services to Google, a public company that trades on the Nasdaq Stock Market. The Google Inside Source disclosed the Google Inside Information to Khan in violation of her duties of trust and confidence and for personal benefit.

21. After obtaining the Google Inside Information from the Google Inside Source, Khan provided the Google Inside

Information to DOUG WHITMAN, the defendant, and others.  WHITMAN knew that the Google Inside Information that Khan provided to him was obtained in violation of duties of trust and confidence.

22.  After receiving the Google Inside Information from Khan, DOUG WHITMAN, the defendant, caused securities transactions to be executed based, at least in part, on the Google Inside Information.

23.  By causing securities transactions to be executed based on the Polycom Inside Information and the Google Inside Information, DOUG WHITMAN, the defendant, earned illegal profits of more than $900,000.  Furthermore, in exchange for the Polycom Inside Information and the Google Inside Information provided by Khan, DOUG WHITMAN, the defendant, provided Khan with information about publicly traded technology companies.

## The Conspiracy

24.  From at least in or about 2006 through in or about 2007, in the Southern District of New York and elsewhere, DOUG WHITMAN, the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate and agree together and with each other to commit offenses against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) & 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

8

25.   It was a part and object of the conspiracy that DOUG WHITMAN, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of facilities of national securities exchanges, would and did use and employ, in connection with the purchase and sale of securities, manipulative and deceptive devices and contrivances in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material fact and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, all in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5.

## Means and Methods

26.   Some of the means by which DOUG WHITMAN, the defendant, and his co-conspirators effectuated the fraudulent scheme were as follows:

9

a.   Roomy Khan obtained Polycom Inside Information and Google Inside Information from the Polycom Inside Source and the Google Inside Source, respectively.

b.   The Polycom Inside Source and the Google Inside Source provided the Inside Information to Khan in violation of duties of trust and confidence and for personal benefit.

c.   Khan communicated the Inside Information to WHITMAN, who executed securities transactions on the basis of the Inside Information.

### Overt Acts

27.   In furtherance of the conspiracy and to effect the illegal object thereof, DOUG WHITMAN, the defendant, and his co-conspirators committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   On or about January 11, 2006, WHITMAN, from New York, New York, spoke over the telephone with Khan.

b.   On or about January 12, 2006, WHITMAN caused the purchase of approximately 32,100 shares of Polycom stock using a prime brokerage firm located in New York, New York.

c.   On or about July 19, 2007, using a prime brokerage firm located in New York, New York, WHITMAN caused the purchase of put option contracts in Google on an exchange located

10

in New York, New York.

(Title 18, United States Code, Section 371.)

## COUNTS THREE AND FOUR

(Securities Fraud)

The Grand Jury further charges:

28.   The allegations contained in paragraphs 1 and 2, and paragraphs 14 through 23 are repeated and realleged as though fully set forth herein.

29.   On or about the dates set forth below, in the Southern District of New York and elsewhere, DOUG WHITMAN, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, the mails and the facilities of national securities exchanges, in connection with the purchase and sale of securities, did use and employ manipulative and deceptive devices and contrivances, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by (a) employing devices, schemes and artifices to defraud; (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices and courses of business which operated and would operate as a fraud and deceit upon persons, to wit, WHITMAN

11

executed transactions in the securities of the companies

indicated below based on Inside Information.

| COUNT | DATE | COMPANY |
|-------|------|---------|
| THREE | From on or about January 12, 2006, to on or about January 25, 2007 | Polycom, Inc. |
| FOUR | On or about July 19, 2007 | Google, Inc. |

(Title 15, United States Code, Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations, Section 240.10b-5; and
Title 18, United States Code, Section 2.)

### FORFEITURE ALLEGATION

30.   As a result of committing one or more of the

foregoing securities fraud offenses alleged in Counts One through

Four of this Indictment, DOUG WHITMAN, the defendant, shall

forfeit to the United States pursuant to Title 18, United States

Code, Section 981(a)(1)(c) and Title 28, United States Code,

Section 2461, all property, real and personal, that constitutes

or is derived from proceeds traceable to the commission of the

securities fraud offenses, including but not limited to a sum of

money in United States currency which was derived from proceeds

traceable to the commission of the securities fraud offenses.

### Substitute Assets Provision

31.   If any of the above-described forfeitable

12

property, as a result of any act or omission of the defendant:

      a.   cannot be located upon the exercise of due diligence;

      b.   has been transferred or sold to, or deposited with, a third party;

      c.   has been placed beyond the jurisdiction of the court;

      d.   has been substantially diminished in value; or

      e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described above.

    (Title 18, United States Code, Section 981;
    Title 28, United States Code, Section 2461;
    Title 18, United States Code, Sections 371 and 2;
    Title 15, United States Code, Sections 78j(b) and 78ff;
 and Title 17, Code of Federal Regulations, Section 240.10b-5.)


_Kathleen Sircich_
Foreperson

_Preet Bharara_
PREET BHARARA (MB)
United States Attorney

13

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES OF AMERICA

- v. -

### DOUG WHITMAN,

Defendant.

### INDICTMENT

### 12 Cr.

(Title 18, United States Code, Sections
2, 371; Title 15, United States Code,
Sections 78j(b) & 78ff;
Title 17, Code of Federal Regulations,
Section 240.10b-5)

### PREET BHARARA
United States Attorney.

### A TRUE BILL

*Kathleen Sucich*
———————————————
Foreperson.

2/8/12   *(handwritten) Warrant Issued   File Indictment*

*(handwritten) Kott, USMJ*

# EXHIBIT B

5571

```
     14P8RAJ1
 1   UNITED STATES DISTRICT COURT
 1   SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 2
 3   UNITED STATES OF AMERICA,
 3
 4            v.                              09 CR 1184 (RJH)
 4
 5   RAJ RAJARATNAM,
 5
 6                 Defendant.
 6
 7   ------------------------------x
 7
 8                                           New York, N.Y.
 8                                           April 25, 2011
 9                                           9:40 a.m.
 9
10
10   Before:
11
11                   HON. RICHARD J. HOLWELL
12
12                                           District Judge
13
13
14                        APPEARANCES
14
15   PREET BHARARA
15        United States Attorney for the
16        Southern District of New York
16   JONATHAN R. STREETER
17   REED M. BRODSKY
17   ANDREW MICHAELSON
18        Assistant United States Attorneys
18
19   AKIN GUMP STRAUSS HAUER & FELD LLP
19        Attorneys for Defendant
20   JOHN M. DOWD
20   TERENCE J. LYNAM
21   MICHAEL STARR
22
22   ALSO PRESENT:  B.J. KANG, FBI
23
24
25
```

5590
14P8RAJ1                          Charge
1                   (Recess)
2                   (Jury present)
3                   THE COURT:  Ladies and gentlemen of the jury, we are
4    now approaching the most important part of the case, your
5    deliberations.  It has been obvious to me and to counsel that
6    until now you have faithfully discharged your duty to listen
7    carefully and to observe the witnesses who testified.  I now
8    ask you to give me that same careful attention as I read these
9    instructions to you.
10                   You have now heard all of the evidence in the case as
11   well as the final arguments of the parties.  My duty at this
12   point is to instruct you as to the law.  It is your duty as
13   jurors to follow the law as I state it to you and to apply the
14   law to the facts as you find them from the evidence that has
15   been presented to you.
16                   On these legal matters, you must take the law as I
17   give it to you.  If any attorney in their closing arguments has
18   stated a legal principle different from anything that I state
19   to you in these instructions, it is my instructions that you
20   should follow.  Moreover, you should not single out any
21   particular instruction as alone stating the law, but you should
22   consider my instructions as a whole when you retire to the jury
23   room to deliberate.
24                   You should not, any of you, be concerned about the
25   particular wisdom of any rule that I state.  Regardless of any
                        SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

5591

14P8RAJ1                        Charge
1    opinion that you might have as to what the law is or what the
2    law should be, your sworn duty is to base your verdict upon the
3    law as I give it to you.
4            Your final role is to pass upon and decide the fact
5    issues that are in this case. You, the members of the jury,
6    are the sole and exclusive judges of the facts. You pass upon
7    the weight of the evidence, you determine the credibility of
8    the witnesses, you resolve such conflicts as there may be in
9    the testimony, and you draw whatever reasonable inferences you
10   decide to draw from the facts as you determine them.
11           I will later discuss with you how to pass upon the
12   credibility or the believability of witnesses.
13           In determining the facts, you must rely on your own
14   recollection of the evidence. What the lawyers have said in
15   their opening statements, in their closing arguments, in their
16   objections, or in their questions is not evidence. In this
17   connection, you should bear in mind that a question put to a
18   witness is never evidence. It's only the answer that is
19   evidence. Nor is anything I may have said or done during the
20   trial or may say during these instructions with respect to a
21   fact matter to be taken in substitution for your own
22   independent recollection. What I say is not evidence.
23           The evidence before you consists of the answers given
24   by the witnesses -- the testimony they gave, as you recall
25   it -- and the exhibits that were received in evidence.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5592

14P8RAJ1                          Charge

1          The evidence does not include questions.  Only the
2     answers are evidence.  But you may not consider any answer that
3     I directed you to disregard or that I directed struck from the
4     record.  Do not consider those answers.
5          You may also consider the stipulations that the
6     parties entered into, some of which were read to the jury.
7          Since you are the sole and exclusive judges of the
8     facts, I don't mean to indicate any opinion as to the facts or
9     what your verdict should be.  The rulings I have made during
10    the trial are not any indication of my views as to what your
11    decision should be as to whether or not the guilt of the
12    defendant has been proven beyond a reasonable doubt.
13         You are to perform the duty of finding the facts
14    without bias or prejudice to either party.  You are to perform
15    your final duty in an attitude of complete fairness and
16    impartiality.
17         The case is important to the government, for the
18    enforcement of criminal laws is a matter of prime concern to
19    the community.  Equally, it is important to the defendant, who
20    is charged with serious crimes.
21         The fact that the prosecution is brought in the name
22    of the United States of America entitles the government to no
23    greater consideration than that accorded to any other party in
24    a lawsuit.  By the same token, it is entitled to no less
25    consideration.  The parties, whether the government or the

5593

14P8RAJ1                         Charge
1    individual, stand as equals before the bar of justice.
2             The indictment which you have heard about is the means
3    by which the government notifies a defendant of the charges
4    against him and brings him to court.  It is only an accusation
5    and nothing more.  It is not evidence, and you are not to give
6    it any weight in reaching your verdict.  The defendant has
7    pleaded not guilty to the charges in the indictment.
8             Because the defendant has pleaded not guilty, the
9    burden is on the prosecution to prove guilt beyond a reasonable
10   doubt.  This burden always remains with the government and
11   never shifts to the defendant.  Indeed, the law never imposes
12   upon a criminal defendant the burden of proving his innocence
13   or even the duty of calling any witness or producing any
14   evidence at all.
15            The law presumes the defendant innocent of all charges
16   against him.  I therefore instruct you that you must presume
17   the defendant innocent throughout your deliberations until such
18   time, if ever, as you as a jury are unanimously satisfied that
19   the government has proven guilt beyond a reasonable doubt.
20            The defendant began the trial with a clean slate.
21   This presumption of innocence alone is sufficient to acquit him
22   unless you are unanimously convinced beyond a reasonable doubt
23   of the defendant's guilt on a particular count, after a careful
24   and impartial consideration of all of the evidence against him.
25   If the government fails to overcome the presumption of
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

14P8RAJ1                    Charge

1  innocence and does not sustain its burden of proving guilt
2  beyond a reasonable doubt with respect to the defendant on a
3  particular count, you must acquit the defendant on that count.
4          The presumption of innocence was with the defendant
5  when the trial began and remains with him now even as I speak
6  and will continue into your deliberations until such time as
7  you are convinced the government has proven guilt beyond a
8  reasonable doubt.
9          I have said that the government must prove guilt
10 beyond a reasonable doubt.  The question then is:  What is a
11 reasonable doubt?  The words almost define themselves.  It is a
12 doubt based upon reason and common sense.  It is a doubt that a
13 reasonable party has after carefully weighing all of the
14 evidence.  It is a doubt that would cause a reasonable person
15 to hesitate to act in a matter of importance in his or her
16 personal life.  Proof beyond a reasonable doubt must,
17 therefore, be proof of such a convincing character that a
18 reasonable person would not hesitate to rely and act upon it in
19 the most important of his or other own affairs.  A reasonable
20 doubt is not caprice or whim; it is not speculation or
21 suspicion.  It is not an excuse to avoid the performance of an
22 unpleasant duty.  And it is not sympathy.
23         In a criminal case, the burden at all times upon the
24 government is to prove beyond a reasonable doubt the
25 defendant's guilt.  The law does not, however, require that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5595

