**REDACTED FOR PUBLIC FILING**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

UNITED STATES OF AMERICA,

               Plaintiff,

vs.

DOUG WHITMAN,

               Defendant.

------------------------------------------------------------- X

ECF CASE

12 Cr. 125 (JSR)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS F. WHITMAN'S MOTION TO EXCLUDE "OTHER ACTS" EVIDENCE

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice* )
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

# TABLE OF CONTENTS

           **Page**

TABLE OF AUTHORITIES ........................................................................................................... i

BACKGROUND AND SUMMARY ............................................................................................. 1

ARGUMENT .................................................................................................................................. 3

    A.    Evidence That Mr. Whitman Exchanged Information On Unrelated Companies With ▇▇▇▇ Is Inadmissible ............................................................... 4

    B.    Evidence That Mr. Whitman Provided ▇▇▇▇ With Information Is Inadmissible ............................................................................................................................... 6

    C.    Evidence Regarding TelCom Is Inadmissible ................................................................. 8

    D.    Evidence That Mr. Whitman Sought Or Received Information Regarding Polycom, Marvell, and Intel Outside 2006 To 2007 Is Inadmissible ...................................... 9

    E.    Evidence Of ▇▇▇▇ Interactions With Foundry Is Inadmissible ................................... 12

    F.    Evidence That Mr. Whitman Communicated With ▇▇▇▇ Regarding ▇▇▇▇ Is Inadmissible ................................................................................................................... 13

    G.    Evidence That Mr. Whitman Sought And Received Information About Foundry From Mr. Motey Is Inadmissible ..................................................................................... 15

CONCLUSION ............................................................................................................................. 17

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Dirks v. SEC*,
  463 U.S. 646 (1983) ................................................................................................*passim*

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011) ......................................................................................*passim*

*United States v. DiCarlo*,
  131 F. Supp. 2d 537 (S.D.N.Y. 2001) ........................................................................ 7, 15

*United States v. Garcia*,
  291 F.3d 127 (2d Cir. 2002) ............................................................................ 5, 7, 9, 10

*United States v. Gordon*,
  987 F.2d 902 (2d Cir. 1993) ............................................................................................ 6

*United States v. Hatfield*,
  685 F. Supp. 2d 320 (E.D.N.Y. 2010) ...................................................................... 4, 11

*United States v. Mermelstein*,
  487 F. Supp. 2d 242 (E.D.N.Y. 2007) ............................................................................ 7

*United States v. Scott*,
  677 F.3d 72 (2d Cir. 2012) .............................................................................................. 4

*United States v. Stein*,
  521 F. Supp. 2d 266 (S.D.N.Y. 2007) ............................................................................ 7

*United States v. Williams*,
  585 F.3d 703 (2d Cir. 2009) ............................................................................................ 5

**RULE**

Fed. R. Evid. 404(b) ...............................................................................................*passim*

Defendant Douglas F. Whitman respectfully moves, pursuant to Federal Rule of Evidence 404(b), to exclude evidence of "other acts" that the government has given notice it may seek to introduce at trial. That evidence is inadmissible, as it reaches far beyond the allegations of the indictment. It concerns alleged conspiracies and transactions that are outside the time period placed at issue by the indictment; it involves different conduct and actors; and for these and other reasons, it is not relevant to the charges actually before the court. Accordingly, admitting this evidence would serve no legitimate purpose, whereas it is all but guaranteed to cause significant confusion and unduly complicate trial proceedings.

## BACKGROUND AND SUMMARY

On February 8, 2012, a grand jury in the Southern District of New York returned an indictment against Mr. Whitman charging him with two counts of conspiracy to commit securities fraud and two counts of securities fraud. Indictment, No. 12 Cr. 125, ¶¶ 9-10, 24-25, 29 (S.D.N.Y. filed Feb. 8, 2012). The matter is currently scheduled for trial on July 30, 2012. On June 25, 2012, the government sent Mr. Whitman notice of evidence it may seek to introduce as "other acts" evidence under Rule 404(b). Ltr. from C. LaVigne to D. Anderson (June 25, 2012), attached as Ex. A to the Decl. of David L. Anderson ("Anderson Decl.") filed herewith.

