UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
UNITED STATES OF AMERICA,                                      :
                                                               : ECF CASE
                       Plaintiff,                              : 12 Cr. 125 (JSR)
                                                               :
        vs.                                                    :
                                                               :
DOUG WHITMAN,                                                  :
                                                               :
                       Defendant.                              :
                                                               :
-------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS F. WHITMAN'S MOTION IN LIMINE FOR A RULING AND JURY INSTRUCTION ON KNOWLEDGE OF PERSONAL BENEFIT

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice* )
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

i

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| BACKGROUND | 1 |
| ARGUMENT | 3 |
| CONCLUSION | 9 |

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Dirks v. SEC*,
   463 U.S. 646 (1983)..................................................................................................4, 5, 6, 7

*Ingram v. United States*,
   360 U.S. 672 (1959).................................................................................................................3

*SEC v. Anton*,
   No. 06 Civ. 2274, 2009 WL 1109324 (E.D. Pa. Apr. 23, 2009) ..............................................4

*SEC v. Maxwell*,
   341 F. Supp. 2d 941 (S.D. Ohio 2004) .................................................................................5, 6

*SEC v. Rorech*,
   720 F. Supp. 2d 367 (S.D.N.Y. 2010).....................................................................................5

*SEC v. Switzer*,
   590 F. Supp. 756 (W.D. Okla. 1984) ......................................................................................5

*SEC v. Yun*,
   327 F.3d 1263 (11th Cir. 2003) ...............................................................................................5

*State Teachers Ret. Bd. v. Fluor Corp.*,
   592 F. Supp. 592 (S.D.N.Y. 1984)..................................................................................3, 4, 5

*United States v. Cassese*,
   428 F.3d 92 (2d Cir. 2005)...................................................................................................3, 4

*United States v. Edelman*,
   No. 06 Cr. 002 (RWS), 2006 WL 1148701 (S.D.N.Y. Apr. 24, 2006) ...................................5

*United States v. Kaiser*,
   609 F.3d 556 (2d Cir. 2010)....................................................................................................6

*United States v. Libera*,
   989 F.2d 596 (2d Cir. 1993)....................................................................................................5

*United States v. O'Hagan*,
   521 U.S. 642 (1997)................................................................................................................3

*United States v. Pinckney*,
   85 F.3d 4 (2d Cir. 1996)..........................................................................................................3

*United States v. Rajaratnam*,
   802 F. Supp. 2d 491 (S.D.N.Y. 2011).................................................................................5, 6

*United States v. X-Citement Video, Inc.*,
    513 U.S. 64 (1994)......................................................................................................4

**STATUTES**

15 U.S.C. § 78ff(a).............................................................................................................3

**OTHER AUTHORITIES**

1 Wayne R. LaFave, *Substantive Criminal Law* (2d ed. 2003) .........................................4

2 Leonard B. Sand et al., *Modern Federal Jury Instructions—Criminal* (2011).............3

Model Penal Code § 2.02(1) ...............................................................................................4

Transcript of Jury Charge, *United States v. Rajaratnam*, No. 09 CR 1184 (RJH)
    (S.D.N.Y. Apr. 25, 2011)..........................................................................................6

Defendant Douglas F. Whitman respectfully moves that the Court hold, and instruct the jury, that to satisfy its burden of proof in this case, the government must prove, as an element of the insider trading charges against Mr. Whitman, that Mr. Whitman knew that the company insiders who allegedly disclosed material nonpublic information acted to gain a personal benefit for themselves.  This requirement is a critical component of the scienter element of insider trading offenses, and serves to separate the offense from a wide array of innocent information-gathering that is essential to our capital markets.  The government, however, has suggested in pretrial filings that it may take the position at trial that it need not offer proof that Mr. Whitman knew the alleged material non-public information was procured corruptly from insiders to support conviction of Mr. Whitman.

A pre-trial ruling on this issue is necessary to guide the parties' presentations and witness examinations at trial, this Court's evidentiary rulings, and instructions to the jury during the course of trial.  A proposed instruction reflecting these principles is attached as Exhibit 1 to the Decl. of David L. Anderson ("Anderson Decl.") filed herewith.

## BACKGROUND

On February 8, 2012, a grand jury in the Southern District of New York returned an indictment against Mr. Whitman charging him with two counts of conspiracy to commit securities fraud and two counts of securities fraud.  Indictment, No. 12 Cr. 125 (S.D.N.Y. filed Feb. 8, 2012), ¶¶ 9-10, 24-25, 29.  The matter is currently scheduled for trial on July 30, 2012.

