UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA      :

    -v.-                              :           12 Cr. 125 (JSR)

DOUG WHITMAN,                :

              Defendant.     :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S MOTIONS *IN LIMINE*

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.

CHRISTOPHER LAVIGNE
JILLIAN BERMAN
Assistant United States Attorneys
    - Of Counsel –

## TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

I.    **The Court Should Preclude the Defense From Playing Certain Recordings at Trial** 1

    A.    Khan Family/Personal Comments. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    B.    December 4, 2008 Call . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    C.    Recordings With Non-Testifying Third Parties . . . . . . . . . . . . . . . . . . . . . .10

II.    **The Court Should Preclude the Defense From Cross Examining Government Witnesses About Certain Topics** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

III.    **The Court Should Preclude Certain Defense Evidence, Questioning, Comments In Opening Statements, And Argument**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    A.    Penalties Faced By The Defendant. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

    B.    Prosecutorial Motives, Conduct, and Investigative Methods. . . . . . . . . . . . . . 17

    C.    Jury Nullification. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

   -v.-                                              :                12 Cr. 125 (JSR)

DOUG WHITMAN,                             :

                   Defendant.           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### THE GOVERNMENT'S MOTIONS *IN LIMINE*

The Government respectfully submits this memorandum of law in support of its motions *in limine*: (1) to preclude the defense from offering or using certain recordings at trial; (2) to preclude the defense from cross-examining Government witnesses about certain past conduct; and (3) to preclude the defense from making certain arguments or offering certain evidence at trial.[1]

### ARGUMENT

### I.   The Court Should Preclude the Defense From Playing Certain Recordings at Trial

The Government first seeks a ruling from the Court regarding various recordings the defense intends to offer at trial.  By way of background, both parties agreed to adhere to a schedule by which: (1) the Government told the defense on July 2, 2012 of the particular recordings it intended to seek to admit in its case-in-chief; and (2) the defense advised the

---

[1] Because certain information contained in these motions is sensitive, including information obtained from wiretaps, we have publicly filed a redacted brief, and are providing unredacted copies to the Court and defense, with the request that they be filed under seal for the time being.

1

Government on July 9, 2012 of what portions of those recordings, or what additional ones, it believed should be played under the rule of completeness and/or in the defense case.[2]

The Government moves to preclude the defendant from admitting various categories of recordings on two related grounds.

*First,* many of the defense designations contain offensive and potentially embarrassing comments made by Roomy Khan, a cooperating witness.  These statements are irrelevant to this case and – even assuming they have some limited probative value – will serve to harass or embarrass Khan, or, worse yet, cause a juror to hold such statements against Khan or the Government, for reasons entirely unrelated to her credibility.

*Second*, many of the defense designations simply are not necessary to "complete" any recordings offered by the Government, and are barred from admission on the grounds of hearsay and/or relevance.  In certain instances, for example, the defense has identified recordings it intends to play in its case between Khan and third parties, none of whom are Government witnesses or named co-conspirators.

Accordingly, the Government moves to preclude admission of the recordings outlined below.

*****

The Rule of Completeness provides that "even though a statement may be hearsay, an 'omitted portion of [the] statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to

_____

[2]     This agreement did not include portions of recordings that either party may seek to utilize on cross examination, or seek to play on re-direct examination or in a rebuttal case.

2

ensure fair and impartial understanding of the admitted portion.'" *United States* v. *Johnson*, 507 F.3d 793, 796 (2d Cir. 2007) (quoting *United States* v. *Castro*, 813 F.2d 571, 575-76 (2d Cir. 1987)).  The completeness doctrine does not require the admission of portions of a statement that are "neither explanatory of nor relevant to the admitted passages." *Johnson*, 507 F.3d at 796 (affirming the admission of redacted transcripts of a confession because the redacted portions were neither explanatory nor relevant to the admitted portion specifically) (quoting *United States* v. *Jackson*, 180 F.3d 55, 73 (2d Cir. 1999)).  Finally, "under Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence.'" *United States* v. *Crowley*, 318 F.3d 401, 417 (2d Cir. 2003) (quoting *United States* v. *Flaherty*, 295 F.3d 182, 191 (2d Cir. 2002)).