14P8RAJ1                    Charge
1   government prove guilt beyond all possible doubt; proof beyond
2   a reasonable doubt is sufficient to convict.  The burden never
3   shifts to the defendant, which means that it is always the
4   government's burden to prove each element of the crimes charged
5   beyond a reasonable doubt.
6           A reasonable doubt may arise from evidence or lack of
7   evidence.  This does not mean simply the number of witnesses or
8   documents or the length of the trial but rather the quality of
9   the evidence that you have heard.  If, after fair and impartial
10  consideration of all of the evidence you have a reasonable
11  doubt, it is your duty to acquit the defendant.  On the other
12  hand, if after fair and impartial consideration of all the
13  evidence, you are satisfied of the defendant's guilt beyond a
14  reasonable doubt, you should vote to convict.  I am now going
15  to speak to you further about the evidence that can be used in
16  reaching this determination.
17          You will remember, at the beginning of the trial, I
18  said there are two types of evidence which you may properly use
19  in deciding whether a defendant is guilty or not guilty:
20  Direct evidence and circumstantial evidence.  Direct evidence
21  is evidence that proves a disputed fact directly.  For example,
22  what a witness testifies as to what he or she saw, heard, felt,
23  touched, this is direct evidence.
24          Circumstantial evidence, in contrast, is evidence that
25  tends to prove a disputed fact by proof of other facts.  You
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5596

14P8RAJ1                    Charge

1  will remember the simple example I gave you at the beginning of
2  the trial.  It was sunny outside.  You came into the courtroom
3  and you couldn't see out the window, but an hour later two or
4  three people walk in shaking wet umbrellas.  You don't know by
5  your direct senses that it was raining out, but you could infer
6  on that circumstantial evidence that in fact that was the case.
7  And that's all there is to circumstantial evidence.
8          Circumstantial evidence is of no less value than
9  direct evidence; for it is a general rule that the law makes no
10 distinction between direct and circumstantial evidence, but
11 simply requires that before convicting a defendant, the jury
12 must be satisfied of the defendant's guilt beyond a reasonable
13 doubt from all of the evidence in the case.
14         During the trial you may have heard the attorneys use
15 the term "inference" and in their arguments they have asked you
16 to infer, on the basis of your reason, experience, and common
17 sense, from one or more established facts, the existence of
18 some other fact.  An inference is not a suspicion or a guess.
19 It is a reasoned, logical decision to conclude that a disputed
20 fact exists on the basis of another fact that you know exists.
21 There are times when different inferences may be drawn from
22 facts whether by direct or circumstantial evidence.  The
23 government may ask you to draw one set of inferences, the
24 defendant may ask you to draw another.  It is for you and you
25 alone to decide what inferences you will draw in this case.

5597

14P8RAJ1                    Charge
 1            Some inferences are impermissible.  I instruct you not
 2   to draw the following two inferences.  First, you may not infer
 3   that the defendant was guilty of participating in criminal
 4   conduct merely from the fact that he associated or spoke with
 5   other people who were guilty of wrongdoing.  Second, you may
 6   not infer that the defendant is guilty just because he was
 7   present at the time a crime was being committed and had
 8   knowledge that it was being committed.
 9            The defendant is charged only with the crimes alleged
10   in the indictment.  He is not charged with any other crimes.
11   You have heard evidence of other acts allegedly committed by
12   various individuals.  I want to emphasize to you now that you
13   are to consider only the charges alleged in the indictment, and
14   you must return a verdict only as to those charges.
15            You may not draw any inference, favorable or
16   unfavorable, towards the government or the defendant from the
17   fact that there may be persons who have not been tried as a
18   defendant in this case or that certain persons were not named
19   as co-conspirators, or were named as co-conspirators but not
20   indicted.  Therefore, you may not consider these facts in any
21   way in reaching your verdict as to this defendant.  You also
22   may not speculate as to the reasons why other persons are not
23   on trial.  Your task is limited to considering the charges
24   contained in the indictment and the defendant before you.
25            The fact that one party called more witnesses and
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5598

14P8RAJ1                    Charge

1   introduced more evidence than the other does not mean that you
2   should necessarily find the facts in favor of the side offering
3   the most evidence.  By the same token, you do not have to
4   accept the testimony of any witness who has not been
5   contradicted or impeached if you find that the witness was not
6   credible.  You also have to decide which witness to believe and
7   what facts are true.  To do this you must look at all the
8   evidence, drawing your own conclusions and using your own
9   common sense and personal experience.  After examining all the
10  evidence, you may decide that the party calling the most
11  witnesses has not persuaded you because you do not believe the
12  witnesses or because you do believe the fewer witnesses called
13  by the other side.
14          In a moment I will discuss the criteria for evaluating
15  credibility.  For the moment, however, you should keep in mind
16  that the burden is always on the government and the defendant
17  is not required to call any witnesses or offer any evidence,
18  since he is presumed to be innocent.
19          The evidence in this case consists of the sworn
20  testimony of the witnesses, on both direct and
21  cross-examination, the exhibits received in evidence, the
22  stipulations of the parties, and judicially noticed facts.
23          In contrast, you may not consider exhibits that were
24  marked for identification but not received into evidence.  Only
25  those exhibits actually received may be considered as evidence.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5599

14P8RAJ1                    Charge

1         Similarly, some testimony has been excluded, stricken,
2    or you have been instructed to disregard the testimony.  As I
3    said earlier, in addition, some evidence has been received for
4    limited purposes only.  When I have given you a limiting
5    instruction as to such evidence, you must follow that
6    instruction and consider such evidence for only the limited
7    purpose that I allowed.
8         Obviously anything that you may have seen or heard
9    outside the courtroom is not evidence.
10         Nothing I have said or done during the trial should be
11    used to determine whether or not the government has met its
12    burden of proof.  I have no personal view as to whether the
13    government has met its burden and you should not infer that I
14    do from anything that I have said or done.
15         It must be clear to you by now that counsel for the
16    parties are asking you to draw very different conclusions about
17    various factual issues in the case.  An important part of that
18    decision will involve making judgments about the testimony of
19    witnesses you have listened to and observed.  In making these
20    judgments, you should carefully scrutinize all of the testimony
21    of each witness, the circumstances under which the witness has
22    testified, and any other matter in evidence that may help you
23    to decide the truth and the importance of each witness's
24    testimony.
25         Your decision whether or not to believe a witness may

5600

14P8RAJ1                    Charge
1    depend on how that witness impressed you.  Was the witness
2    candid, frank and forthright, or did the witness seem to be
3    evasive or suspect in some way?  How did the way the witness
4    testified on direct examination compare to how the witness
5    testified on cross-examination?  Was the witness consistent or
6    contradictory?  Did the witness appear to know what he or she
7    was talking about?  Did the witness strike you as someone who
8    was trying to report his or her knowledge accurately?  These
9    are examples of the kinds of common sense questions you should
10   ask yourselves in deciding whether a witness is truthful or
11   not.
12           In addition, you may consider whether the witness had
13   any possible bias or relationship with the party, or any
14   possible interest in the outcome of the case.  Such a bias or
15   relationship does not necessarily make the witness unworthy of
16   belief.  They are simply factors that you may consider.  If a
17   witness made statements in the past that are inconsistent with
18   his or her testimony during the trial concerning facts that are
19   at issue here, you may consider that fact in deciding how much
20   of the testimony, if any, to believe.
21           In making this determination, you may consider whether
22   the witness purposefully made a false statement or whether it
23   was an innocent mistake.  You may also consider whether the
24   inconsistency concerns an important fact or merely a small
25   detail, as well as whether the witness had an explanation for

14P8RAJ1                         Charge

1    the inconsistency, and if so, whether that explanation appealed
2    to your common sense.
3            If you find that a witness has testified falsely as to
4    any material fact, or if you find that a witness has been
5    previously untruthful when testifying under oath or otherwise,
6    you may reject the witness's testimony in its entirety, or you
7    may accept only those parts of it that you believe to be
8    truthful and that are corroborated by other independent
9    evidence.
10           You should also consider whether the witness had an
11   opportunity to observe the facts that he or she testified
12   about, and whether the witness's recollection of the facts
13   stands up in light of the other evidence in the case.
14           In other words, what you must do in deciding
15   credibility is to size a person up just as you would in any
16   important matter where you're trying to decide if a person is
17   truthful, straightforward and accurate in his or her
18   recollection.
19           Now, a witness may be discredited or impeached by
20   contradictory evidence, or by evidence that at some other time
21   the witness has said or done something that is inconsistent
22   with the witness's present testimony.  You may also consider a
23   witness's earlier silence or inaction that is inconsistent with
24   his or her courtroom testimony to determine whether the witness
25   has been impeached.  If you believe that any witness has been

5602

14P8RAJ1                      Charge

1   impeached, and thus discredited, then it is for you to give the
2   testimony of that witness as much or as little weight, if any,
3   as you think it deserves.
4        It is for you, the jury, and for you alone, not the
5   lawyers, or the witnesses, or me as the judge, to decide the
6   credibility of witnesses who appeared here and the weight that
7   their testimony should receive.
8        In evaluating credibility of the witnesses, you should
9   take into account any evidence that the witness who testified
10  may benefit in some way from the outcome of the case.  Such an
11  interest in the outcome creates a motive to testify falsely and
12  may sway the witness to testify in a way that advances his own
13  interests.  Therefore, if you find that any witness whose
14  testimony you are considering may have an interest in the
15  outcome of this trial, then you should bear that factor in mind
16  when evaluating the credibility of his or her testimony and
17  accept it with great care.
18       This is not to suggest that every witness who has an
19  interest in the outcome of the case will testify falsely.  It
20  is for you to decide to what extent, if at all, the witness's
21  interest has affected or colored his or her testimony.
22       You have heard the testimony of law enforcement
23  witnesses.  The fact that a witness may be employed as a law
24  enforcement official or employee does not mean that his or her
25  testimony is necessarily deserving of more or less

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5603

14P8RAJ1                         Charge

1    consideration or greater or lesser weight than that of any
2    ordinary witness.
3              In this context, defense counsel is allowed to try to
4    attack the credibility of such a witness on the ground that his
5    or her testimony may be colored by a personal or professional
6    interest in the outcome of the case.
7              It is your decision, after reviewing all of the
8    evidence, whether to accept the testimony of a law enforcement
9    witness, as it is with every other type of witness, and to give
10   that testimony the weight that you believe it deserves.
11             The defendant has called a witness during the trial
12   who testified to his opinion of the defendant's good character
13   and to his reputation in the community.  This testimony is not
14   to be taken by you as the witness's opinion as to whether the
15   defendant is guilty or not guilty.  That question is for you
16   alone to determine.  You should, however, consider this
17   character evidence together with all the other facts and all
18   the other evidence in the case in determining whether the
19   defendant is guilty or not guilty of the charges.
20             You have heard some testimony during the trial that
21   witnesses have discussed the facts of the case and their
22   testimony with the lawyers before the witnesses appeared in
23   court.  Although you may consider that fact when you are
24   evaluating a witness's credibility, I should tell you that
25   there is nothing either unusual or improper about a witness

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5604

14P8RAJ1                    Charge
1   meeting with lawyers before testifying so that the witness can
2   be aware of the subjects he will be questioned about, focus on
3   those subjects and have the opportunity to review relevant
4   exhibits before being questioned about them.  Such consultation
5   helps conserve your time and the Court's time.  In fact, it
6   would be unusual for a lawyer to call a witness without such
7   consultation.
8           The weight you give to the fact or the nature of the
9   witness's preparation for his or her testimony and what
10  inferences you draw from such preparation are matters
11  completely within your discretion.
12          As you know, the defendant did not testify in this
13  case.  Under our Constitution, the defendant has no obligation
14  to testify or to present any evidence, because it is the
15  government's burden to prove the defendant guilty beyond a
16  reasonable doubt.  That burden remains with the government
17  throughout the entire trial and never shifts to the defendant.
18  A defendant is never required to prove that he is not guilty.
19          You may not attach any significance to the fact that
20  the defendant did not testify.  No adverse inference against
21  him may be drawn by you because he did not take the witness
22  stand.
23          (Continued on next page)
24
25