***Charged Conduct.*** The indictment alleges that Mr. Whitman engaged in two conspiracies to trade on the basis of material, nonpublic information – commonly described as "inside information" – in violation of federal securities law. The first concerned trades in securities of Marvell Technology Group, Ltd. ("the Marvell conspiracy"); the second concerned trades in securities of Polycom, Inc. and Google, Inc. ("the Polycom/Google conspiracy").

The Marvell conspiracy allegedly occurred from late 2007 to early 2009. Indictment, ¶¶ 4-12. As part of that conspiracy, according to the government, Mr. Whitman received infor-

mation regarding Marvell from Karl Motey, an independent research analyst, who had obtained the information from employees at Marvell, including Sam Miri and Bill Brennan. Bill of Particulars at 1-2; Anderson Decl., Ex. B. Mr. Whitman is alleged to have executed securities transactions based on the Marvell information in October 2008 and January 2009. *Id.*

The Polycom/Google conspiracy allegedly occurred in 2006 and 2007. Indictment, ¶¶ 13-27. As to Polycom, the government asserts that Mr. Whitman received information from Roomy Khan, an acquaintance of Mr. Whitman, who had obtained the information from an employee at Polycom, Sunil Bhalla. Bill of Particulars at 3-4; Anderson Decl., Ex. B. As to Google, the government similarly asserts that Mr. Whitman received information about the company from Ms. Khan, who had secured the information from Shammara Hussain, an employee at an investor relations firm that provided services to Google. *Id.* Mr. Whitman is alleged to have executed securities transactions based on the Polycom information in January 2006 and July 2007, and based on the Google information in July 2007. *Id.* at 4.

***"Other Acts" Evidence.*** On June 25, 2012, the government sent Mr. Whitman notice of "other acts" evidence it may seek to introduce at trial under Rule 404(b). Anderson Decl., Ex. A. Among the numerous categories of "other acts" evidence included in the prosecution's notice, we contend that seven categories are impermissible:

1. Evidence that, from 2002 through 2009, Mr. Whitman exchanged with ▓▓▓▓▓▓▓▓, a friend and former employee and consultant of Whitman Capital, information about three other companies, identified as Cisco, QLogic, and Garmin.

2. Evidence that, at an unstated time, Mr. Whitman provided information about Marvell and QLogic to ▓▓▓▓▓▓▓▓, an analyst employed at a competitor of Whitman Capital.

3. Evidence that, in 1999 or 2000, Mr. Whitman and ▓▓▓▓▓▓▓▓ received information regarding another company, TelCom Semiconductor ("TelCom"), from ▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓.

2

4. Evidence that, before and after the time frame of the alleged Polycom/Google conspiracy (in 2006 and 2007), Mr. Whitman exchanged information about Polycom, Marvell, and another company, Intel, with Ms. Khan, Mr. Bhalla, ▮▮▮, and ▮▮▮, an employee at ▮▮▮.

5. Evidence that, in 2007, ▮▮▮ was blocked from contacting employees at another company, Foundry, and later obtained a "Skype" account so that he could continue to contact those employees.

6. Evidence that, in 2008 and 2009, Mr. Whitman received information about another company, ▮▮▮, from an employee of that company, ▮▮▮.

7. Evidence that, in 2007 and 2009, Mr. Whitman received information about Foundry from Mr. Motey.

*Id.* at 1-2. The remainder of the evidence identified in the notice is not challenged in this motion, although Mr. Whitman reserves the right to object to its admission at a later date on any appropriate basis.