The indictment alleges that Mr. Whitman engaged in two conspiracies to trade on the basis of material nonpublic information—often called "inside information"—in violation of federal securities law.  The first alleged conspiracy, set forth in Count One, concerns trades in securities of Marvell Technology Group, Ltd.  According to the government, Mr. Whitman received inside

information regarding Marvell from Karl Motey, an independent research analyst, who had obtained the information from Sam Miri and Bill Brennan, employees at Marvell. Bill of Particulars at 1-2, Anderson Decl. Ex. 2 ; Indictment, ¶¶ 4-12. In other words, according to the indictment, Mr. Whitman was a "remote tippee," with Mr. Motey as the intermediary "tippee" who dealt directly with the actual insiders. The indictment further alleges that the Marvell insiders disclosed information to Motey "in violation of their duties of trust and confidence" that they owed to Marvell and "for personal benefit," Indictment ¶ 5, but the indictment does not specify what "personal benefit" was allegedly provided to the Marvell insiders, or by whom, or that Mr. Whitman, or even Mr. Motey, knew about any such benefit.

The second alleged conspiracy, set forth in Count Two, concerned trades in securities of Polycom, Inc. and Google, Inc. As to Polycom, the government asserts that Mr. Whitman received inside information about the company from Roomy Khan, an acquaintance of Mr. Whitman, who had obtained the information from a Polycom employee, Sunil Bhalla. Bill of Particulars at 3-4; Anderson Decl. Ex. 2. As to Google, the government asserts that Mr. Whitman received inside information about the company from Ms. Khan, who had secured the information from Shammara Hussain, an employee at an investor relations firm, Market Street Partners, that provided services to Google. *Id.* These allegations, again, describe Mr. Whitman as a remote tippee, with Ms. Khan as the intermediary "tippee" who alone dealt with the insiders in question. The prosecution further alleges that the Polycom and Google insiders disclosed information to Khan "in violation of … duties of trust and confidence" they owed to their employers and "for personal benefit," Indictment ¶¶ 17-20, but, as with the alleged Marvell conspiracy, the indictment does not specify the "personal benefit" allegedly provided or who provided it, nor does it indicate whether Mr. Whitman knew anything about the personal benefit allegedly provided.

The substantive charges of securities fraud are based upon the same factual allegations underlying the conspiracy charge in Count Two. In Count Three, the government alleges that Mr. Whitman's trades in Polycom in January 2006 amounted to insider trading. *Id.* ¶ 29. Likewise, in Count Four, the prosecution charges that his trades in Google in July 2007 constituted insider trading. *Id.*

## ARGUMENT

Specific intent is an essential element of the offense of insider trading. The Securities Exchange Act of 1934 requires the prosecution to prove beyond a reasonable doubt that any criminal violation of the Act or rules promulgated thereunder was done "willfully," 15 U.S.C. § 78ff(a), which in this context means with "'a realization ... that [one is] doing a wrongful act' under the securities laws." *United States v. Cassese*, 428 F.3d 92, 98 (2d Cir. 2005) (*quoting United States v. Peltz*, 433 F.2d 48, 55 (2d Cir. 1970)); *see also United States v. O'Hagan*, 521 U.S. 642, 665-66 (1997).[1] To secure conviction on an insider trading charge, therefore, the government must prove at a minimum that the defendant acted with an intent to defraud and that he or she knowingly committed each of the elements of the offense. *See, e.g.*, *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594 (S.D.N.Y. 1984); *see also* 2 Leonard B. Sand et al., *Modern Federal Jury Instructions—Criminal* § 40.01, Instruction No. 40-14 (2011). In other words, this *mens rea* requirement—that the defendant knew and intended to engage in the wrongful conduct—embraces each factual element of the insider trading offense. *See, e.g.*, *Cas-*

---

[1] This *mens rea* requirement applies equally to the substantive counts and the conspiracy counts of securities fraud. *Ingram v. United States*, 360 U.S. 672, 678 (1959) ("Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense"); *United States v. Pinckney*, 85 F.3d 4, 8 (2d Cir. 1996) (prosecution "must prove that 'the intended future conduct they [] agreed upon included all the elements of the substantive crime'"; reversing conspiracy conviction (quoting *United States v. Rose*, 590 F.2d 232, 235 (7th Cir. 1978).