As part of its case-in-chief, the Government intends to play a number of recorded telephone calls and/or body wires, which consist of four general groups: (1) consensually recorded telephone calls made by Roomy Khan to Doug Whitman (the "Kahn Calls"); (2) consensually recorded telephone calls made by Karl Motey to Doug Whitman (the "Motey Calls"); (3) consensually recorded telephone calls made by Wesley Wang to Doug Whitman; and (4) court-authorized wiretapped calls over ███████████████.  The Government proffers that during certain of these calls – particularly on the Motey and Khan Calls – Whitman attempts to obtain material non-public information ("Inside Information) from Khan, Motey, and ███, and makes admissions regarding his prior conduct and his state of mind.

3

Having reviewed portions of recordings the defense intends to play, the Government objects to three general categories of them, which include: (1) portions of Khan Calls which contain embarrassing or offensive comments by Khan; (2) ████████████████████ ████████████████████████████████████████ ███████████████ and (3) recordings between Khan and third parties who are not Government witnesses.

We address each of these below.

A.    Khan Family/Personal Comments

The first category of challenged recordings consist of personal topics of conversations between Khan and Whitman, which are wholly irrelevant and do not fall within the "rule of completeness" doctrine.  Even if mildly probative, these recordings should be excluded under Rule 403, as they may offend various members of the jury or cause bias against Khan, given the politically incorrect and offensive nature of the recordings.  Separately, if played while Khan is on the witness stand, they could cause her undue embarrassment.

Examples of the designations follow.

One defense designation is from a July 15, 2008 recorded conversation between Khan and Whitman.  The Government intends to play a portion of this conversation in which the defendant discusses Polycom with Khan, and Khan refers to her "guy there," a reference to Sunil Bhalla (Khan's Polycom contact and a co-conspirator of Whitman).  Khan then asks Whitman if his co-worker Dave Karson has heard anything from his connections, to which Whitman indicates he has not.  While that conversation related to Polycom and Bhalla (a company and insider referenced in the Indictment), the defense intends to play the ensuing three minutes of this

4

telephone call, in which, among other things, ████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████

Similar to the above conversation is a defense designation of the first three minutes of a

September 4, 2008 conversation between Whitman and Khan.  During this conversation, among

other things, Khan and Whitman speak about booking a conference room at Whitman's office for

Khan to use.  Whitman notes that ████████████████████████████████████████
████████████████████████████

The above segments have no relevance to this case, nor are they necessary to "complete"

portions of the recordings that the Government is offering, which relate to Khan's and the

defendant's discussion of Polycom and other companies.  Rather, the defense designation of

these recordings is a thinly veiled attempt to make █████████████████████████████
████████████████████████████████  These facts could serve to

prejudice a potential juror against Khan, yet they have no bearing on, or relation to, Khan's

veracity as a witness.

A defense designation of a similar ilk is a 30-second recorded clip of an August 22, 2008

conversation in which ████████████████████████████████████████  This

recording comes more than *10 minutes after* the prior portion that the Government intends to

play at trial, which portion relates to Khan's and Whitman's discussion about Marvell and

Polycom (two companies named in the Indictment).  Given the ten minute lapse, and the fact that

the defense clip deals with an entirely different subject matter, it cannot be said that this clip is

necessary to "complete" the Government's designation.  Nor is this 30-second clip independently admissible.  Even if there is some conceivable basis upon which this 30 second clip has impeachment value – which it does not – its admission fails under Rule 403.  Khan's statements to Whitman during this call pose a serious risk that the jury will be prejudiced against Khan for making ███████████████

Most obvious, however, is the defense designation of a one minute clip of a September 4, 2008 conversation.  This segment follows about four minutes of conversation in which Khan and Whitman discuss Polycom, with Whitman inquiring as to whether Khan wants to call up Bhalla. The ensuing clip the defense seeks to introduce includes Khan telling Whitman about her

Khan is laughing during this portion of the conversation and says she is kidding.

This ***is exactly*** the type of evidence that Rule 403 is meant to preclude.  Indeed, these statements by Khan could not be used to cross examine her under Rule 608, discussed *infra*, as they do not bear on her character for truthfulness, so it is illogical to suggest they should be admitted: (1) under a rule of completeness when the prior portion of the conversation relates to the heart of the case – Whitman's and Khan's relationship and discussions about Polycom; or (2) in the defense case, when they deal with an entirely collateral matter to this litigation, which already will be a source of extensive cross examination.[3]  In short, it is abundantly clear that this

---

[3]As the Government will elicit on direct examination and the defense likely will pursue on cross examination, during the course of that litigation, Khan, among other things, falsified a document and used it throughout the pendency of the litigation.  The case ultimately settled.

defense designation will only be used to poison the well of the jury, and should in no way be admitted, in either a defense case or on cross examination.