5605

14PFRAJ2                    Jury charge

1            THE COURT:  You may not consider this against the
2       defendant in any way in your deliberations in the jury room.
3            Some of the testimony given by defendant's witness,
4       Professor Jarrell, was known as expert testimony about the
5       operation of the securities market.  An expert witness is a
6       witness who by education or experience has acquired learning or
7       experience in a science or specialized area of knowledge.  Such
8       witnesses are permitted to give their opinions as to relevant
9       matters in which they profess to be experts and to give the
10      reasons for their opinions.  Expert testimony is presented to
11      you on the theory that someone who is experienced in the field
12      can assist you in understanding the evidence or in reaching an
13      independent decision on the facts.
14           Now, your role in judging credibility applies to
15      experts just the same as it does other witnesses.  You should
16      consider the expert opinions that were received in evidence in
17      this case and give them as much or as little weight as you
18      think they deserve.  If you should decide that the opinion of
19      an expert was not based on sufficient education or experience
20      or on sufficient data or if you should conclude that the
21      trustworthiness or credibility of an expert is questionable for
22      any reason or the opinion of the expert was outweighed in your
23      judgment by other evidence in the case then you might disregard
24      the opinion of the expert entirely or in part.  On the other
25      hand, if you find the opinion of an expert is based on

5606

14PFRAJ2                    Jury charge

1  sufficient data, education and experience, and the other
2  evidence does not give you any reason to doubt his conclusions,
3  you would be justified in placing great reliance on his
4  testimony.
5          You've also heard witnesses who testified that were
6  actually involved in planning and carrying out certain of the
7  crimes charged against the defendant in the indictment.
8  There's been a great deal said about these so-called
9  cooperating witnesses in the summation of counsel and about
10 whether you should believe them.  Experience will tell you that
11 the government frequently must rely on the testimony of
12 witnesses who admit participating in the alleged crimes at
13 issue.  The government must take its witnesses as it finds them
14 and frequently must use such testimony in a criminal
15 prosecution because otherwise it would be difficult or
16 impossible to detect and prosecute wrongdoers.
17         For these very reasons the law allows the use of
18 cooperating witness testimony.  Indeed, it is the law in
19 federal courts that the testimony of a cooperating witness may
20 be enough in itself for conviction if the jury believes that
21 the testimony establishes guilt beyond a reasonable doubt.
22         However, because of the possible interest of a
23 cooperating witness in testifying, such testimony should be
24 scrutinized with special care and caution.  The fact that a
25 witness is a cooperating witness can be considered by you as
                  SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5607

14PFRAJ2                    Jury charge

1   bearing upon that witness' credibility.  However, it does not
2   follow that simply because a person has admitted to
3   participating in one or more crimes that he is incapable of
4   giving a truthful version of what happened.
5           Like the testimony of any witness, cooperating
6   witnesses' testimony should be given such weight as it deserves
7   in light of the facts and the circumstances before you, taking
8   into account the witness' demeanor, candor, the strength and
9   accuracy of the witness' recollection, his background and the
10  extent to which his testimony is or is not corroborated by
11  other evidence.  You may consider whether cooperating
12  witnesses, like any other witnesses called in this case, have
13  an interest in the outcome of this case and if so, whether it
14  has affected their testimony.
15          You heard testimony about agreements between the
16  government and three of the cooperating witnesses.  The
17  government is permitted to enter into these kinds of
18  agreements.  However, you should bear in mind that a witness
19  who has entered into such an agreement has an interest in this
20  case different from any ordinary witness.  A cooperating
21  witness who realizes that he may be able to obtain his own
22  freedom or receive a lighter sentence has different motives
23  than any ordinary witness.  In evaluating the testimony of such
24  a witness you should ask yourself whether the witness would
25  benefit more by lying or by telling the truth.  Was the

5608

14PFRAJ2                    Jury charge

1    cooperating witness's testimony made up in any way because the
2    accomplice believed or hoped that he would somehow receive
3    favorable treatment by testifying falsely, or did he believe
4    that his interests would be best served by testifying
5    truthfully?  If you believe that the witness was motivated by
6    hopes of personal gain, was the motivation one which caused him
7    to lie or was it one which caused him to tell the truth?  Did
8    this motivation color his testimony?
9              In sum, you should look at all the evidence in
10   deciding what credence and what weight if any you will give to
11   the cooperating witnesses.  If you find that the testimony was
12   false, you should reject it.  However, if after a cautious and
13   careful examination of the cooperating witness' testimony and
14   demeanor on the witness stand you are satisfied that the
15   witness told the truth, you should accept that he's credible
16   and act upon it accordingly.  As with any witness, let me
17   emphasize that the issue of credibility need not be decided on
18   an all-or-nothing basis.  Even if you find that a witness
19   testified falsely in one part you may still accept his or her
20   testimony in other parts or you may disregard all of it.  That
21   is a determination entirely for the jury to make.
22             You have heard testimony from the cooperating
23   witnesses that they have pleaded guilty to charges arising in
24   part out of the same facts that are at issue in this case.  You
25   are instructed, however, that you are to draw no conclusion or

                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

5609

14PFRAJ2                    Jury charge

1   inference of any kind about the guilt of Mr. Rajaratnam merely
2   from the fact that a prosecution witness pled guilty to similar
3   charges.  The decision of that witness to plead guilty was a
4   personal decision that witness made about his or her own guilt,
5   not the defendant's.  It may not be used by you in any way as
6   evidence against or unfavorable to the defendant on trial here.
7            In this case, you also heard evidence in the form of
8   stipulations.  A stipulation is an agreement between the
9   parties that a certain fact is true, and you must regard such
10  agreed facts as true.
11           You have seen during the course of the trial certain
12  charts and summaries that were placed before you.  The charts
13  and summaries were shown to you in order to make the other
14  evidence more meaningful and to aid you in considering the
15  evidence.  They are no better than the testimony or the
16  documents upon which they were based.  Therefore, you are to
17  give no greater consideration to those schedules or summaries
18  than you would give to the evidence upon which they are based.
19  It is for you to decide whether the charts, schedules or
20  summaries correctly present the information contained in the
21  testimony and the exhibits on which the summaries were based.
22  You are entitled to consider the charts, schedules and
23  summaries if you find they are of assistance to you and if you
24  find they are based on the evidence.
25           There were tape recordings of telephone conversations
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5610

14PFRAJ2                    Jury charge
1    and transcripts of those recordings that were admitted into
2    evidence.  Whether you approve or disapprove of the recording
3    of those conversations, that may not enter into your
4    deliberations.  I instruct you that these recordings were made
5    in a lawful manner and the government's use of this evidence is
6    lawful.  In connection with these tapes, the parties have been
7    permitted to hand out and display transcripts of the matters
8    spoken of on the recordings.  These documents were given to you
9    as an aid or a guide to you in listening to the recordings.
10   However, the transcripts themselves are not evidence.  It's the
11   tapes that is the evidence in this case.  You alone make your
12   own interpretation of what appears on the recordings based on
13   what you heard.  If you think you heard something different
14   than what appeared in the transcript, it's what you heard that
15   is controlling.  Let me again say that you, the jury, are the
16   sole deciders of the facts.
17        As I mentioned, defendant has been charged formally in
18   an indictment.  An indictment is a charge or accusation.  It is
19   not evidence.  Before you begin your deliberations, you will be
20   provided with an indictment containing the charges in this
21   case.  Therefore I won't read the entire indictment to you at
22   this time, but I'll first summarize some of the offenses
23   charged in the indictment and then I'll explain the elements of
24   each of the offenses charged in some detail.
25        The indictment contains 14 charges or counts.  Each
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5611

14PFRAJ2                    Jury charge
1   count charges a separate crime.  Although there are facts in
2   common to different counts, each count must be considered by
3   you separately.   You must return a separate verdict as to each
4   count.
5           Counts One through Five of the indictment charge Mr.
6   Rajaratnam with conspiracy to violate the federal statute that
7   makes it unlawful to commit securities fraud, specifically a
8   certain kind of securities fraud called insider trading.  Count
9   One charges that Mr. Rajaratnam conspired with certain then
10  current and former Galleon employees to obtain, share and trade
11  on material, non-public information about various companies
12  which the indictment refers to as inside information.
13          The indictment alleges that this inside information
14  related to merger and acquisition activity, quarterly earnings
15  announcements, business updates and other corporate events and
16  was obtained in violation of duties of trust and confidence,
17  that the sources of that information owed to their employers
18  and others.
19          Count Two charges that Mr. Rajaratnam conspired with
20  Roomy Khan to obtain and trade on inside information about
21  various companies, including Polycom, Hilton and Google.
22          Count Three charges that Mr. Rajaratnam conspired with
23  Rajiv Goel, an employee of Intel to obtain and trade on inside
24  information about various companies, including Intel, Clearwire
25  and People Support.

5612

14PFRAJ2                    Jury charge

1           Count Four charges that Mr. Rajaratnam conspired with
2    Anil Kumar, an employee of McKinsey, to obtain and trade on
3    inside information about various companies, including AMD, ATI
4    and eBay.
5           Count Five charges that Mr. Rajaratnam conspired with
6    Danielle Chiesi, an employee of a hedge fund called New Castle,
7    to obtain and trade on inside information about various
8    companies, including Akamai and AMD.  Those are the conspiracy
9    counts.
10          Counts Six through Fourteen of the indictment are the
11   substantive counts and charge Mr. Rajaratnam with specific
12   instances of insider trading in some of the companies I just
13   mentioned to you; Clearwire, Akamai, People Support, ATI and
14   Intel.
15          As I just indicated, the indictment charges the
16   defendant with a total of 14 counts.  Each count charges a
17   separate offense or crime.  You must consider each count of the
18   indictment separately and you must return separate, unanimous
19   verdicts as to each count.  As I mentioned, Counts One through
20   Five are the conspiracy counts and charge the defendant with
21   conspiring or agreeing with others to trade on inside
22   information.  Counts Six through Fourteen are the substantive
23   counts and charge the defendant with actually making trades in
24   specific companies' stock based on inside information.
25          I'm going to discuss the elements of the substantive
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5613

14PFRAJ2                          Jury charge
1  counts, Counts Six through Fourteen, first because that will
2  make it easier to understand my charges on the conspiracy
3  counts.
4       Now, Mr. Rajaratnam denies that he committed insider
5  trading or conspired to commit insider trading as charged in
6  the indictment.  He contends, one, that he did not possess
7  material, non-public information about any company at issue in
8  this case; two, that he did not trade in any stock on the basis
9  of material, non-public information provided by anyone in
10 breach of a duty; three, that he acted in good faith and did
11 not agree with any other person to obtain material, non-public
12 information about any company at issue in this case; four, that
13 he did not convey a benefit to anyone in return for that person
14 breaching his duty to his employer or client by disclosing
15 information; five, that the alleged inside information in this
16 case was not material, non-public information because it was
17 either publicly available through sources such as press
18 releases, Securities and Exchange Commission filings, trade
19 publications, analyst reports, newspapers, magazines,
20 television, radio or word of mouth and was not material because
21 it was not information that a reasonable investor would have
22 considered significant in deciding whether to buy, sell or hold
23 securities or at what price to buy or sell.
24       The defense further contends that Mr. Rajaratnam was a
25 professional stock analyst, portfolio manager and investment
                  SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

5614
14PFRAJ2                    Jury charge
1  advisor.  As such, Mr. Rajaratnam's job was to research,
2  analyze and trade in stock on behalf of his investors.  Mr.
3  Rajaratnam contends that he had a duty to trade in stocks that
4  he thought had attractive investment potential, that all
5  reasonable investors seek to obtain properly as much
6  information as they can before trading a stock, and that he was
7  legally obligated to do so in order to properly advise his
8  clients.  He contends that he properly sought to obtain
9  information about the companies that he invested in on behalf
10 of his clients.
11            The law permits analysts and investment advisers to
12 meet and speak with corporate officers and other insiders in
13 order to ferret out and analyze information useful in making
14 investment decisions.  As I will instruct you in greater
15 detail, the receipt and use of material, non-public information
16 does not itself violate the law.  You must also find that the
17 inside information was improperly provided to the defendant by
18 an insider or tipper in violation of that insider's duty of
19 trust to a company that owned the information, and, further,
20 that the defendant as the tipee knew that the information was
21 disclosed to him by the insider or tipper in violation of a
22 duty.
23            Counts Six through Fourteen of the indictment charge
24 the defendant with violating a statute that prohibits a type of
25 securities fraud called insider trading.  The relevant statute
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5615

14PFRAJ2                      Jury charge

1   is Section 10B of the Securities Exchange Act of 1934, which is
2   codified in Title 15, United States Code, Section 78j(b).  That
3   law provides in pertinent part it shall be unlawful for any
4   person, directly or indirectly, by the use of any means or
5   instrumentality of interstate commerce or of the mails or any
6   facility of any national securities exchange to use or employ
7   in connection with the purchase or sale of any security
8   registered on a national securities exchange or any security
9   not so registered any manipulative or deceptive device or
10  contrivance in contravention of such rules and regulations as
11  the Securities and Exchange Commission may prescribe as
12  necessary or appropriate in the public interest or for the
13  protection of investors.
14          Rule 10b-5 as promulgated by the Securities and
15  Exchange Commission reads as follows:  Employment of
16  manipulative and deceptive devices:  It shall be unlawful for
17  any person, directly or indirectly, by the use of any means or
18  instrumentality of interstate commerce or any facility of any
19  national securities exchange, A, to employ any device, scheme,
20  artifice to defraud or, B, to engage in any act, practice or
21  course of business which operates or would operate as a fraud
22  or deceit upon any person in connection with the purchase or
23  sale of a security.
24          Congress enacted the Securities Exchange Act of 1934
25  to insure fair dealing and outlaw deceptive inequitable
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5616