## ARGUMENT

Rule 404(b) of the Federal Rules of Evidence provides that "[e]vidence of a crime, wrong, or other act" may not be introduced "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). Rather, such evidence is admissible only if it is offered for some other, legitimate purpose and is also "neither overly prejudicial under Rule 403 nor irrelevant under Rule 402." *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011).

The seven aforementioned categories are inadmissible under this standard. That evidence concerns events and transactions that are not at issue in this case, are remote in time from the charged conduct, and involve individuals and companies that in large part are not even mentioned in the indictment and have little if anything to do with the allegations against Mr. Whitman. The *only* purpose the evidence could serve is to suggest that Mr. Whitman has a "bad character and criminal propensity" – precisely the thing that Rule 404(b) is intended to prevent.

3

*United States v. Scott*, 677 F.3d 72, 83-84 (2d Cir. 2012). It would, moreover, necessitate a series of mini-trials, as the prosecution attempts to prove not just the bare fact of these separate events and transactions, but their legal significance – for instance, that the information at issue in these other transactions was material and nonpublic. The only result could be to complicate exponentially an already complex case. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 324-25 (E.D.N.Y. 2010) (excluding evidence under Rule 404(b) that would require separate "mini-trial[s]" and cause undue delay). The evidence is thus inadmissible under Rule 404(b), and also excludable under Rules 402 and 403, and its introduction at trial should be precluded.

### A.   Evidence That Mr. Whitman Exchanged Information On Unrelated Companies With ▮▮▮▮ Is Inadmissible.

The first category of evidence concerns a series of interactions, which allegedly occurred from 2002 through 2009, in which Mr. Whitman and ▮▮▮▮, a friend and former employee of Mr. Whitman's at Whitman Capital, purportedly shared information regarding three companies: Cisco, QLogic, and Garmin. Anderson Decl., Ex. A at 1. This evidence is not relevant as proof of the charged conduct, or indeed for any permissible purpose.

Any such information is remote in time and substance from the allegations actually contained in the indictment. Whereas neither of the conspiracies alleged in the indictment occurred before 2006, that is when most of these exchanges noticed by the government, which purportedly began a decade ago in 2002, allegedly occurred; and whereas the conspiracies in the indictment are limited to Marvell and to Polycom/Google, this information purportedly concerns the sharing of information or trades concerning different companies: Cisco, QLogic, or Garmin. Whatever conversations or interactions Mr. Whitman may have had with ▮▮▮▮ regarding those other companies cannot, therefore, plausibly serve as evidence of the charged conduct. Nor could they be deemed proof of Mr. Whitman's state of mind, his *modus operandi*, or otherwise a plan or

4

pattern of conduct, given the remoteness in time between these interactions and the charged conspiracies, and the material distinctions between those events.

Complicating matters still further, the noticed conduct involves fact patterns different from those alleged in the indictment. For example, whereas in the charged conspiracies Mr. Whitman is alleged to have *received* information (*i.e.*, he was the "tippee"), in the noticed interactions he is said to have *provided* information to others (*i.e.*, he was the "tipper"). *But compare Curley*, 639 F.3d at 56 (excluding "'other acts'" evidence because it was not "'sufficiently similar'" to the charged conduct to support inference regarding state of mind); *see also United States v. Garcia*, 291 F.3d 127, 137 (2d Cir. 2002) ("The government must identify a similarity or connection between the two acts that makes the prior act relevant to establishing knowledge of the current act.").

This evidence also does not constitute relevant "background" to the charged conduct, or "complete the story" of the conspiracies. The government's story is that in 2006 through 2009, Mr. Whitman purportedly received information about Marvell, Polycom, and Google from Mr. Motey and Ms. Khan, who had themselves received the information from others, and Mr. Whitman then traded on that information during that period. Indictment, ¶¶ 4, 15. Information about three different companies – Cisco, QLogic, and Garmin – conveyed by different people over largely different time periods would tell a different story, not add anything to this one. *See also United States v. Williams*, 585 F.3d 703, 707 (2d Cir. 2009) (evidence is not admissible as background if the prosecution's version of events is "simple and complete").