*sese*, 428 F.3d at 98; *see also United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (scienter requirement applies to each "elemental fact" that makes conduct criminal).[2]

One of these elements is that the insider disclosed the information in exchange for a "personal benefit." That this requirement constitutes an essential element of insider trading has been clear at least since the Supreme Court's decision in *Dirks v. SEC*, 463 U.S. 646 (1983), where the Court held that receipt of a personal benefit was "the test" for judging whether material, non-public information was passed along properly or improperly to an outsider. *Id.* at 662. An insider who discloses inside information for a "personal benefit" may be said to have acted for a corrupt or fraudulent purpose, and is thus potentially liable for a securities violation, *id.* at 663; by contrast, if "there is no evidence [that the insider] received a personal benefit from the alleged disclosure," there can be no finding of corrupt or fraudulent intent and thus "there can be no insider trading violation," *SEC v. Anton*, No. 06 Civ. 2274, 2009 WL 1109324, at *9 (E.D. Pa. Apr. 23, 2009).

It follows that an individual who receives and trades upon "inside information" cannot themselves be found to have acted with an intent to defraud unless he or she knows that the information was disclosed by an insider in exchange for a personal benefit. As Judge Sweet held in *State Teachers Ret. Bd.*, 592 F. Supp. at 594, in a holding adopted by Judge Holwell in the recent *Rajaratnam* trial,[3] scienter in an insider trading case "necessitates tippee knowledge of *each element*, including the personal benefit, of the [insider's] breach." *Id.* (emphasis in original).

---

[2] *See also, e.g.*, Model Penal Code § 2.02(1) (stating that "a person is not guilty of an offense unless he acted" with the required mental state "with respect to each material element of the offense"); 1 Wayne R. LaFave, *Substantive Criminal Law* § 5.1, at 338 n.20 (2d ed. 2003) (noting that an essential or material element is "an element that does not relate exclusively to the statute of limitations, jurisdiction, venue, or to any other matter similarly unconnected with … the harm or evil … sought to be prevented by the law defining the offense").

[3] *See United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011).

Phrased differently, only if an insider disclosed the information in exchange for a personal benefit, and only if a defendant "tippee" actually knew of that exchange and personal benefit, may the defendant potentially be found guilty of a securities violation. *Id.*[4]

This requirement serves to protect a wide variety of innocent and socially useful market conduct from being subject to prosecution, and thereby chilled. As the Supreme Court stated in *Dirks*, it is perfectly legal, and indeed "necessary to the preservation of a healthy market," for research analysts and other market participants to "ferret out and analyze information" by "meeting with and questioning corporate officers and others who are insiders." 463 U.S. at 658. Without strict enforcement of the *mens rea* requirement, however, a portfolio manager could be convicted for trading based on information that he or she believed had been obtained from an insider without the personal benefit the Supreme Court has held is essential to unlawful behavior – *i.e.*, in a manner the portfolio manager believed to be lawful, such as where an insider mistakenly believes the information is not material. *See Dirks,* 463 U.S. at 663. "[I]nsider trading does not necessarily involve deception, and it is easy to imagine an insider trader who receives a

---

[4] This case is charged under the "classical" theory of insider trading, as the language of the indictment shows and the prosecution has acknowledged. However, the personal benefit requirement applies equally to "misappropriation" cases. Although the Second Circuit earlier declined to decide whether the personal benefit requirement applied to misappropriation cases, it did so in a case where the prosecution had, in fact, proved that the insider obtained a personal benefit. *See United States v. Libera*, 989 F.2d 596, 599 (2d Cir. 1993) (the tippee paid the tipper weekly in cash for advance copies of the Inside Wall Street column in Business Week). And because the logic of the personal benefit requirement applies equally if not more compellingly in misappropriation cases, numerous courts, including this one, have subsequently had little difficulty concluding that personal benefit is an element of the offense under either the classical or misappropriation theories. *See, e.g.*, *SEC v. Rorech*, 720 F. Supp. 2d 367, 416 (S.D.N.Y. 2010) (holding that although the tippee purchased $10 million in bonds from the tipper, which would affect the tipper's bonus, the purchase was not the "quantifiable or direct financial benefit" that would support an insider-trading charge); *United States v. Edelman*, No. 06 Cr. 002 (RWS), 2006 WL 1148701, at *4 (S.D.N.Y. Apr. 24, 2006) (citing personal benefit as an element of misappropriation while sentencing a defendant); *SEC v. Yun*, 327 F.3d 1263, 1276-80 (11th Cir. 2003); *SEC v. Maxwell*, 341 F. Supp. 2d 941, 948 (S.D. Ohio 2004); *SEC v. Switzer*, 590 F. Supp. 756, 766 (W.D. Okla. 1984).