Finally, the defense has isolated an additional five-second clip ███████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████

Putting aside these obvious examples of instances in which defense designations could embarrass a witness or offend a member of the jury, the defense also has isolated excerpts of recordings that are completely irrelevant, such as instances in which Khan and Whitman discuss the availability of a conference room in Whitman's office, during which time Whitman calls

7

Roomy "pushy."  While not offensive or embarrassing, excerpts such as these should not be admitted given their lack of relevance to any issue involved in this case.

8

9

C.    Recordings With Non-Testifying Third Parties

The third category of defense designations to which the Government objects consists of a number of Khan and Motey calls with certain third parties who are not Government witnesses. The Government does not intend to play any excerpts of these calls so they are not admissible under a rule of completeness theory, nor is there any articulable theory of independent admissibility.  Indeed, the calls consist of ones between: (1) Khan and a sell-side analyst (the "Analyst") in 2008 while Khan is cooperating; (2) three separate calls betwen Khan and ███████ ████████████████████████████████████████████████████████ in 2008 while Khan is cooperating; and (3) two calls between Motey and ████████████████ a Marvell employee whom Motey only came to deal with when Motey was working with the FBI proactively as a cooperating witness.  Neither the Analyst, ████████, nor ████████ are named as co-conspirators in this case, and there is no basis to conclude that the excerpts of these calls will serve as permissible impeachment of Khan and Motey.  Accordingly the Government submits these defense excerpts should not be introduced in the defense case, and the Government will renew this request if and when the defense seeks to do so.  *Cf. United States* v. *Longo*, 16 Fed. Appx 29, 2000 WL 33340708 (2d Cir. June 8, 2001) (holding that a statement by a coconspirator exculpating the defendant could not be offered pursuant to Rule 801(d)(2)(E) as a statement by a coconspirator in furtherance because "the statement must be 'offered against a party'").[4]

---

[4] The Government also reserves the right to challenge other recordings, or portions thereof, which the defendant may seek to introduce or utilize on cross examination.

II.    <u>The Court Should Preclude the Defense From Cross Examining Government Witnesses About Certain Topics</u>

The Government also seeks to limit defense cross examination of Government witnesses on two topics.



The Government submits that none of these topics bears on the witnesses' character for truthfulness.  And, if even there is some limited probative value to these issues, that value is substantially outweighed by the danger of unfair prejudice to the witness and the Government.

11

It is well settled that "[t]he scope and extent of cross-examination lies within the sound discretion of the trial judge." *United States* v. *Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) (citation omitted).  As the Supreme Court has written:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination [of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.  And as we observed earlier this term, the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross examination that is effective in whatever way, and to whatever extent, the defense might wish.

*United States* v. *Van Arsdall*, 475 U.S. 673, 679 (1986) (citation and internal quotation omitted) (emphasis in original); *accord United States* v. *Laljie*, 184 F.3d 180 (2d Cir 1999).  Thus, as long as a defendant's right to confront the witness is not violated, limitations on cross-examination are not grounds for reversal.  *United States* v. *Roldan-Zapata*, 916 F.2d 795, 806 (2d Cir. 1990); *see also Scarpa*, 913 F.2d at 1018 ("[A] trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has sufficient information to make a discriminating appraisal of the particular witness' possible motives for testifying falsely in favor of the government") (internal quotations omitted); *Crowley*, 318 F.3d at 417 (2d Cir. 2003).

Accordingly, courts may allow cross-examination into specific instances of conduct not resulting in convictions *only* if "probative of truthfulness or untruthfulness . . . ." Fed. R. Evid. 608(b).  Even then, the boundaries of cross examination are subject to the strictures of Rule 403. For example, the Second Circuit has repeatedly found that it is proper for a District Court to preclude questioning of a prosecution witness regarding sex crimes as having an insufficient bearing on the witness's credibility.  *See United States* v. *Rosa*, 11 F.3d 315, 336 (2d Cir. 1993);

12

*United States* v. *Rabinowitz*, 578 F.2d 910, 912 (2d Cir. 1978).  In addition, Federal Rule of

Evidence 611 gives the District Court the power to exercise "reasonable control over the mode

and order of interrogating witnesses" so as to "protect witnesses from harassment or undue

embarrassment."  Fed. R. Evid. 611.