14PFRAJ2                         Jury charge
1    practices by those selling or buying securities on the
2    securities exchanges.  Among the primary objectives of the
3    Securities Exchange Act of 1934 are the maintenance of fair and
4    honest security markets and the elimination of manipulative
5    practices intended to distort the fair and just price of a
6    stock.  Congress recognized that any deceptive or manipulative
7    practice that influenced or related to trading activity
8    undermined the function and purpose of a free market.
9              In order to find the defendant guilty of the
10   substantive crime of securities fraud as alleged in Counts Six
11   through Fourteen, you must find that the government has proven
12   each of the following elements beyond a reasonable doubt:
13             First, that in connection with the purchase or sale of
14   a security specified in the count you're considering, the
15   defendant employed a device, scheme or artifice to defraud or
16   engaged in an act, practice or course of business that operated
17   or would operate as a fraud or deceit upon the person.
18             Second, that the defendant acted willfully, knowingly
19   and with the intent to defraud, and, third, that the defendant
20   knowingly used or caused to be used any means or instruments of
21   transportation or communication in interstate commerce or the
22   use of the mails or any facility of any national securities
23   exchange in furtherance of the fraudulent conduct.
24             Let me talk about the first element of the alleged
25   crime, and that is the existence of an insider trading scheme.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5617

14PFRAJ2                         Jury charge
1  The first element that the government must prove beyond a
2  reasonable doubt is that a connection with the purchase or sale
3  of the security specified in the substantive count of the
4  indictment you're considering the defendant employed a device,
5  scheme or artifice to defraud or engaged in an act, practice or
6  course of business that operated or would operate as a fraud or
7  deceit upon some person.  The specific scheme that the
8  defendant is charged with committing in this indictment is
9  known as insider trading.  An insider is one who comes into
10 possession of material, non-public information about a specific
11 stock by virtue of a relationship that that person has of trust
12 and confidence.  If a person has such material, non-public
13 information by virtue of a position of trust or confidence and
14 his position of trust and confidence prevents him from
15 disclosing that information, the law then forbids that person
16 from trading in the securities in question or assisting others
17 to trade in securities on the basis of that information.
18        With respects to Counts Eleven and Twelve regarding
19 trading in People Support, the government alleges that Mr.
20 Rajaratnam was an insider.
21        The law also prohibits a person who is not actually an
22 insider from trading in securities based on material,
23 non-public information if the person knows that the information
24 he has received from an insider or tipper was material,
25 non-public information that was intended to be kept
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

5618

14PFRAJ2                          Jury charge

1   confidential and was disclosed in violation of a duty of trust
2   or confidence.  With respect to Counts Six through Ten and
3   Thirteen and Fourteen, Mr. Rajaratnam is charged with insider
4   trading as a tipee, that is, based on the allegation that he
5   received material, non-public information from other
6   individuals, so-called insiders or tippers, and wrongfully used
7   it for his own benefit when he knew that the information had
8   been disclosed in violation of a duty of trust or confidence.
9            A person, a tipee, who receives material, non-public
10  information engages in an act of fraud or deceit under the
11  federal securities laws if he buys or sells securities based on
12  material, non-public information that he knows was disclosed by
13  another person, the insider or the tipper, in breach of that
14  person's duty of trust and confidence.
15           With respect to Counts Six through Ten and Counts
16  Thirteen through Fourteen, in order to find that the government
17  has established this first of the three essential elements of
18  the crime of insider trading, you must find beyond a reasonable
19  doubt, A, that the insider or tipper involved in the counts you
20  are considering had a relationship of trust and confidence with
21  the company that owned the business information, and that as a
22  result of that relationship was entrusted with information with
23  the reasonable expectation that he would keep it confidential
24  and not use it for personal benefit; B, that the insider or
25  tipper, directly or indirectly breached that trust by

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5619

14PFRAJ2                    Jury charge

1   disclosing material, non-public information and receiving a
2   personal benefit for doing so; C, that the defendant knew that
3   the information had been disclosed by an insider or tipper in
4   breach of a duty to the owner of material information and, D,
5   that the defendant used the material, non-public information to
6   purchase or sell the security you are considering.
7          With respect to Counts Eleven and Twelve involving
8   People Support, Mr. Rajaratnam, as I said, is alleged to be an
9   insider.  On these counts the government must prove beyond a
10  reasonable doubt that Mr. Rajaratnam had a relationship of
11  trust and confidence with People Support and as a result of
12  that relationship was entrusted with information with a
13  reasonable expectation that he would keep it confidential and
14  would not use it for personal benefit.  With respect to these
15  counts related to People Support, you must also find that the
16  defendant used information that he knew was material,
17  non-public information regarding People Support, and the
18  purchase and sale of People Support stock.
19         With respect to the first factor, A, the relationship
20  of trust and confidence, you must find that the insider or
21  tipper had a fiduciary or other relationship of trust and
22  confidence with the company that owned the business information
23  at issue in the count you are considering.  Fiduciary means
24  characterized by faith, trust and confidence.  Depending on the
25  circumstances, such a relationship can arise, for example, out

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5620

14PFRAJ2                    Jury charge
1    of a person's employment relationship with a company or out of
2    a client relationship or out of a relationship as a board
3    member to a company.  The question for you to consider is
4    whether the owner of the business information, the company at
5    issue in the count, expected the insider or tipper to keep that
6    information confidential and to refrain from improperly
7    disclosing it.
8            From now on in these instructions I'll refer to the
9    insider or the tipper as being simply the insider.
10            Whether a relationship gives rise to a duty of
11   confidentiality is ultimately a question of fact which depends
12   on the particulars of the interaction between the parties and
13   the nature of their relationship.  That relationship may be
14   either formal or informal, and a duty of confidentiality need
15   not have been expressed explicitly or in writing.  It may be
16   inferred, for example, from the nature and circumstances of the
17   relationship between the insider at issue and the company or
18   owner of the business information at issue in the count you are
19   considering.
20            If you find that the insider at issue in the count you
21   are considering had a fiduciary or other relationship of trust
22   and confidentiality with the owner of the information, then you
23   must next consider whether the insider breached that duty of
24   trust and confidentiality by disclosing material, non-public
25   information and receiving a personal benefit for doing so.

5621

14PFRAJ2                    Jury charge

1          In order to find that the insider breached his duty of
2     trust or confidence you must be persuaded beyond a reasonable
3     doubt that the information disclosed was non-public at the time
4     it was disclosed.  Information is non-public if it is not
5     available to the public through such sources as press releases,
6     Securities and Exchange Commission filings, trade publications,
7     analyst reports, newspapers, magazines, television, radio or
8     word of mouth.  It is important to recognize, however, that
9     whether information is public or non-public does not turn only
10    on whether it has appeared in a newspaper, whether there has
11    been a public announcement or how many people have been made
12    aware of it.  Sometimes a corporation is willing to make
13    information available to securities analysts or prospective
14    investors who ask for it, even though it may never have
15    appeared in any newspaper or other publication.  On the other
16    hand, the company may not have made available information that
17    is more specific and more private than that which has appeared
18    in a newspaper or other public medium.  The keyword is whether
19    the information is available.  If the information is out there
20    in a public media or in SEC filings open to the public or if
21    the company would give it to people who would ask for it, it is
22    public.  On the other hand, if the information is not generally
23    available and the company would not make it available in
24    response to a request, then it is non-public rather than
25    public.  Remember, whether information is public or non-public

14PFRAJ2                    Jury charge

1   is an issue of fact for you to decide.
2              In order to find that the insider you are considering
3   breached his duty of trust, you must also be persuaded beyond a
4   reasonable doubt on the count that you're considering that the
5   information disclosed was material at the time that it was
6   disclosed.  Within the particular context of the purchase and
7   sale of securities, material information is information which a
8   reasonable investor would have considered significant in
9   deciding whether to buy, sell or hold securities and at what
10  price to buy or sell.  Put another way, there must be a
11  substantial likelihood that the fact would have been viewed by
12  a reasonable investor as having significantly altered the total
13  mix of information then available.
14             The government must also prove beyond a reasonable
15  doubt that the insider who disclosed the information personally
16  benefited in some way, directly or indirectly, from disclosing
17  that information.  Benefit may be monetary or financial.  The
18  benefit, however, need not be a specific or tangible benefit
19  received in exchange for the information.  It can also include
20  a reputational benefit that will translate into future
21  earnings, or the satisfaction which comes from making a gift to
22  a relative or friend.  Evidence of the relationship between the
23  insider and the recipient of the insider's intention may be
24  circumstantial evidence that the insider receive a benefit.
25  But whether the insider benefited directly or indirectly,

5623

14PFRAJ2                          Jury charge
1   tangibly or intangibly, remains a question of fact for you, the
2   jury, to decide.
3           To meet its burden of establishing an insider trading
4   scheme, the government must also prove beyond a reasonable
5   doubt that Mr. Rajaratnam knew that the information had been
6   disclosed by an insider in breach of a duty of trust and
7   confidence.  The mere receipt of material, non-public
8   information by the defendant from an insider is not sufficient.
9   The government must show that Mr. Rajaratnam knew that the
10  information was material, non-public information that if
11  disclosed by an insider would directly or indirectly obtain
12  some personal benefit from the disclosure.
13          The government must prove beyond a reasonable doubt
14  that the defendant used material, non-public information in
15  connection with the purchase or sale of the stock identified in
16  the substantive count that you are considering.  A person uses
17  material, non-public information in connection with a stock
18  purchase or sale if that information is a factor in his
19  decision to buy or sell.  Now, how do you tell whether a person
20  who has material, non-public information and who buys or sells
21  a stock while in possession of that information uses the
22  information in doing so?  Bear in mind that the law requires
23  only that the information be a factor in the decision to buy
24  and sell.  It need not be the only consideration.  Consider how
25  significant the information would be in deciding upon whether
                   SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

5624

14PFRAJ2                      Jury charge

1   to buy or sell.  It need not be the only consideration.  In
2   many circumstances, the more important the information, the
3   more likely it is that the information was a factor in the
4   decision.  If after considering all the circumstances you are
5   persuaded beyond a reasonable doubt that material, non-public
6   information given to the defendant was a factor, however small,
7   in the defendant's decision to purchase or sell stock, then
8   this element of the fraud will have been established.
9           I've talked about the proof of the existence of a
10  fraudulent insider trading scheme, which is the first element
11  of proving securities fraud.  The second element of the
12  offenses charged in the substantive Counts Six through Fourteen
13  is that the defendant participated in the insider trading
14  scheme alleged in a particular count knowingly, willfully and
15  with the intent to defraud.  Knowingly means to act voluntarily
16  and deliberately, rather than mistakenly or inadvertently.
17  Willfully means to act knowingly and purposefully with an
18  intent to do something the law forbids, that is to say with bad
19  purpose either to disobey or disregard the law.  Intent to
20  defraud in the context of securities laws means to act
21  knowingly and with the specific intent to deceive.  To devise a
22  scheme to defraud is to concoct or plan it.  To participate in
23  a scheme to defraud means to associate one's self with it with
24  a view and intent to make it succeed.
25          The question of the defendant's intent is a question

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5625

14PFRAJ2                          Jury charge

1    of fact that you are called upon to decide, just as you would
2    determine any other fact in the case.  Intent to defraud
3    involves the state of a person's mind and the purpose with
4    which he acted at the time of acts in question occurred.
5    Direct proof of knowledge and fraudulent intent is almost never
6    available and need not exist to find that such intent was
7    present.  It would be a rare case where it could be shown that
8    a person wrote or stated that as of a given time in the past he
9    committed an act with fraudulent intent.  Such direct proof is
10   not required.
11            The ultimate facts of knowledge and criminal intent,
12   though subjective, may be established by circumstantial
13   evidence based upon a person's outward manifestations, his
14   words, his conduct, his acts and all the surrounding
15   circumstances disclosed by the evidence and the rational or
16   logical inferences that may be drawn from the evidence.  Recall
17   that I've instructed you as to circumstantial evidence, and
18   that such evidence is of no less value than direct evidence.
19            Since an essential element of the crime charged is
20   intent to defraud it follows that good faith on the part of the
21   defendant is a complete defense to a charge of securities
22   fraud.  It is for you to decide whether defendant acted in good
23   faith or not.  If you decide that the defendant at all relevant
24   times acted in good faith, even if he was mistaken in that
25   belief, it is your duty to acquit him.  That is because the law

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5626

14PFRAJ2                          Jury charge

1   is not violated if the defendant held an honest belief that his
2   actions were proper and not in furtherance of any illegal
3   venture.  The defendant has no burden to establish the defense
4   of good faith.  Rather, the burden is on the government to
5   prove criminal intent and the lack of good faith beyond a
6   reasonable doubt.
7            To conclude on this element, if you find that the
8   defendant was not a knowing participant in the scheme and
9   lacked the intent to defraud, you must acquit.  Conversely, if
10  you find that the government has established beyond a
11  reasonable doubt not only the first element, namely, the
12  existence of a scheme to defraud, insider trading, but also the
13  second element, that the defendant was a knowing participant
14  and acted with intent to defraud, then you must consider the
15  third element as to which I will now instruct you.
16           The third and final element the government must prove
17  beyond a reasonable doubt with respect to each of the crimes
18  charged in Counts Six through Fourteen is that the defendant
19  knowingly used or caused to be used any instrumentality of
20  interstate commerce or a facility of a national securities
21  exchange in furtherance of that scheme to defraud.  The New
22  York Stock Exchange, the National Association of Securities
23  Dealers automatic quotation system, which is known as NASDAQ,
24  the American Stock Exchange and the Chicago Board of Option
25  Exchanges are all national security exchanges.