Quite the contrary, admission of this evidence would complicate and confuse the relevant issues, prolong the trial, and thereby unfairly prejudice Mr. Whitman. To establish the alleged exchanges, the prosecution will have to offer proof of the particular interactions in which Mr.

5

Whitman and ▓▓▓▓ shared information and, further, evidence that the information was material and nonpublic at the time of those interactions, presumably through testimony and documents – not otherwise relevant or admissible – discussing the financial status of those other companies at those times, the relationship of the exchanged information to that status, the manner in which the information was or may have been obtained from each company, and the type of information generally available in the marketplace during those periods. The result would be a series of mini-trials, each addressed to conduct with which Mr. Whitman has not been charged and which would have at best minimal, and likely no, probative value with respect to the actual charges against Mr. Whitman. *See, e.g., United States v. Gordon*, 987 F.2d 902 (2d Cir. 1993) (excluding evidence of prior drug conviction under Rule 404(b) because its probative value was far outweighed by the potential for unfair prejudice).

This is precisely the situation Rule 404(b) is designed to avoid. Because this evidence is offered for no apparent purpose other than to insinuate some supposed propensity to seek and exchange material, nonpublic information, and because its likely prejudice far outweighs any potential relevance, it is inadmissible under Rule 404(b).

### B. Evidence That Mr. Whitman Provided ▓▓▓▓ With Information Is Inadmissible.

Next, the government has provided notice that it may introduce evidence that, at unidentified times, Mr. Whitman provided information about Marvell and QLogic to ▓▓▓▓, an analyst employed at ▓▓▓▓, a large technology-focused hedge fund and a competitor to the much smaller Whitman Capital. Anderson Decl., Ex. A at 1.

It is hard to discern what possible purpose evidence of these alleged interactions could have, other than to suggest at some propensity to engage in insider trading. Those interactions did not form part of the criminal conduct with which Mr. Whitman is charged – which involved

6

transfers of information to Mr. Whitman from Mr. Motey and Ms. Khan – and they again are different in kind: they purportedly involve instances in which Mr. Whitman was the alleged "tipper," whereas the indictment alleges that Mr. Whitman was a "tippee." Accordingly, they are not sufficiently connected to the charged conduct to show knowledge or plan. *See Garcia*, 291 F.3d at 137 ("If the government cannot identify a similarity or some connection between the prior and current acts, then evidence of the prior act is not relevant to show knowledge and intent."); *United States v. DiCarlo*, 131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001) (same). They also could not serve as proof of motive, given that the government has not suggested Mr. Whitman was motivated by any reason other than profit. *See e.g.*, *United States v. Mermelstein*, 487 F. Supp. 2d. 242, 263 (E.D.N.Y. 2007). (■■■ motives are irrelevant because in none of the charges is he alleged to have conveyed information to Mr. Whitman through Mr. Motey or Ms. Khan.) Finally, the evidence does not provide necessary or valid background information: there is no apparent reason, and the government has provided none, to conclude that information exchanges from Mr. Whitman to ■■■, an unindicted individual who actually worked for a competitor, somehow shed light on a conspiracy involving different actors and actions and (at least as to QLogic) a different company.

Lacking any relevance to a disputed issue, the only use to which this evidence could be put is as evidence of some supposed propensity for unlawful conduct. It would also lead to further "confusion of the issues and undue delay in a trial that promises to be complex and lengthy even in the absence of any Rule 404(b) evidence." *United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007). To prove the alleged transactions between Mr. Whitman and ■■■, the government would need, at a minimum, to offer proof that Mr. Whitman received information concerning the relevant companies, that the information was material and nonpublic (which

7

would depend on separate proof, as discussed earlier, of each company's financial status and disclosures), and that he passed that information to ▬▬▬. This evidence would be confusing to a jury not only because of the lack of any direct connection to the actual charged conduct, but particularly so because ▬▬▬ was an analyst at a brokerage house and therefore counseled investors competing with Whitman Capital, meaning that the alleged disclosure would likely have been at odds with Mr. Whitman's business interests.