tip and is unaware that his conduct was illegal and therefore wrongful." *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010). This is precisely why the Supreme Court in *Dirks* refused to hold that insider trading is committed "solely because a person knowingly receives material non-public information from an insider and trades on it." 463 U.S. at 658. A trader must know more than that before he commits a felony. Culpable knowledge that an insider breached legal duties to obtain a personal benefit is the critical missing piece: it is what separates the criminal from the innocent trader.[5]

Courts in this district have already recognized that "knowledge of *each element* [of the crime of insider trading], including the personal benefit [to the insider]" is required for conviction. *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011) (*quoting Fluor Corp.*, 592 F. Supp. At 594) (emphasis in original). Juries have previously been instructed in analogous cases, including at the request of the government, that they must find that the defendant had knowledge of this element. *E.g.*, Transcript of Jury Charge at 5623, *United States v. Rajaratnam*, No. 09 CR 1184 (RJH) (S.D.N.Y. Apr. 25, 2011) ("The government must show that [the defendant] knew that … an insider would directly or indirectly obtain some personal benefit from the disclosure [of material, nonpublic information].").

---

[5] Knowledge of an insider's breach of duty, without knowledge that the insider has acted corruptly for personal gain, is not enough to ensure that no innocent person could be convicted. *SEC v. Maxwell*, 341 F. Supp. 2d 941 (S.D. Ohio 2004), illustrates the point. In *Maxwell*, a business executive disclosed an impending merger to his barber, whom he knew was active in the stock market, while getting a haircut. *Id.* at 946-48. The barber traded on this information, which he understood was non-public, and made a substantial profit. *Id.* The SEC charged both the executive and the barber with insider trading, but the court granted summary judgment for the defendants because the executive anticipated no personal benefit from the disclosure. *Id.* The barber knew the executive had breached a duty in revealing the impending merger, but that alone did not make the barber a felon for trading. *Id.* Unless the barber also knew that the executive had breached his duties to the corporation for corrupt reasons, there was no fraud in his trading. *Id.*

Requiring knowledge of the personal benefit element is especially important in a case like this one, where a fund manager such as Mr. Whitman relies on third-party researchers or other intermediaries such as Mr. Motey. Mr. Whitman is entitled to assume that these researchers are obeying the law; absent knowledge of unlawful means being employed by a paid researcher or analyst such as Mr. Motey, Mr. Whitman would have no *mens rea* at all. It is therefore no exaggeration to say that in a remote tippee case of this sort, knowledge of personal benefit may be the critical red line that separates criminal from innocent conduct; it is the only thing that would allow a portfolio manager like Mr. Whitman to know when third-party researchers or others had obtained information in ways that would make it unlawful for him to trade. *See Dirks*, 463 U.S. at 662-63.

\* \* \*

To convict Mr. Whitman of insider trading, the prosecution must, among other things, prove beyond a reasonable doubt that Mr. Whitman, an alleged remote tippee, knew that the Marvell, Polycom, and Google insiders disclosed inside information "for their personal gain." *Dirks*, 463 U.S. at 659. This element defines insider trading as a species of corruption, and separates it from a wide array of non-criminal information-gathering that is essential to our capital markets and goes on every day among analysts, traders, and other market participants. *See id.* at 658-59. Absent knowledge that a corporate insider breached legal duties and divulged inside information in return for some personal benefit, an insider trading defendant such as Mr. Whitman could be morally innocent, simply believing that information relayed by intermediaries such as Mr. Motey or Ms. Khan was accidentally or carelessly divulged by their purported sources within a company, or was otherwise innocently obtained by the intermediaries. As the Supreme Court has noted, "[a]ll disclosures of confidential corporate information are not inconsistent with the duty insiders owe to shareholders." *Id.* at 661-62. Whatever ordinary securities market 'gra-

7

pevine' behavior may be, it is not a federal crime, and the requested instruction is essential to guard against conviction for such behavior, which is directly at issue in this case.

## CONCLUSION

For the foregoing reasons, the Court should instruct the jury in accordance with the attached proposed instruction.

Dated:  July 16, 2012

Respectfully submitted,

 /s/ David L. Anderson
_____

David L. Anderson
(dlanderson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
(drody@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(bberenson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*