---

[5]  At a drug robbery trial of three defendants in *United States* v. *Nunez et al.*, 05 Cr. 909 (DLC), Judge Denise L. Cote chastised defense counsel for asking questions of a cooperating witness regarding his sexual conduct with women, as well as his alleged misogyny and homophobia, and precluded further questioning on such matters, stating that while the defense is permitted to "cross-examin[e] on areas that could be seen to impeach someone's credibility . . . sexual behavior is not one of those" because such questioning is used "to inflame inappropriately prejudices . . . of the jury." *See* trial transcript of 9/19/06 in *United States* v. *Nunez et al.*, 05 Cr. 909 (DLC), at 870-74.  Similarly, at the final pretrial conference in *United States* v. *Jose Borbon*, 05 Cr. 909 (DC), Judge Denny Chin entered an *in limine* ruling precluding any questioning about the cooperating witness's sexual conduct and his efforts to trick women into have sexual relations with him.



**III.** **The Court Should Preclude Certain Defense Evidence, Questioning, Comments In Opening Statements, And Argument**

Out of an abundance of caution, the Government moves to preclude the defense from making particular arguments, or from attempting to introduce certain evidence, as explained below.

      A.      Penalties Faced By The Defendant

The Court should preclude the defendant from presenting any evidence or argument or otherwise exposing the jury to the potential consequences of convicting the defendant. The Supreme Court has reiterated the "well established" rule that juries should not be permitted to consider the potential penalties faced by criminal defendants. *See Shannon* v. *United States*, 512 U.S. 573, 579 (1994); *United States* v. *Blume*, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."). This case presents no reason

16

for the Court to depart from this settled rule by allowing the defense to introduce information

concerning potential sentences.  Accordingly, the Court should preclude the parties from

introducing any information — whether through jury addresses, witness examinations, or

otherwise — about any of the potential consequences of conviction.

**B.      Prosecutorial Motives, Conduct, and Investigative Methods**

The defendant should be prohibited from raising, in any way, the Government's motives

and conduct in prosecuting him and/or the Government's investigative and prosecutorial

methods, including the use of wiretaps and cooperating witnesses.  It is well-established that the

Government's motives for and conduct during the prosecution of a defendant are irrelevant to

guilt or innocence and therefore cannot be presented to the jury.  *See United States* v. *Regan*, 103

F.3d 1072 (2d Cir. 1997); *United States* v. *Rosado*, 728 F.2d 89 (2d Cir. 1984); *United States* v.

*Demosthene*, 334 F. Supp. 2d 378, 380 (S.D.N.Y. 2004).

It is equally well-established that the Government's particular techniques in investigating

and prosecuting crimes are entirely irrelevant to guilt or innocent and should not be considered

by the jury.  *United States* v. *Saldarriaga*, 204 F.3d 50, 52-53 (2d Cir. 2000); *see also United

States* v. *Martha Stewart*, 03 CR. 717 (MGC), 2004 WL 113506, at *1 (S.D.N.Y. Jan. 26, 2004)

(granting the Government's motion *in limine* and holding "any evidence that raises questions of

prosecutorial bias against Stewart has no bearing on the issues properly before the jury, including

the credibility of cooperating witnesses"; "The defense may not argue or present evidence to the

jury that tends to show that this count is an unusual or unprecedented application of the securities

laws. Such evidence improperly invites the jury to make legal determinations. Those

determinations are the exclusive province of the court.").  The defendant remains free to impugn

17

the weight and/or the quality of the proof that the Government actually adduces at trial to the extent that it bears on guilt or innocence, but he may not put the motivations or conduct of prosecutors or law enforcement agents in issue in order to invite the jury to acquit based on alleged governmental misconduct.