5627

14PFRAJ2                          Jury charge
1           The government need not prove that the defendant
2      directly or personally was involved in any use of an
3      instrumentality of interstate commerce or use of any facility
4      of a national securities exchange.  It is enough if you find
5      that the defendant by his acts directly or indirectly initiated
6      the steps or induced others to initiate steps that resulted in
7      a chain of cause and effect resulting in the use of an
8      instrumentality of interstate commerce or the use of a facility
9      of a national securities exchange.  This could mean something
10     such as placing a telephone call or placing an order with a
11     trader or brokerage firm to buy or sell a security on a
12     national exchange.  Similarly, if the defendant's conduct would
13     naturally or probably result in the use of an instrumentality
14     of interstate commerce, this third element would be satisfied.
15           The use of any instrumentality of interstate commerce
16     or of a national security exchange need not be central to the
17     execution of a scheme or even be incidental to such a scheme.
18     All that is required is that the use of any instrumentality of
19     interstate commerce bears some relation to the conduct of the
20     scheme or fraudulent conduct.
21           Let me shift now from the substantive counts of
22     security fraud to the conspiracy counts that are discussed in
23     Counts One through Five.  I have just discussed the elements of
24     the substantive counts of securities fraud that are found in
25     Counts Six through Fourteen.  I'll now talk about Counts One
                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

5628

14PFRAJ2                          Jury charge
1  through Five, which charges the defendant with five different
2  conspiracies in violation of Section 371 of Title 18 of the
3  United States Code.
4           This provides as follows:  If two or more persons
5  conspire to commit any crime against the United States or to
6  defraud the United States or any agency thereof in any manner
7  or for any purpose, and one or more of such persons do any act
8  to effect the object of a conspiracy, each is guilty of a
9  crime.
10          The defendant is charged in Counts One through Five
11 with conspiracies to violate the Securities Exchange Act of
12 1934, which as you know makes it unlawful to commit securities
13 fraud, specifically the kind of securities fraud that I have
14 been discussing as insider trading.  As I mentioned, Count One
15 charges that Mr. Rajaratnam conspired with certain then current
16 and former Galleon employees to obtain, share and trade on
17 material, non-public information about various companies.
18          Count Two charges that Mr. Rajaratnam conspired with
19 Roomy Khan to obtain and trade on material, non-public
20 information about various companies, including Polycom, Hilton
21 and Google.
22          Count Three charges that Mr. Rajaratnam conspired with
23 Rajiv Goel, an employee of Intel, to obtain and trade on
24 material, non-public information about various companies,
25 including Intel, Clearwire and People Support.
                  SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5629

14PFRAJ2                    Jury charge

1          Count Four charges that Mr. Rajaratnam conspired with
2    Anil Kumar, an employee of McKinsey, to obtain and trade on
3    material, non-public information about various companies
4    including AMD, ATI and eBay.  And finally, Count Five charges
5    that Mr. Rajaratnam conspired with Danielle Chiesi, an employee
6    of a hedge fund called New Castle, to obtain and trade on
7    material, non-public information about various companies
8    including Akamai and AMD.
9          The essence of the crime of conspiracy is an agreement
10   or understanding to violate another law.  The crime of
11   conspiracy or unlawful agreement is an independent offense,
12   that is, the conspiracy is separate and distinct from the
13   actual violation of any specific federal law.  The actual
14   violation of any specific federal law is what we've been
15   referring to as substantive crimes or substantive counts.
16   Counts One through Five charge conspiracies to commit the
17   substantive crime of insider trading whose elements I've
18   already described to you.
19         Congress has deemed it appropriate to make conspiracy
20   standing alone a separate crime, even if the object of the
21   conspiracy is not achieved.  This is because collusive criminal
22   activity poses a greater threat to the public safety and
23   welfare than individual conduct and increases the likelihood of
24   success of a particular criminal venture.  The law of
25   conspiracy serves ends different from and complementary to
                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

5630

14PFRAJ2                         Jury charge

1  those served by criminal prohibitions of the substantive
2  offense itself.  Given that a conspiracy and a substantive
3  crime are distinct and independent offenses, you may find the
4  defendant guilty of the crime of conspiracy, even if you find
5  that he actually never committed the substantive crimes that
6  were the objects of the conspiracy.  By the same token, you may
7  find the defendant guilty of committing one of the substantive
8  crimes even if you find the defendant not guilty of the
9  conspiracy charge.
10        To sustain its burden of proof with respect to a
11  conspiracy charge, the government must prove beyond a
12  reasonable doubt each of the following elements:  First, the
13  government must prove that the conspiracy charged in a count
14  existed, that is, that there was an agreement or understanding
15  among at least two people to violate the laws of the United
16  States.  Second, the government must prove that the defendant
17  knowingly and willfully became a member of that conspiracy.
18  Third, the government must prove that any one of the members of
19  the conspiracy, not necessarily the defendant, but any one
20  member of the conspiracy, knowingly committed at least one
21  overt act in furtherance of the conspiracy.  Each of these
22  elements must be satisfied beyond a reasonable doubt.
23        The fist element the government must prove beyond a
24  reasonable doubt to establish the offense of conspiracy is that
25  two or more people entered the unlawful agreement charged in

14PFRAJ2                    Jury charge

1  the indictment.  In other words, the government must prove that
2  there in fact was an agreement or understanding to violate
3  those provisions of the law which make it unlawful to engage in
4  insider trading.  Conspiracy is a combination or agreement or
5  understanding of two or more people to accomplish by concerted
6  or collective action a criminal or unlawful purpose.  With
7  respect to Counts One through Five, the unlawful purpose
8  alleged to have been the objects of the conspiracy were the
9  violations of those provisions of the law that make it illegal
10  to engage in insider trading.  In other words, the government
11  alleges that there was an agreement or understanding and that
12  its objectives were to engage in insider trading.
13          Conspiracies are entirely distinct and separate
14  offenses from the substantive ends of insider trading.  The
15  gist or the essence of the crime of conspiracy is an unlawful
16  agreement between two or more people to violate the law.  The
17  ultimate success of the conspiracy or the actual commission of
18  the crime that is the object of the conspiracy is not required.
19          Now, to show a conspiracy, the government is not
20  required to show that two or more people sat around a table and
21  entered into a solemn act orally or in writing stating that
22  they have formed a conspiracy to violate the law and spelling
23  out all the details.  Common sense tells you that when people
24  agree to enter into a criminal conspiracy, much is left to
25  unexpressed understanding.  It is rare that a conspiracy can be

5632

14PFRAJ2                    Jury charge
1   proven by direct evidence of an explicit agreement.  In order
2   to show that a conspiracy existed, the evidence must show that
3   two or more persons in some way or manner, either explicitly or
4   implicitly, came to an understanding to violate the law and to
5   accomplish the unlawful plan.  If you find beyond a reasonable
6   doubt that two or more persons came to an understanding,
7   express or implied, to violate the law and to accomplish an
8   unlawful plan, then the government will have sustained its
9   burden of proof as to this element.
10          In determining whether there has been an unlawful
11  agreement as alleged in Counts One through Five, you may
12  consider the actions of all the alleged co-conspirators that
13  were taken to carry out the apparent criminal purpose.  The old
14  adage "actions speak louder than words" applies here.  Often
15  the only evidence that is available with respect to the
16  existence of a conspiracy is that of the various acts on the
17  part of the alleged individual co-conspirators.  When taken all
18  together and considered as a whole, however, that conduct may
19  warrant the inference that a conspiracy existed just as
20  conclusively as more direct proof such as the evidence of an
21  express agreement.  So you must first determine whether or not
22  the proof established beyond a reasonable doubt the existence
23  of a conspiracy charged in a particular count in the
24  indictment.
25          In considering this first element, you should consider
SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5633

14PFRAJ2                    Jury charge

1   all the evidence that has been admitted with respect to the
2   conduct and statements of each alleged co-conspirator and any
3   inferences that may reasonably be drawn from that conduct and
4   those statements.  It is sufficient to establish the existence
5   of a conspiracy, as I have already said, if from the proof of
6   all the relevant facts and circumstances you find beyond a
7   reasonable doubt that two alleged co-conspirators had an
8   understanding to accomplish the objectives of the conspiracy
9   charged in the indictment.
10          With respect to each conspiracy count charged in
11  Counts One through Five, you must also find that the alleged
12  conspiracy had one or more illegal objectives.  The objectives
13  of a conspiracy are the illegal goals that the co-conspirators
14  agree or hope to achieve.  Here the defendant is charged in
15  counts One through Five with agreeing with others to commit
16  insider trading.  I've already explained the elements of that
17  offense in instructing you on the substantive charges.  If the
18  government fails to prove beyond a reasonable doubt that the
19  objective of the conspiracy alleged in the count that you are
20  considering was insider trading, then you must find the
21  defendant not guilty on that count.  However, if you
22  unanimously find beyond a reasonable doubt that the defendant
23  and others agreed to accomplish the objective alleged in the
24  conspiracy count you are considering, then the illegal purpose
25  element will have been satisfied.

5634

14PFRAJ2                        Jury charge

1               Count One charges a conspiracy between Mr. Rajaratnam
2       and certain Galleon employees to engage in insider trading.  In
3       addition to the instructions that I have just provided you
4       regarding conspiracies in general, for Count One you must also
5       determine whether the government has proven the single
6       conspiracy charged in Count One or different separate
7       conspiracies.  Whether there existed a single unlawful
8       agreement or many such agreements or, indeed, no agreement at
9       all is a question of fact for you, the jury, to determine in
10      accordance with the instructions I give you.
11              When two or more people join together to further one
12      common unlawful design or purpose, a single conspiracy exists.
13      By way of contrast, multiple conspiracies exist when there are
14      separate unlawful agreements to achieve distinct purposes.
15      Proof of several separate and independent conspiracies is not
16      proof of a single overall conspiracy charged in Counts One of
17      the indictment, unless one of the conspiracies proved happens
18      to be the single conspiracy described in Count One of the
19      indictment.
20              You may find that there was a single conspiracy
21      despite the fact that there were changes in personnel by the
22      termination, withdrawal or additions of new members or
23      activities or both, so long as you find that some of the
24      co-conspirators continued to act for the entire duration of the
25      conspiracy for the purposes charged in the indictment.  The
                       SOUTHERN DISTRICT REPORTERS, P.C.
                             (212) 805-0300

5635

14PFRAJ2                    Jury charge

1    fact that the members of the conspiracy are not always
2    identical does not necessarily imply that separate conspiracies
3    exist.  On the other hand, if you find that the conspiracy
4    charged in Count One of the indictment did not exist, you
5    cannot find the defendant guilty of the single conspiracy
6    charged in Count One of the indictment.  This is so even if you
7    find that some conspiracy other than the one charged in the
8    indictment existed, even though the purpose of both
9    conspiracies may have been the same, and even though there may
10   have been some overlap in membership.
11            Similarly, if you find that the defendant was a member
12   of another conspiracy and not the one charged in the
13   indictment, then you must acquit the defendant of the
14   conspiracy charged.  Therefore, what you must do to determine
15   whether the conspiracy charged in Count One existed is to
16   determine the nature and the membership of that conspiracy.
17            If you conclude that the government has proven beyond
18   a reasonable doubt that the conspiracy charged in the count you
19   are considering exists, you must then proceed to the second
20   element of the conspiracy charges, and that is membership.  You
21   must determine whether the defendant joined the conspiracy
22   knowing its unlawful purpose or purposes and with the specific
23   intent to further its unlawful objective.  The government must
24   prove beyond a reasonable doubt that the defendant unlawfully,
25   willfully and knowingly entered into the conspiracy, that is