This evidence is irrelevant and improper, and prejudicial and confusing, It should be excluded under Rule 404(b), as well as Rules 402 and 403.

### C. Evidence Regarding TelCom Is Inadmissible.

The third category of challenged evidence relates to alleged instances in 1999 and 2000 in which Mr. Whitman and ▬▬▬ received information about Telcom from ▬▬▬ ▬▬▬. Anderson Decl., Ex. A at 1.

These events have no apparent connection to the charged conduct. They occurred more than a decade ago, and more than seven years before than the earliest date of the charged conspiracies. They are also of a totally different character from anything alleged in the indictment. They involve a different company (TelCom) and a different source (▬▬▬ ▬▬▬), and unlike the allegations in the indictment – which assert that Mr. Whitman received information through intermediaries (i.e., as a "remote tippee") – in these situations Mr. Whitman is alleged to have sought and received information directly from the company source (i.e., as a "direct tippee"). This evidence could not possibly bear on the existence of the charged conspiracies, or the state of mind or conduct of the alleged participants. Its sole apparent use would, again, be to suggest that Mr. Whitman is a "bad character" prone to gather up and trade on illegal information. *Curley*, 639 F.3d at 61. The evidence is thus inadmissible under Rule 404(b). It would also, in any event, be inadmissible under Rules 402 and 403 because it lacks any relev-

8

ance to the charged crimes and would serve only to confuse the jury and prejudice Mr. Whitman. It should be excluded.

### D. Evidence That Mr. Whitman Sought Or Received Information Regarding Polycom, Marvell, and Intel Outside 2006 To 2007 Is Inadmissible.

The fourth category of evidence concerns alleged efforts by Mr. Whitman to obtain information concerning Polycom, Marvell, and Intel outside of the time frame of the charged conspiracies. Anderson Decl., Ex. A at 1. In particular, the government asserts that Mr. Whitman (i) sought and obtained Polycom information from Ms. Khan during 2004 and 2005; (ii) sought and obtained Polycom information from Ms. Khan, Mr. Bhalla, and ▮▮▮ in 2008 and 2009; (iii) shared Polycom and Marvell information with ▮▮▮ from 2002 to 2006; and (iv) sought Polycom and Intel information from Ms. Khan in 2008. *Id.* None of this evidence is properly admissible.

*First*, the alleged exchanges of Polycom information in 2004 and 2005, *before* the Polycom/Google conspiracy is alleged to have begun in 2006, are too attenuated and insufficiently similar to the charged conduct to support admission under Rule 404(b). The charges involve allegations of insider *trading*, with Mr. Whitman using information from Ms. Khan to profit through securities transactions. By contrast, for the alleged 2004 and 2005 exchanges there is no allegation that Mr. Whitman improperly traded on any of the information he obtained. Mere receipt of inside information is not a crime, *Dirks v. SEC*, 463 U.S. 646, 659-60 (1983), and those transactions therefore cannot properly serve as proof of the later conspiracy, or a "pattern" of criminal activity. *See, e.g.*, *Garcia*, 291 F.3d at 137. That, however, is almost certainly how a jury would view that information, giving rise to an impermissible risk that Mr. Whitman would be convicted based on those uncharged actions rather than the challenged conduct. Because this

9

evidence is not relevant for any permissible purpose, and would confuse the issues and unfairly prejudice Mr. Whitman, it should be excluded.