Nor should Whitman be permitted to argue that he was selectively prosecuted or singled out because the Government has not charged other people who may have engaged in similar conduct. "The issue to be determined is whether [the defendant] committed the crimes charged; not whether others may have committed uncharged crimes." *United States* v. *White*, No. 02 Cr. 1111 (KTD), 2003 WL 721567, at *7 (S.D.N.Y. Feb. 28, 2003). Thus, evidence or argument concerning what other people have or have not been charged with is a "waste of time and thus is totally irrelevant." *Id.* In any event, because selective prosecution is not a defense on the merits to the criminal charge itself, but one based on "defects in the institution of the prosecution," Fed. R. Crim. P. 12(b)(1), it must be asserted before trial. *United States* v. *Sun Myung Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983); *United States* v. *Taylor*, 562 F.2d 1345, 1356 (2d Cir. 1977). Such a claim can never be properly presented to the jury, but rather should only be considered by the Court before trial. *Regan*, 103 F.3d at 1082 ("the selective prosecution defense is an issue for the court rather than the jury"); *United States* v. *Danielson*, No. 97 Cr. 295 (RPP), 1998 WL 226200, at *1 (S.D.N.Y. May 5, 1998) (same); *United States* v. *Jones*, 52 F.3d 924, 927 (11th Cir. 1995) (same); *United States* v. *Washington*, 705 F.2d 489, 495 (D.C. Cir. 1983) (same); *United States* v. *Berrigan*, 482 F.2d 171 (3d Cir. 1973) (same).

In sum, any evidence or argument that the Government's motives in prosecuting the defendant have been improper, that the manner in which the Government obtained other

18

evidence was improper, and/or that the defendant has been selectively prosecuted and that others have not been similarly prosecuted, is inappropriate and should be precluded by the Court.

C.    Jury Nullification

In *United States* v. *Thomas*, 116 F.3d 606, 616 (2d Cir. 1997), the Second Circuit held that "trial courts have a duty to forestall or prevent [jury nullification], whether by firm instruction or admonition, or where it does not interfere with guaranteed rights or the need to protect the secrecy of jury deliberations, . . . by dismissal of the offending juror from the venire or jury." *See also United States* v. *Rosado*, 728 F.2d 89, 93 (2d Cir. 1984) (criticizing trial court for inviting nullification by permitting the defendants to mount a "political defense" and stating that it was an "erroneous assumption that good motive for committing a crime is inconsistent with criminal intent").

As a matter of precaution, the Government asks the Court to inquire as to whether the defense intends to raise any arguments with the aim of convincing the jury that his conduct should be excused, even if criminal, for any reason.  For example, Whitman should be precluded from presenting any evidence or argument or otherwise exposing the jury through opening statements, during cross-examination, or otherwise to any of the following in seeking an acquittal: (a) Whitman's past charitable contributions, and/or work for various charitable organizations; and (b) the purported damage that Whitman has suffered to his reputation and other interests since his arrest, including any difficulties he may have encountered with his family or professionally, such as the effect on his business Whitman Capital.

Similarly, Whitman should be precluded from playing portions of recordings in which Whitman urges Khan to settle the lawsuit that Khan's housekeeper filed against Khan, which are

19

repeatedly interspersed through Khan's recordings with Whitman.  While Whitman has not

designated such portions to be played in its case or to "complete" Government recordings, the

Government also submits that Whitman should not be allowed to use such recordings during

cross examination.  Such evidence may improperly lead the jury to conclude that if Whitman

were in fact guilty to the instant charges, he would have pleaded guilty, just as he advised Khan

to settle the civil charges filed against her.  To take this one step further, a juror may reach the

conclusion upon hearing these recordings that because Whitman proceeded to trial, he must be

innocent.  Such an inference based on the content of recordings would be an improper one for a

juror to draw, and could lead to nullification.

     None of these subjects, considered singly or together, is relevant to guilt or innocence,

and thus, such evidence should be precluded.[6]

---

[6] Finally, today the Government received a written disclosure/summary of two expert witnesses the defense will seek to call in its case-in-chief.  Previously, on July 5, 2012, the defense orally alerted the Government of its intent to call two expert witnesses.  The Government has not had sufficient time to review the written disclosure it received today for possible motion practice, but will timely advise the Court of its intention to do so.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that its motions *in limine* should be granted.

Dated:        New York, New York
              July 16, 2012

                                        Respectfully submitted,

                                        PREET BHARARA
                                        United States Attorney


                              By:_____/s/_____
                                        CHRISTOPHER LAVIGNE
                                        JILLIAN BERMAN
                                        Assistant United States Attorneys
                                        Telephone: (212) 637-2325/2197

21