14PFRAJ2                    Jury charge

1  the agreement, with a criminal intent, that is, with the
2  purpose to violate the law and that he agreed to take part in
3  the conspiracy with knowledge of its unlawful purpose and with
4  the specific intention of furthering its objective.  In this
5  case that objective was the offense of insider trading.
6           I've already defined "willfully" and "knowingly" when
7  I instructed you as to the substantive charges.  Let me now
8  define "unlawfully" to you.  Unlawfully simply means contrary
9  to law.  Science has not yet devised a manner of looking into a
10  person's mind and knowing what that person is thinking.
11  However, you do have before you the evidence of certain acts
12  and conversations alleged to have taken place with the
13  defendant or in his presence.  The government alleges that
14  these acts and conversations show beyond a reasonable doubt the
15  defendant's knowledge of the unlawful purpose of the
16  conspiracy.  The defendant denies these allegations.  It is for
17  you to determine whether the government has established to your
18  satisfaction beyond a reasonable doubt that such knowledge and
19  intent on the part of the defendant existed.
20           It is not necessary for the government to show that
21  the defendant was fully informed as to all the details of the
22  conspiracy in order for you to infer knowledge on his part.  To
23  have guilty knowledge the defendant need not know the full
24  extent of the conspiracy or all the activities of all of its
25  participants.  It is not even necessary for the defendant to

                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5637

14PFRAJ2                    Jury charge
1    know every other member of the conspiracy.  In fact, the
2    defendant may only know one other member of a conspiracy and
3    still be a co-conspirator, nor is it necessary for a defendant
4    to receive any monetary benefit from his participation in a
5    conspiracy or even have a financial stake in the outcome.  It
6    is enough if he participated in the conspiracy unlawfully,
7    intentionally and knowingly as I have defined these terms.
8         The duration and extent of the defendant's
9    participation in the conspiracy has no bearing on the issue of
10   his guilt.  He need not have joined the conspiracy at the
11   outset.  He may have joined at any time it was in progress and
12   he will still be held responsible for all that was done before
13   he joined and all that was done during the conspiracy's
14   existence while he was a member.  Each member of the conspiracy
15   may perform separate and distinct acts.  Some conspirators play
16   major roles while others play minor roles in the scheme.  An
17   equal role is not what the law requires.  In fact, even a
18   single act may be sufficient to draw a defendant within the
19   scope of the conspiracy.  However, I want to caution you that a
20   person's mere association with a member of a conspiracy does
21   not make that person a member of the conspiracy even when that
22   association is coupled with knowledge that a conspiracy is
23   taking place.  Similarly, mere presence at the scene of a
24   crime, even coupled with knowledge that a crime is taking
25   place, is not sufficient to support a conviction.  In other

5638

14PFRAJ2                    Jury charge

1   words, knowledge without agreement and participation is not
2   sufficient.
3           What is necessary is that a defendant participated in
4   a conspiracy with knowledge of its unlawful purpose and with an
5   intent to aid in the accomplishment of its unlawful objective.
6   In sum, the defendant with an understanding of the unlawful
7   nature of the conspiracy must have intentionally engaged,
8   advised or assisted in the unlawful objective for the purpose
9   of furthering an illegal undertaking.  The defendant thereby
10  becomes a knowing and willing participant in the unlawful
11  agreement, that is to say, a conspirator.  A conspiracy once
12  formed is presumed to continue until either its objective is
13  accomplished or there's some affirmative act of termination by
14  its members.  So, too, once a person is found to be a member of
15  a conspiracy, he is presumed to continue his membership in the
16  venture until its termination unless it is shown by some
17  affirmative proof that he withdrew and disassociated himself
18  from it.
19          The third element of conspiracy that the government
20  must prove beyond a reasonable doubt is that at least one of
21  the co-conspirators, not necessarily the defendant, committed
22  at least one overt act in furtherance of the conspiracy here in
23  the Southern District of New York, which includes New York
24  City, New York.  The purpose of the overt act requirement is
25  that there must be some overt step or action by at least one of

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5639

14PFRAJ2                    Jury charge
1   the conspirators in furtherance of the conspiracy.  The overt
2   act element is a requirement that the agreement went beyond the
3   mere talking stage, the mere agreement stage.  The requirement
4   of overt act is a requirement that some action be taken during
5   the life of the conspiracy by one of the co-conspirators in
6   order to further that conspiracy.
7           I'm going to read to you, you'll find it in the
8   indictment, but I'll read to you the overt acts that are
9   alleged in each of the five counts of conspiracy.  The overt
10  acts alleged in the indictment in connection with Count One
11  are, A, that in or about 2005, a co-conspirator provided Mr.
12  Rajaratnam with inside information relating to Integrated
13  Circuit Systems, Inc.
14          B, that in or about 2006, Mr. Rajaratnam obtained
15  inside information relating to Xilinx, Inc.
16          C, that in or about March, 2008, Mr. Rajaratnam
17  provided a co-conspirator with inside information relating to
18  Clearwire Corporation.
19          D, that in or about May, 2008 in New York, New York a
20  co-conspirator provided Mr. Rajaratnam with inside information
21  relating to Vishay Intertechnology, Inc.
22          E, that in or about May, 2008, Mr. Rajaratnam provided
23  one or more co-conspirators with inside information relating to
24  Spansion, Inc.
25          F, that in or about August, 2008, Mr. Rajaratnam
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

5640

14PFRAJ2                      Jury charge
1    provided a co-conspirator with inside information related to
2    Advanced Micro Devices or AMD, and, G, that in or about
3    October, 2008, Mr. Rajaratnam provided a co-conspirator with
4    inside information relating to Goldman Sachs Group, Inc.
5          The overt acts alleged in the indictment in connection
6    with Count Two are, A, that on or about January 9, 2006, Roomy
7    Khan sent the following instant message to Mr. Rajaratnam in
8    New York, New York:  "Do not buy PLCM till I get guidance.
9    Want to make sure guidance okay."
10         B, that in or about January 2006 in New York, New
11   York, Mr. Rajaratnam caused Galleon tech to purchase shares of
12   Polycom common stock which traded under the symbol PLCM.
13         C, that on or about July 3, 2007 in New York, New
14   York, Mr. Rajaratnam caused Galleon tech to purchase
15   approximately 400,000 shares of Hilton common stock which
16   traded under the symbol HLT, and, D, that in or about July 2007
17   in New York, New York, Mr. Rajaratnam caused Galleon tech and
18   diversified to execute transactions in the securities of
19   Google.
20         The overt acts alleged in the indictment in connection
21   with Count Three are, A, that in or about April 2007, Mr. Goel
22   provided Mr. Rajaratnam with inside information about Intel's
23   quarterly earnings for the quarter ended in March 2007.  B,
24   that on or about March 20, 2008, Mr. Goel made a call to a cell
25   phone used by Mr. Rajaratnam.  And, C, that on or about

5641
14PFRAJ2                    Jury charge

1   March 24, 2008 in New York, New York, Mr. Rajaratnam caused
2   Galleon tech to purchase approximately 125,800 shares of
3   Clearwire common stock.
4            The overt acts alleged in the indictment in connection
5   with Count Four are A, that in or about 2006 Mr. Kumar spoke to
6   Mr. Rajaratnam by telephone about AMD's planned acquisition of
7   ATI.  B, that on or about August 15, 2008, Mr. Kumar spoke with
8   Mr. Rajaratnam on Mr. Rajaratnam's cell phone and, C, that on
9   or about August 15, 2008, in New York, New York, Mr. Rajaratnam
10  caused Galleon tech to purchase shares of AMD common stock.
11           And finally, with respect to Count Five, the overt
12  acts alleged in the indictment are, A, that on or about
13  July 24, 2008, Ms. Chiesi called Mr. Rajaratnam from New York,
14  New York; B, that on or about July 25, 2008 in New York, New
15  York, Mr. Rajaratnam caused Galleon tech to sell short
16  approximately 138,550 shares of Akamai common stock which
17  traded under the symbol AKAM, and, C, that on or about
18  September 3, 2008, Mr. Rajaratnam spoke on the telephone with
19  Ms. Chiesi, who was in New York, New York.
20           You are not required to find that the specific overt
21  acts identified in the indictment were committed.  You may find
22  that overt acts were committed that are not alleged in the
23  indictment.  The only requirement is that one of the members of
24  the conspiracy, again, not necessarily the defendant, has taken
25  some step or action in furtherance of the conspiracy in the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5642

14PFRAJ2                       Jury charge

1    Southern District of New York, which includes New York, New
2    York during the life of the conspiracy.  You are further
3    instructed that the overt act need not have been committed at
4    precisely the time alleged in the indictment.  It is sufficient
5    you are convinced beyond a reasonable doubt that it occurred at
6    or about the time and place stated, as long as it occurred
7    while the conspiracy was still in existence.  However, you must
8    all agree on at least one overt act that a conspirator
9    committed in order to satisfy this element.
10            In other words, it is not sufficient for you to agree
11   that some overt act was committed without agreeing on which
12   overt act was committed.  You should bear in mind that the
13   overt act standing alone may be an innocent lawful act.
14   Frequently, however, an apparently innocent act sheds its
15   harmless character if it is a step in carrying out, promoting,
16   aiding or assisting the conspiratorial scheme.  You are
17   therefore instructed the overt act does not have to be an act
18   that in and of itself was criminal or constitutes the objective
19   of conspiracy.
20            (Continued next page)
21            THE COURT:  The indictment charges that the
22   conspiracies set forth in Counts One through Five existed
23   during certain time periods.  It is not essential that the
24   government prove that the conspiracies started and ended on
25   those specific dates.  Indeed, it is sufficient if you find
                 SOUTHERN DISTRICT REPORTERS, P.C.
                          (212) 805-0300

5643

14P8RAJ3                    Charge
1    that in fact the charged conspiracy you are considering was
2    formed and that it existed for some time within the period set
3    forth in the indictment, and that at least one overt act was
4    committed in furtherance of the conspiracy within that period.
5             There is one final element of the charges that I need
6    to instruct you about, and that applies to each one of the
7    substantive charges and each one of the conspiracy charges.  In
8    addition to the elements I have described to you in the
9    indictment, the government must prove, with respect to each of
10   the counts charged, that an act in furtherance of the crimes
11   occurred within the Southern District of New York.  The
12   Southern District of New York includes all of Manhattan.
13            Now, the law does not require that every aspect of the
14   crime charged in each count of the indictment occur within the
15   Southern District of New York.  It simply requires that some
16   act in furtherance of the crime occur there.  With respect to
17   the conspiracy, it does not require that all of the steps of the
18   the conspiracy took place in the Southern District of New York.
19   Indeed, it is sufficient if some act in furtherance of the
20   conspiracy took place in this district.
21            I should note that on the venue issue, and on this
22   issue alone, the government need not prove venue beyond a
23   reasonable doubt, but only by a mere preponderance of the
24   evidence.  Thus, the government has satisfied its venue
25   obligations if you conclude that it is more likely than not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5644

14P8RAJ3                        Charge
1    that any act in furtherance of the crimes charged occurred in
2    the Southern District of New York.  If you find that the
3    government has failed to prove this venue requirement by a
4    preponderance of the evidence, then you must acquit the
5    defendant of the charge that you are considering.  However,
6    with respect to all of the other elements, keep in mind that
7    the government must prove those elements beyond a reasonable
8    doubt.
9            That concludes my instructions as to the elements of
10   the crimes charged.  I will now give you a few additional
11   instructions regarding your duties as jurors.
12           Under your oath as jurors, you cannot allow a
13   consideration of possible punishment that may be imposed upon a
14   defendant, if convicted, to influence you in any way or in any
15   sense to enter into any of your deliberations.  The duty of
16   imposing sentence is for the Court and for the Court alone.
17   Your function is to review the evidence and determine whether
18   the defendant is or is not guilty upon the basis of the
19   evidence and the law.  Therefore, I instruct you not to
20   consider punishment or possible punishment in any way in your
21   deliberations in this case.
22           You are about to go into the jury room and begin your
23   deliberations.  You will have in the jury room copies of the
24   exhibits introduced into evidence should you wish to consult
25   with them during your deliberations.  If during those
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5645