*Second*, similarly, the alleged exchanges of Polycom information in 2008 and 2009, *after* the charged Polycom/Google conspiracy is alleged to have ended in 2007, is too attenuated to the charged conduct to be admissible. "[S]ubsequent act evidence" of this sort is admissible "only when it so closely parallel[s] the charged conduct that it [i]s probative regardless of the temporal difference." *Curley*, 639 F.3d at 61. Here, that is plainly not the case. As with the 2004-2005 Polycom information discussed immediately above, there is no allegation that Mr. Whitman improperly traded on any Polycom information he received in 2008 and 2009, or otherwise "conspired" to do so. Particularly in the absence of such allegations, it cannot be said that the *legal* information exchanges in 2008 and 2009 "paralleled" – much less "closely" so – an allegedly *illegal* insider trading scheme in 2006 and 2007. Moreover, unlike the transactions with which Mr. Whitman is actually charged, which involved transfers of information to Mr. Whitman from an intermediary (either Ms. Khan or Mr. Motey), the 2008 and 2009 transactions involved transfers of information to Mr. Whitman *directly from an insider* – Mr. Bhalla. These allegations are, thus, materially different than those in the indictment, whenever they occurred. This evidence could not serve as proof of the charged conduct, but would be used to suggest to the jury Mr. Whitman's "bad character" or propensity to seek unlawful information and therefore should be excluded under Rule 404(b). *Id.*

*Third*, evidence that Mr. Whitman provided Polycom and Marvell information to ▮ ▮ from 2002 to 2006, *before* the alleged conspiracies, is likewise too attenuated from and dissimilar to the charged conduct to be admissible. *See, e.g., Garcia*, 291 F.3d at 137. This conduct is materially different from the charged conduct because, here, Mr. Whitman is alleged to

10

have provided information to others (*i.e.*, to himself have been the "tipper") – not, as in the indictment, to have received it (*i.e.*, to have been the "tippee"). Moreover, there is no allegation in this case that anyone, including ███ and Mr. Whitman, improperly traded Polycom securities before 2006 or Marvell securities before 2007. There also is no allegation that ███ improperly traded on information that he learned from Mr. Whitman. This irrelevant evidence creates a substantial likelihood of confusing the jury, however, because it concerns two of the three companies at issue in the indictment. The evidence should be excluded.

*Finally*, evidence that Mr. Whitman sought Polycom and Intel information from Ms. Khan in 2008 – allegedly reflected in recorded phone conversations – is likewise immaterial and inadmissible. Those conversations took place *after* the alleged Polycom/Google conspiracy had concluded and for that reason, as discussed above, can be admitted only if they "closely parallel" the charged conduct. *Curley*, 639 F.3d at 61. They do not. That Mr. Whitman *sought* information, even if true, is not a crime itself and cannot support the existence of a conspiracy to *exchange* insider information, much less to trade in it. *Dirks*, 463 U.S. at 559-60. And, insofar as these communications relate to Intel, they are entirely distinct from the charged conspiracy. If they were to be admitted, the prosecution would presumably also need to introduce evidence on Intel's financial status and public disclosures, as well as the manner by which Ms. Khan obtained the information, to establish that it was material and nonpublic and, therefore, "inside" information. And even if that could be done, it would not establish that Mr. Whitman had the necessary knowledge of any improper means by which the information was obtained to make it in any way relevant to his state of mind. Avoiding such unnecessary mini-trials and confusing sideshows is a principal goal of Rule 404(b). *See Hatfield*, 685 F. Supp. 2d at 324-25.

None of this evidence is sufficiently similar to the charged conduct to be admissible under Rule 404(b), and considerations under Rules 402 and 403 would in any event preclude its introduction. That evidence should be excluded in its entirety.