14P8RAJ3                         Charge
1   deliberations you want to hear any of the recorded calls that
2   have been introduced into evidence, they will be played for you
3   back here in the courtroom.  If you want any testimony read
4   back to you, that will also be done here back in the courtroom.
5   Please remember that it is not always easy to locate a specific
6   piece of testimony or particular tapes, so be as specific as
7   you can in making your requests.
8           Your requests for testimony or to hear recordings --
9   in fact, any communication with the Court -- should be made to
10  me in writing, signed by your foreperson, and given to the
11  marshal outside your door.  I will respond to any questions or
12  requests you have as promptly as possible, either in writing or
13  by having you return to the courtroom so that I can speak to
14  you directly.  In any event, do not tell me or anyone else how
15  the jury stands on the issue of the defendant's guilt until a
16  unanimous verdict is reached.
17          Your verdict must be based solely upon the evidence
18  developed at the trial or the lack of evidence.  It would be
19  improper for you to consider, in reaching your decision as to
20  whether the government has sustained its burden of proof, to
21  rely on any personal feelings you may have about the
22  defendant's race, religion, national origin, sex or age.  All
23  persons are entitled to the presumption of innocence and the
24  government has the burden of proof.
25          Similarly, it would be improper for you to consider
                 SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5646

14P8RAJ3                          Charge
1   any personal feelings you might have about the race, religion,
2   national origin, sex or age of any of the witnesses that have
3   come before you.  The defendant is entitled to a trial free
4   from prejudice and our judicial system cannot work unless you
5   reach a verdict through a fair and impartial consideration of
6   the evidence.
7           Under your oath as jurors, you are not to be swayed by
8   sympathy.  You are to be guided solely by the evidence in the
9   case, and the crucial question you must ask yourselves as you
10  sift through the evidence is:  Has the government proven the
11  guilt of the defendant beyond a reasonable doubt as to any
12  count that you are considering?
13          It is for you and you alone to decide whether the
14  government has proved the defendant guilty of the crime
15  charged, solely on the basis of the evidence and subject to the
16  law as I have now instructed you.  It must be clear to you that
17  once you let fear or prejudice or bias or sympathy interfere
18  with your thinking, there is a risk that you won't come to a
19  true and just verdict.
20          If you have a reasonable doubt as to the defendant's
21  guilt, you should not hesitate to render a verdict of acquittal
22  on that charge for the defendant.  But, on the other hand, if
23  you find that the government has met its burden of proof with
24  respect to a particular count, you should not hesitate because
25  of sympathy or any other reason to render a verdict of guilty
                    SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

5647

14P8RAJ3                    Charge

1    on that charge.
2            I will, as I said, send a copy of the indictment into
3    the jury room for you to have during your deliberations.  You
4    may use it to read the crimes with which the defendant is
5    charged with committing.  You are reminded, however, that an
6    indictment is merely an accusation and is not to be used by you
7    as proof of any of the conduct charged.
8            A verdict form has also been provided for your
9    convenience and you will be given a copy of this form in the
10   jury room.  The answer to each question must be the unanimous
11   answer of the jury.  Your foreperson will check off the
12   unanimous answers of the jury in the space provided below each
13   question.  Follow the verdict form carefully.
14           After you have reached your decision, your foreperson
15   will in the form that has been given to you.  Once complete,
16   the foreperson should sign and date the form and advise the
17   marshal outside your door that you are ready to return to the
18   courtroom.  I stress that each of you should be in agreement
19   with the verdict, which will be announced in court.  Once your
20   verdict is announced in court, it cannot ordinarily be changed.
21   Nothing said in these jury instructions and nothing in the
22   verdict form provided for your convenience is meant to suggest
23   or convey in any way or manner any hint as to what verdict I
24   think you should find.  What the verdict shall be is your sole
25   and exclusive duty and yours alone.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                         (212) 805-0300

5648

14P8RAJ3                        Charge

1          Before you begin your deliberations, you should select
2     someone to act as the foreperson.  The foreperson will preside
3     over the deliberations, speak to me here in open court, and be
4     responsible for signing all communications with the Court.
5     Other than those functions, the foreperson shall have no
6     greater or less authority than any other juror.
7          Your function now is to weigh the evidence in this
8     case and to determine the guilt or nonguilt of the defendant
9     with respect to each count of the indictment.
10          You must base your verdict solely on the evidence and
11     these instructions as to the law and you are obliged under your
12     oath as jurors to follow the law as I have instructed you,
13     whether you agree or disagree with the particular law in
14     question.
15          The verdict must represent the considered judgment of
16     each juror.  In order to return a verdict, it is necessary that
17     each juror agree to it.  Your verdict must be unanimous.
18          It is your duty as jurors to consult with one another
19     and to deliberate with a view to reaching an agreement, if you
20     possibly can do so without violence to individual judgment.
21     Each of you must decide the case for him or herself, but to do
22     so only after an impartial discussion and consideration of all
23     the evidence in the case with your fellow jurors.  In the
24     course of your deliberations, do not hesitate to reexamine your
25     own views and change an opinion if you are convinced it is

5649

14P8RAJ3                        Charge
1   erroneous.  But do not surrender your honest conviction as to
2   the weight or effect of the evidence, solely on the basis of
3   the opinion of your fellow jurors.
4            Remember at all times, you are not partisans.  You are
5   judges -- judges of the facts.  Your sole interest is to
6   determine, with respect to each count, whether the prosecution
7   has proven guilt beyond a reasonable doubt.
8            If you are divided, do not report how the report
9   stands, and if you have reached a verdict, do not report what
10   it is until you are asked in open court.
11            In conclusion, ladies and gentlemen, I am that sure if
12   you listen to the views of your fellow jurors and if you apply
13   your own common sense, you will reach a fair verdict here.
14            That's the completion of the Court's instructions.
15            Mr. Donald, would you swear the marshal in, please?
16            (Marshal sworn)
17            THE COURT:  The jury is requested to retire to the
18   jury room and begin your deliberations.  You can determine how
19   late you will sit today.  Just advise the Court.
20            MR. STREETER:  With respect to the alternates?
21            THE COURT:  I am going to ask the four alternates in
22   the back row to remain in their seats.
23            (At 12:00 p.m., the jury retired to deliberate)
24            THE COURT:  The alternate juror's job is not yet done
25   because you can never tell during the course of deliberations

5650

14P8RAJ3                    Charge
1    when a juror or jurors may have to be excused for a variety of
2    reasons.  So I am going to ask you to be on call.  You can go
3    home as long as you have a cell phone or a phone where we can
4    reach you if we need to call you back.  You shouldn't discuss
5    the case with anybody at this point because you can't tell
6    whether or not you're going to wind up as a juror in this case.
7            Thank you, of course, for the seven-plus weeks of
8    attention you have devoted to the case, and please stand by and
9    speak to Mr. Donald, because it's not infrequent that we have
10   to bring an alternate juror back and they have to then begin to
11   participate in the deliberations.
12           Thank you very much.
13           (Alternate jurors exit courtroom)
14           THE COURT:  Anything further at this point, counsel?
15           MR. STREETER:  Not from the government.
16           MR. DOWD:  No, your Honor.
17           THE COURT:  All right then.
18           (Recess pending verdict)
19                          o0o
20           (In open court; jury not present)
21           THE COURT:  We have two notes from the jurors to put
22   on the record.  The first note, which I've marked as Court
23   Exhibit 4 with today's date, issued at 1:30 it says that I,
24   Robert Jirmanson, foreman, request leaving at 4:00 p.m. today
25   due to doctor's appointment for another juror, so they're

# EXHIBIT C

Ct. Ex. 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------x
UNITED STATES OF AMERICA            :
                                    :
           -v-                      :           11 Cr. 161 (JSR)
                                    :
WINIFRED JIAU,                      :
                                    :
                     Defendant.     :
-----------------------------------------------------x

## THE COURT'S INSTRUCTIONS OF LAW TO THE JURY



TABLE OF CONTENTS

I. GENERAL INSTRUCTIONS

1.      Duty of the Court

2.      Duty of the Jury

3.      Duty of Impartiality

4.      Burden of Proof

5.      Reasonable Doubt

6.      Direct and Circumstantial Evidence

7.      Witness Credibility

8.      A Defendant's Right Not to Testify

II. THE CHARGES

9.      Securities Fraud

10.     Venue

11.     Conspiracy

III. CONCLUDING INSTRUCTIONS

12.     Selection of Foreperson; Right to See Exhibits and Hear Testimony;
        Communications with Court

13.     Verdict; Need for Unanimity; Duty to Consult

## II.  THE CHARGES

### INSTRUCTION NO. 9

*Securities Fraud*

With these preliminary instructions in mind, let us now turn to the two specific charges against the defendant.

The first charge against the defendant is securities fraud.

In order to prove Ms. Jiau guilty of this charge, the Government must prove beyond a reasonable doubt each of the following three elements:

First, that in or around May, 2008, Ms. Jiau engaged in an "insider trading" scheme, in that she unlawfully obtained from an employee of Marvell Technology Group material non-public information about Marvell that she then in effect sold to persons who traded on that information;

Second, that when she engaged in this scheme, Mr. Jiau acted knowingly, willfully, and with an intent to defraud Marvell; and

Third, that in furtherance of the scheme, there occurred at least one use of any means or instruments of transportation or communication in interstate commerce or the use of the mails or any facility of any national securities exchange.

As to the first element, each employee of a company like Marvell has a legal duty not to disclose to anyone outside the company financial or other information about the company that the company has not yet made public and that has not otherwise been disclosed to the general public.  This confidential "inside information" is "material" if a reasonable investor would consider it important in deciding whether to buy or sell Marvell stock.  In order to establish the first element in the context of this case, the Government must prove beyond a reasonable doubt, first, that in or around May, 2008, Ms. Jiau induced Stanley Ng, an employee of Marvell, to

11

disclose to her material inside information about Marvell's earnings and/or finances, in return for which Mr. Ng anticipated some kind of benefit, however modest, such as stock tips or simply friendship; and, second, that Ms. Jiau then disclosed this information to Samir Barai and/or Jason Pflaum, in return for money and/or other things of value, anticipating that Barai's hedge fund would trade on the basis of this inside information.

As to the second element, the Government must prove beyond a reasonable doubt that Ms. Jiau undertook this insider trading scheme "knowingly" (that is, consciously and voluntarily, rather than by mistake or accident or mere inadvertence), "willfully" (that is, deliberately and with a bad purpose), and with an "intent to defraud" (that is, with an intent to cheat Marvell).

As to the third element, the Government must prove beyond a reasonable doubt that the execution of the insider trading scheme involved at least one use of any instrumentality of interstate commerce, such as an interstate telephone call, or the mails, or a facility of a national securities exchange, such as a stock trade on the New York Stock Exchange, the National Association of Securities Dealers Automatic Quotation System (known as NASDAQ), the American Stock Exchange, or the Chicago Board Options Exchange.

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------x
                                 :
UNITED STATES OF AMERICA,
                                 :
        - v. -                         S1 11 Cr. 161 (JSR)
                                 :
WINIFRED JIAU,
        a/k/a "Wini,"            :
                Defendant.
                                 :
---------------------------------x

GOVERNMENT'S REQUESTS TO CHARGE

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the United States
                           of America

AVI WEITZMAN
DAVID LEIBOWITZ
Assistant United States Attorneys
Southern District of New York

        - Of Counsel -

## Table of Contents

Request No.                                                           Page

  1        General Requests. . . . . . . . . . . . . .      1

  2        The Indictment . . . . . . . . . . . . . .      2

  3        Conspiracy And Substantive Counts  . . . . . .  4

  4        Count One - Conspiracy:
           The Statute and the Charge . . . . . . .        5

  5        Count One - Conspiracy:
           Elements Of Conspiracy . . . . . . . . .        7

  6        Count One - Conspiracy:  First Element --
           Existence Of The Conspiracy . . . . . .         9

  7        Count One - Conspiracy:  Second Element --
           Membership In The Conspiracy . . . . . .       15

  8        Count One - Conspiracy:  Third Element --
           Overt Acts . . . . . . . . . . . . . . .       19

  9        Count One - Conspiracy:
           Time Of Conspiracy . . . . . . . . . . .       21

 10        Liability for Acts and Declarations of
           Co-Conspirators . . . . . . . . . . . . .      22

 11        Count Two - Securities Fraud:
           The Statute, the Rule and the Charge . .       23

 12        Count Two - Securities Fraud:
           Elements of the Offense. . . . . . . . .       27

 13        Count Two - Securities Fraud:
           First Element --
           Scheme or Artifice to Defraud --
           Insider Trading  . . . . . . . . . . . .       28