E.   **Evidence Of ▓▓▓ Interactions With Foundry Is Inadmissible.**

The fifth category of evidence does not even relate primarily to Mr. Whitman. Instead, it relates to interaction between ▓▓▓, an employee of ▓▓▓, with employees of Foundry, a company that he was researching. Anderson Decl., Ex. A at 2. In particular, the government has provided notice that it may introduce evidence that in 2007, officials at Foundry blocked ▓▓▓ from contacting company employees, purportedly because of complaints that ▓▓▓ was soliciting company information from them, and that ▓▓▓ thereafter obtained a "Skype" account[1] in order to continue communicating with those contacts. *Id.*

This evidence is wholly irrelevant. It has nothing whatsoever to do with the charges against Mr. Whitman: It involves ▓▓▓, not Mr. Whitman, and it concerns information about Foundry, not Marvell or Polycom or Google. And it involves nothing more than an individual seeking information – not obtaining or trading in it. It therefore has no possible probative value concerning the allegations against Mr. Whitman, except perhaps to sully his character by implying that an ▓▓▓ employed sneaky methods for trying to maintain communications with employees of this particular company against the wishes of management.

Most fundamentally, such conduct is entirely lawful. Securities research analysts, like Mr. Whitman and ▓▓▓, are neither required nor expected to accept information concerning a company's financial conditions and earning predictions from corporate spokespersons and

---

[1] Skype is an internet-based messaging service that is most commonly used for online video chats. It also can be used to send messages or to place phone calls over the internet. *See generally* http://about.skype.com/.

officers. They may, and properly do, contact lower-level employees to confirm the veracity (or not) of such information. These efforts, commonly known as "company checks," are not only legal but, as the Supreme Court stated in *Dirks*, "necessary to the preservation of a healthy market." 463 U.S. at 658. That a company's management may not like such contacts is predictable, but management's desire to maintain a monopoly on the flow of information about corporate performance to the marketplace does not render the checks unlawful or improper; it simply reflects that corporate officers, not surprisingly, prefer to maintain control over the company's financial information. ▮▮▮▮ attempts to continue his contacts with Foundry employees after the company's management attempted to bar them were, as *Dirks* recognizes, appropriate and even laudatory. *Id.* That the conduct might be viewed by a layperson as sneaky does not mean that it was not lawful, and indeed highlights the risks of allowing its admission. The government should not be permitted to introduce this *legitimate research conduct* to prove that ▮▮▮▮ – much less Mr. Whitman – had a propensity for *illegal trading activity*. This unwarranted insinuation is expressly barred by Rule 404(b), and otherwise raises a host of concerns under Rules 402 and 403 (including confusion of the issues and undue delay). The evidence, too, should be excluded.

### F. Evidence That Mr. Whitman Communicated With ▮▮▮▮ Regarding ▮▮▮▮ Is Inadmissible.

The penultimate category of challenged evidence relates to communications in which Mr. Whitman allegedly obtained information about a separate company, ▮▮▮▮, from a company employee, ▮▮▮▮, in 2008 and 2009. Anderson Decl., Ex. A at 2. This evidence, like that addressed above, is irrelevant to the actual charges and inadmissible under Rule 404(b).

None of the allegations in the indictment concerns information about ▮▮▮▮. None of the alleged conspiracies to share information involves ▮▮▮▮, or communications between ▮▮

13

█ and Mr. Whitman. None of the trades at issue concerns █ securities; indeed, Whitman Capital did not even trade in those securities at the time of the alleged communications. Nor are these transactions similar in kind to the information exchanges alleged in the indictment: while in the charged conduct Mr. Whitman is alleged to have received information from an intermediary (i.e., to have been a "remote tippee"), here the claim would have to be that he received information directly from an employee of the subject company. There is, quite simply, no link whatsoever between those communications and the charges at issue.