 14        Count Two - Securities Fraud:
           First Element -
           Scheme or Artifice to Defraud -
           Relationship of Trust or Confidence . . .      31

i

| Request No. | | Page |
|---|---|---|
| 15 | Count Two – Securities Fraud:<br>First Element --<br>Scheme or Artifice to Defraud --<br>Breach of Duty of Trust or Confidence . | 33 |
| 16 | Count Two – Securities Fraud:<br>First Element --<br>Scheme or Artifice to Defraud --<br>Knowledge of Breach . . . . . . . . . . | 36 |
| 17 | Count Two – Securities Fraud:<br>First Element --<br>Scheme or Artifice to Defraud --<br>Use of Inside Information. . . . . . . | 37 |
| 18 | Count Two – Securities Fraud:<br>First Element --<br>Scheme or Artifice to Defraud --<br>In Connection With Purchase or Sale. . . | 39 |
| 19 | Count Two – Securities Fraud:<br>First Element --<br>Scheme or Artifice to Defraud --<br>Benefit to Tipper . . . . . . . . . . | 40 |
| 20 | Count Two – Securities Fraud:<br>Second Element --<br>Knowledge, Intent and Willfulness . . . | 43 |
| 21 | Count Two – Securities Fraud:<br>Third Element --<br>Instrumentality of Interstate Commerce. . | 46 |
| 22 | Proof of Profit Not Necessary . . . . . . . . | 49 |
| 23 | Venue . . . . . . . . . . . . . . . | 50 |
| 24 | Aiding And Abetting . . . . . . . . . . . | 52 |
| 25 | Wilfully Causing a Crime . . . . . . . . . | 55 |
| 26 | Particular Investigative Techniques<br>Not Required . . . . . . . . . . . . . | 57 |
| 27 | Accomplice Witnesses . . . . . . . . . . | 58 |

ii

| Request No. | | Page |
|---|---|---|
| 28 | Accomplice Testimony -- Guilty Plea . . . . . | 62 |
| 29 | Persons Not on Trial . . . . . . . . . . . | 63 |
| 30 | Defendant's Testimony . . . . . . . . . . | 64 |
| 31 | Defendant's Right Not To Testify . . . . . . | 65 |
| 32 | Stipulations . . . . . . . . . . . . | 66 |
| 33 | Law Enforcement and Government Employee Witnesses . . . . . . . . . . . . . . . . | 67 |
| 34 | Summary Charts . . . . . . . . . . . . . | 68 |
| 35 | Variance In Dates and Amounts . . . . . . . | 69 |
| 36 | Preparation Of Witnesses . . . . . . . . . | 70 |
| 37 | Uncalled Witness - Equally Available to Both Sides . . . . . . . . . . . . . | 71 |
| 38 | Use of Recordings and Transcripts . . . . . . | 72 |
| 39 | Similar Acts . . . . . . . . . . . . . . | 74 |

REQUEST NO. 13

Count Two - Securities Fraud:
First Element - Scheme or Artifice to Defraud - Insider Trading

The first element that the Government must prove beyond a reasonable doubt is that, in connection with the purchase or sale of Marvell stock, the defendant employed a device, scheme or artifice to defraud, or engaged in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller of the specified security.

A "device, scheme or artifice to defraud," is merely a plan for the accomplishment of any fraudulent objective. "Fraud" is a general term that embraces all efforts and means that individuals devise to take advantage of others.

The specific "device, scheme or artifice," and "act, practice, or course of business" that the Government alleges the defendant employed in connection with Count Two is known as "insider trading." An "insider" is one who comes into possession of material, nonpublic information about a specific security or stock by virtue of a relationship that involves trust and confidence. If a person has such material, nonpublic information by virtue of a position of trust or confidence, and his position of trust or confidence prevents him from disclosing that information, the law forbids that person from trading in the securities in question or assisting others to trade in securities

28

on the basis of that information.

The law also prohibits a person who is not actually an insider from trading in securities based on material nonpublic information, if the person knows that the material, nonpublic information was intended to be kept confidential and was disclosed in violation of a duty of trust or confidence.

The defendant is charged with insider trading as a "tippee," that is, based on the allegations that she received material, nonpublic information and wrongfully used it for her own benefit when she knew that the information had been disclosed in violation of a duty of confidentiality.  A person who receives material nonpublic information engages in an act of fraud or deceit under the federal securities laws if she buys or sells securities, or aids or abets the purchase or sale of securities, based on material, nonpublic information that she knows was disclosed by another person in breach of a duty of trust and confidence.

In order to find that the Government has established the first of the three essential elements of the federal crime of insider trading – namely, that, in connection with the purchase or sale of a security, the defendant employed a device, scheme or artifice to defraud – you must be persuaded of each of the following things beyond a reasonable doubt.  First, that the insider at Marvell who disclosed the information— the "tipper"—

29

had a relationship of trust and confidence with Marvell Technology Group, Ltd., and as a result of that relationship was entrusted with information with the reasonable expectation that he would keep it confidential and would not use it for personal benefit.  Second, that the tipper at Marvell directly or indirectly breached that trust by disclosing material, nonpublic information to WINIFRED JIAU in or about May 2008.  Third, that WINIFRED JIAU knew that the information she obtained had been disclosed in violation of a duty.  Fourth, that JIAU used the material, nonpublic information to purchase the security you are considering, or aided or abetted another in doing so.  In addition, the government must establish that the tipper personally benefitted in some way, directly or indirectly, from disclosing the material nonpublic information.

> Adapted from Sand, Instr. 57-23; the charge of The Hon.
> Richard J. Sullivan in United States v. Contorinis, 09
> Cr. 1083 (RJS); the charge of the Hon. Kimba M. Wood,
> in United States v. McDermott, 00 Cr. 61 (KMW)
> (S.D.N.Y.); and the charge of the Hon. Robert P.
> Patterson in United States v. Naseem, 07 Cr. 610
> (S.D.N.Y.).  See also United States v. Falcone, 257
> F.3d 226, 234 (2d Cir. 2001).

defendant is of bad character or has a propensity to commit

crime.

        Adapted from Sand Inst. 5-25, 5-26.

Dated:    New York, New York
            May 25, 2011

                     Respectfully submitted,

                     PREET BHARARA
                     United States Attorney for the
                     Southern District of New York

        By:  _____
                     Avi Weitzman
                     David Leibowitz
                     Assistant United States Attorneys
                     Tel. (212) 637-1205/1947

# EXHIBIT E

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
                                   :
UNITED STATES OF AMERICA,
                                   :
        - v. -
                                   :    S2 09 Cr. 1184 (RJH)
RAJ RAJARATNAM,
                                   :
              Defendant.
                                   :
----------------------------------x

GOVERNMENT'S REQUESTS TO CHARGE

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the United States
                          of America

JONATHAN R. STREETER
REED M. BRODSKY
Assistant United States Attorneys
ANDREW Z. MICHAELSON
Special Assistant United States Attorney
Southern District of New York

        - Of Counsel -

Table of Contents

Request No.                                                      Page

    1        General Requests. . . . . . . . . . . . . . .  1

    2        Summary of the Indictment . . . . . . . . .  2

    3        Conspiracy And Substantive Counts  . . . . .  4

    4        Conspiracy:
             The Statute and the Charge . . . . . . .  5

    5        Conspiracy:
             Elements of Conspiracy . . . . . . . .  7

    6        Conspiracy: First Element --
             Existence of the Conspiracy. . . . . . . .8

    7        Conspiracy: Second Element --
             Membership in the Conspiracy  . . . . . 10

    8        Conspiracy: Third Element --
             Overt Acts . . . . . . . . . . . . . . 14

    9        Conspiracy: Fourth Element --
             Commission of Overt Act in Furtherance
             Of the Conspiracy . . . . . . . . . . 17

   10        Conspiracy: Time of Conspiracy. . . . . . . 18

   11        Liability for Acts and Declarations
             Of Co-Conspirators . . . . . . . . . . 19

   12        Securities Fraud:
             The Statue, the Rule and the Charge . . 20

   13        Securities Fraud:
             The Statutory Purpose . . . . . . . . . 22

   14        Securities Fraud:
             Elements of the Offense . . . . . . . .. 24

   15        Securities Fraud: First Element --
             Scheme or Artifice to Defraud --
             Insider Trading . . . . . . . . . . . 25

i

| Request No. | | Page |
|---|---|---|
| 16 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- Relationship of Trust or Confidence . . . | 28 |
| 17 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- Breach of Duty of Trust or Confidence . . | 30 |
| 18 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- Knowledge of Breach . . . . . . . . . . | 32 |
| 19 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- Use of Inside Information . . . . . . . | 33 |
| 20 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- In Connection With Purchase or Sale. . | 35 |
| 21 | Securities Fraud: First Element -- Scheme or Artifice to Defraud -- Benefit . . . . . . . . . . . . . . | 36 |
| 22 | Securities Fraud: Second Element -- Knowledge, Intent and Willfulness . . . | 38 |
| 23 | Securities Fraud: Third Element -- Instrumentality of Interstate Commerce . . . . . . . . . . | 43 |
| 24 | Proof of Profit Not Necessary . . . . . . . | 45 |
| 25 | Securities Fraud: Venue . . . . . . . . . | 46 |
| 26 | Aiding and Abetting . . . . . . . . . . . | 48 |
| 27 | Willfully Causing a Crime . . . . . . . . | 51 |
| 28 | Particular Investigative Techniques Not Required . . . . . . . . . . . . | 53 |
| 29 | Accomplice Witnesses . . . . . . . . . . | 54 |
| 30 | Accomplice Testimony -- Guilty Plea . . . . . . . . . . . . | 58 |

ii

Request No.                                                    Page

    31        Persons Not On Trial . . . . . . . . . . .   59

    32        Defendant's Testimony  . . . . . . . . . .   60

    33        Defendant's Right Not To Testify . . . . .   61

    34        Stipulations . . . . . . . . . . . . . . .   62

    35        Law Enforcement and
                 Government Employee Witnesses . . . . . .  63

    36        Character Testimony . . . . . . . . . . .    64

    37        Summary Charts . . . . . . . . . . . . .     65

    38        Variance in Dates and Amounts. . . . . . .   66

    39        Preparation of Witnesses . . . . . . . . .   67

    40        Uncalled Witnesses -- Equally Available
                 To Both Sides . . . . . . . . . . . . .   68

    41        Use of Recordings and Transcripts. . . . . . .69

    42        Expert Testimony  . . . . . . . . . . . .    71

    43        Similar Acts -- Intent, Knowledge,
                 Absence of Mistake . . . . . . . . . . .  73

iii

REQUEST NO. 21

Securities Fraud:  First Element --
Scheme or Artifice To Defraud -- Benefit

If you find that, in connection with the stock you are considering for a particular count, RAJARATNAM traded based on material non-public information that was disclosed in breach of a duty, then you must determine whether the insider you are considering personally benefited in some way, directly or indirectly, from disclosing that information.  The Government can establish that the insider you are considering benefited from his disclosure by showing that the insider received some tangible benefit, or that the insider would gain some future advantage, or that, based on the relationship between the insider and the person to whom he disclosed it, the insider gave the information with the intention to confer a benefit on the recipient, or as a gift, or to benefit himself in some other manner.  You are permitted to base your finding of a benefit to the insider on all the objective facts and inferences presented in this case.

> Adapted from the charges of the Hon. Richard J. Sullivan, United States v. Contorinis, 09 Cr. 1083 (RJS)(S.D.N.Y.); The Hon. Robert P. Patterson, Jr., in United States v. Naseem, 07 Cr. 610 (RPP); see also Dirks v. SEC, 463 U.S. 646, 664 (1983) ("there may be a relationship between the insider and the recipient that suggests a quid pro quo from the latter, or an intention to benefit the particular recipient.  The elements of fiduciary duty and exploitation of non-public information also exist when an insider makes a gift of confidential information to a trading relative or friend"); SEC v. Warde, 151 F.3d 42, 48 (2d Cir. 1998)("[T]he Supreme Court has

36

made plain that to prove a § 10(b) violation, the SEC need not
show that the tipper expected or received a specific or tangible
benefit in exchange for the tip ... Rather, the 'benefit' element
of § 10(b) is satisfied when the tipper 'intend[s] to benefit the
... recipient' or 'makes a gift of confidential information to a
relative or friend.'"); <u>SEC</u> v. <u>Sargent</u>, 229 F.3d 68, 77 (1st Cir.
2000) ("the 'benefit' to the tipper need not be 'specific or
tangible'... "maintain[ing] a useful networking contact"
constitutes a benefit).

Dated: New York, New York
       February 2, 2011

                    Respectfully submitted,

                    PREET BHARARA
                    United States Attorney for the

            By:    _____/s/_____
                    JONATHAN R. STREETER
                    REED M. BRODSKY
                    Assistant United States Attorneys
                    ANDREW Z. MICHAELSON
                    Special Assistant U.S Attorney
                    Tel. (212) 637-2272/2492/2348