The only use to which this evidence could be put is to suggest, once again, that Mr. Whitman has a propensity for engaging in "bad acts" in his dealings with company insiders. This purpose, improper in any event, is doubly so in this circumstance because the communications with █ are not "bad" at all. Just as a research analyst is expected and allowed to pursue financial information from employees of the company under review, so too may he or she legitimately seek information from customers and suppliers of the company. *Dirks*, 463 U.S. at 658. As the Supreme Court said in *Dirks*, these efforts – known as "channel checks" – are another way that analysts can "'ferret out and analyze information'" about company performance, and they serve a valuable societal purpose, ensuring more complete and accurate disclosures of information that is relevant to shareholders and traders and thereby helping with accurate price discovery in the markets. *Id.* That is what happened here: █ is a █ chip manufacturer that supplied Marvell, and Mr. Whitman was seeking information from █ regarding Marvell's sales and orders, as indirect evidence of Marvell's behavior in the marketplace and a clue to its financial condition and likely performance. This is not skullduggery; it is legitimate equity research. The prosecution's apparent desire to introduce it into Mr. Whitman's

trial under Rule 404 bespeaks an obvious desire to confuse jurors about the boundaries of proper behavior in this industry.

The government cannot offer this evidence of permissible actions to suggest a propensity to engage in impermissible and unlawful conduct. The evidence is inadmissible under Rule 404(b), as well as Rules 402 and 403.

### G. Evidence That Mr. Whitman Sought And Received Information About Foundry From Mr. Motey Is Inadmissible.

The final category of challenged evidence concerns transactions in 2007 and 2009 in which Mr. Whitman is alleged to have received information about Foundry from Mr. Motey. Anderson Decl., Ex. A at 2. This evidence is no more admissible than the categories discussed above.

As noted, Foundry is not at issue in this case. The indictment does not allege that Mr. Whitman (or anyone else) conspired to obtain information about Foundry, provided or received such information to or from anyone, or improperly traded Foundry securities. Yet again, the only apparent reason for this evidence is to demonstrate Mr. Whitman's supposed propensity to seek or receive what the prosecution would like to claim is illegal inside information. Even if this information were relevant to the charges in the indictment – and it is not – it should be excluded because of the manifest risk of unfair prejudice and confusion of the issues. Proof of these transactions – involving a different company and a different set of relevant actors – would unnecessarily complicate and lengthen the trial without shedding any light on whether Mr. Whitman allegedly conspired with Mr. Motey to engage in insider trading with respect to Marvell securities. *See DiCarlo*, 131 F. Supp. 2d at 539.

* * *

At the end of the day, all of the challenged evidence suffers from the same fundamental flaw: it appears to be "nothing more than [a] thinly-guised attempt to materially vary from the indictment." *Id.* Mr. Whitman is charged with obtaining information from two people – Mr. Motey and Ms. Khan – about Marvell, Polycom, and Google from 2006 through early 2009, and trading in the securities of those companies based upon the information during that period. Indictment, ¶¶ 5-6, 11, 16-18, 20-21, 26. He is not charged with obtaining or providing information during other periods or to other persons – not ▬▬, Mr. Bhalla, ▬▬, ▬▬, or ▬▬ – or with trading on information about other companies – not Foundry, Intel, QLogic Garmin, Cisco, TelCom, or TSMC. The evidence the government has noticed seems intended to make out that very different case, and one that threatens to overwhelm evidence of the charged crimes with evidence of other uncharged conduct. It is literally true that the government's 404(b) notice attempts to place at issue more companies and more third-party interlocutors of Mr. Whitman than does the indictment itself. Whether this reflects insecurity about the strength of the case the government actually charged, a general hope that throwing everything possible at the wall will cause something to stick, or an ignoble effort to distract and confuse the jury, it presents a real risk that Mr. Whitman could be convicted on allegations that do not form part of the indictment and, for the most part, could not even be charged as a crime. Rule 404(b) exists to prevent precisely that result. Unless any and all evidence of an investor's alleged efforts to learn information about any company were *ipso facto* and in all cases relevant to charges of insider trading, all of this evidence should be excluded.

## **CONCLUSION**

For the foregoing reasons, the motion should be granted and the "other acts" evidence challenged herein should be precluded from introduction or admission at trial.

Dated: July 6, 2012

Respectfully submitted,

s/ David L. Anderson
———————————————

David L. Anderson
(dlanderson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
(drody@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(bberenson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

17