REDACTED FOR PUBLIC FILING

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                       :

UNITED STATES OF AMERICA,          :
                                                      : ECF CASE
                Plaintiff,                   : 12 Cr. 125 (JSR)
                                                       :
            vs.                                        :
                                                       :
DOUG WHITMAN,                      :
                                                       :
                Defendant.               :
                                                       :
------------------------------------------------------------- X

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DOUGLAS F. WHITMAN'S MOTION IN LIMINE TO EXCLUDE CERTAIN AUDIO RECORDINGS

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice* )
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

BACKGROUND .....................................................................................................................1

ARGUMENT............................................................................................................................4

      A.     Recordings Of Conversations About Unrelated Companies Are Inadmissible. ..............................................................................................5

      B.     Recordings Of Conversations About Marvell After The Alleged Conspiracy Are Inadmissible. ................................................................................7

      C.     Recordings Of Conversations About Polycom After The Alleged Conspiracy Are Inadmissible...............................................................................11

CONCLUSION.......................................................................................................................16

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Dirks v. SEC*,
  463 U.S. 646 (1983) ................................................................................................10, 13

*United States v. Curley*,
  639 F.3d 50 (2d Cir. 2011) ............................................................................5, 7, 11, 12

*United States v. DiCarlo*,
  131 F. Supp. 2d 537 (S.D.N.Y. 2001) ................................................................................15

*United States v. Hatfield*,
  685 F. Supp. 2d 320 (E.D.N.Y. 2010) ..............................................................................14

*United States v. Lyles*,
  593 F.2d 182 (2d Cir. 1979) ......................................................................................11, 13

*United States v. Stein*,
  521 F. Supp. 2d 266 (S.D.N.Y. 2007) ................................................................................13

*United States v. Williams*,
  585 F.3d 703 (2d Cir. 2009) ........................................................................................8, 11

**RULES**

Fed. R. Evid. 402 ................................................................................................................4

Fed. R. Evid. 403 ................................................................................................................4

Fed. R. Evid. 404(b) ............................................................................................................4

**OTHER AUTHORITIES**

http://about.skype.com/ ......................................................................................................8

Defendant Douglas F. Whitman respectfully moves, pursuant to Federal Rules of Evidence 402, 403, and 404(b), to exclude from evidence certain audio recordings (or portions of such recordings). The recordings are of telephone conversations between Mr. Whitman and others that the government has given notice it may seek to introduce at trial, but they serve no legitimate purpose in this case. That is because the conversations concern conduct and transactions outside the scope of the conspiracies alleged in this indictment, and involve actors and companies that are not the subject of the charged conspiracies. Many of them are also irrelevant to any other potentially disputed factual issue in the case. They therefore are not relevant to the case and would almost certainly cause significant confusion among jurors, unnecessary delay in the trial, and unfair prejudice to Mr. Whitman.

For the court's convenience, we have included a chart listing the recordings that the government designated for possible introduction into evidence, and indicating which recordings (or portions) this motion challenges as inadmissible. *See* Exhibit 1 attached to the Decl. of David L. Anderson ("Anderson Decl.") filed herewith. In addition, for each recording designated by the government that is challenged by this motion, we have attached as an exhibit to the Anderson Declaration a transcript of the portion of the recording designated by the government.

## BACKGROUND

On February 8, 2012, a grand jury in the Southern District of New York returned an indictment charging Mr. Whitman with two counts of conspiracy to commit securities fraud and two counts of securities fraud. Indictment, No. 12 Cr. 125 (S.D.N.Y. filed Feb. 8, 2012), ¶¶ 9-10, 24-25, 29. The matter is currently scheduled for trial on July 30, 2012.

***Charged Conduct.*** The indictment alleges that Mr. Whitman engaged in two conspiracies to trade on the basis of material, nonpublic information—commonly described as "inside

Marvell Technology Group, Ltd. ("the Marvell conspiracy"); the second concerned trades in securities of Polycom, Inc. and Google, Inc. ("the Polycom/Google conspiracy"); and as to each, the indictment specifies a start and an end.

The Marvell conspiracy allegedly lasted from late 2007 to early 2009. Indictment, ¶¶ 4-12. As part of that conspiracy, according to the government, Mr. Whitman received information regarding Marvell from Karl Motey (an independent research analyst), who had obtained the information from employees at Marvell, including Sam Miri and Bill Brennan. Bill of Particulars at 1-2; Anderson Decl. Ex. 19. Mr. Whitman is alleged to have executed securities transactions based on the Marvell information in October 2008 and January 2009, *id*, though we understand that trades in May of 2008 may also be at issue.

The Polycom/Google conspiracy allegedly occurred in 2006 and 2007. Indictment, ¶¶ 13-27. As to Polycom, the government asserts that Mr. Whitman received information from Roomy Khan, an acquaintance of Mr. Whitman, who had obtained the information from an employee at Polycom, Sunil Bhalla. Bill of Particulars at 3-4; Anderson Decl. Ex. 19. As to Google, the government similarly asserts that Mr. Whitman received information about the company from Ms. Khan, who had secured the information from Shammara Hussain, an employee at an investor relations firm that provided services to Google. *Id*. Mr. Whitman is alleged to have executed securities transactions based on the Polycom information in January 2006 and July 2007, and based on the Google information in July 2007. *Id*. at 4.

*Audio Recordings.* On July 2, 2012, after having produced literally thousands of recordings during discovery, the government sent Mr. Whitman notice of twenty-one audio recordings it may seek to introduce at trial, either in whole or in part. These recordings are of telephone conversations that occurred in 2008 and 2009 among Mr. Whitman and his friends and business

associates. They were made by participants in the conversations who were cooperating with the government ("consensual" recordings) or by government investigators through use of wiretaps ("wire" recordings). *See* Anderson Decl. Ex. 1. The conversations address a wide range of subjects that are overwhelmingly irrelevant to the allegations actually placed at issue by the indictment. In the interest of clarity and brevity, Mr. Whitman's challenges to the admissibility of these conversations can be grouped into three principal categories:

- *Conversations About Unrelated Companies*. Many of the conversations address conduct and transactions involving other companies—including Altera, Cisco, QLogic, and Synaptic—that are not identified in the indictment and are not related to the charged conspiracies. Specifically, these include conversations between Mr. Whitman and ▓▓▓▓▓▓▓▓ a friend and former ▓▓▓▓▓▓▓▓ employee from approximately 1999 to 2002 (on December 4, 2008, and January 19, 2009[2]), and between Mr. Whitman and Mr. Motey (on May 4, 2009).

- *Conversations About Marvell After The Conclusion of the Alleged Marvell Conspiracy*. A second set of recordings addresses conduct and transactions involving Marvell (as well as an unrelated company, ▓▓▓▓ that occurred after the period of the charged Marvell conspiracy. These are the conversations between Mr. Whitman and Mr. Motey (on April 14 and 22, 2009, and May 12,[3] 13, 14, and 21, 2009), and between Mr. Whitman and ▓▓▓▓▓▓▓▓, an employee at Whitman Capital (on May 15, 2009).

- *Conversations About Polycom After The Conclusion of the Alleged Polycom/Google Conspiracy*. The final category of recordings relates to conduct and transactions involving Polycom that occurred long after the period of the Polycom/Google conspiracy charged in the indictment. The conversations were between Mr. Whitman and Ms. Khan (on July 15, 2008, and October 1 and 14, 2008), and between Mr. Whitman and ▓▓▓▓▓▓▓ (on December 4, 2008, and January 5, 2009). Compounding the prejudice of these recordings, they also contain

---

[1] The government has designated two recorded conversations that occurred on December 4, 2008. The first, described as "Session 1336," is challenged only in part—from the 6:03 mark though 8:13—and falls in this first category. The second, described as "Session 1338," is challenged in full and falls within the "about Polycom after the alleged conspiracy" category, discussed herein.

[2] The government has designated two recordings from January 19, 2009, but they appear to be part of the same continuing conversation, and are treated together in this motion.

[3] There also are two designated recordings from May 12, 2009, which also appear to be part of a single conversation and are treated as such together in this motion.

3

>discussions about numerous companies that are utterly unrelated to the allegations, including Cavium, Cisco, Citrix, Foundry, Garmin, Hitachi, Intel, Juniper, Net Logic, Samsung, and Seagate.

Other conversations identified by the government are not challenged in this motion, although Mr. Whitman reserves the right to object to their admissibility at a later date on any appropriate basis. For the court's convenience, draft transcripts of the calls or call excerpts at issue in this motion are attached hereto as Exhibits 2 through 18.

## ARGUMENT

Evidence is admissible only when it is relevant to a disputed issue, Fed. R. Evid. 402, will not cause "unfair prejudice" to the defendant or otherwise "confus[e] the issues," *id.* R. 403, and is not offered solely to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," *id.* R. 404(b). The recordings challenged in this motion fail these requirements.

On the most basic level, the recordings are far outside the scope of the indictment. The recordings, and the conduct within them, often are separated by months—and in some cases *years*—from any securities transaction the government has alleged to be the result of illegally procured inside information, and indeed *they make no mention of those transactions*. Nor do they reflect any illegal conduct or agreement to engage in illegal conduct between Mr. Whitman and Ms. Khan, Mr. Motey, or ▮▮▮▮. Merely because a call is between the alleged "intermediary/tipper" and the alleged "tippee," it is not therefore automatically admissible—and especially when the call took place years later, contains no evidence of illegal behavior, and makes no reference at all to the transactions at issue in the indictment. Accordingly, they are not direct evidence: they are not part of the alleged conspiracy itself, because they are not part of the "same transaction or series of transactions," nor "inextricably intertwined" with that conduct, as they

4

would have to be to be admissible direct evidence. *United States v. Curley*, 639 F.3d 50, 58-59 (2d Cir. 2011).

The only possible purpose these recordings could serve is to imply that Mr. Whitman must be a "bad actor" because he associated with individuals who were either cooperating with or being investigated by the government—the very purpose the Federal Rules of Evidence forbids. Because these recordings are not materially relevant to any disputed issue in the case, and particularly given the substantial risk of confusion of the issues and prejudice to Mr. Whitman from their introduction, they should be excluded.

### A. Recordings Of Conversations About Unrelated Companies Are Inadmissible.

Three of the recordings do not even address Marvell, Polycom, or Google; instead, they concern only different companies not at issue in the indictment—Altera, Cisco, QLogic, and Synaptic.[4] Inquiries or investigations that Mr. Whitman may have made about those companies could have little if any bearing on what he did with respect to Marvell, Polycom, or Google. Moreover, in none of these conversations does Mr. Whitman receive any information that might plausibly be described as "inside information" about these separate companies.[5] To the contrary, on the few occasions when opinions about a company are conveyed, Mr. Whitman is *providing*

---

[4] Specifically, as noted above, these are the conversations between Mr. Whitman and ▮▮▮▮ on December 4, 2008 (Anderson Decl. Ex. 11) and January 19, 2009 (Anderson Decl. Exs. 14-15); and the May 4, 2009 conversation between Mr. Whitman and Mr. Motey (Anderson Decl. Ex. 4).

[5] Any evidence regarding Cisco and QLogic, which the government identified as potential 404(b) evidence, also is inadmissible for the reasons set forth in Mr. Whitman's Motion to Exclude Other Acts Evidence. 4-6, No. 12-Cr-125 (S.D.N.Y. July 6, 2012), ECF No. 48. These particular recordings are not only inadmissible under Rule 404(b), however: even if those allegations in the government's 404(b) notice were allowed to remain in the case, these recordings would still need to be excluded, because they are irrelevant even to those allegations. They furnish no evidence at all suggesting the reciprocal tipping of material nonpublic information described in the government's 404(b) notice.

5

the information.[6]  Given that the indictment alleges only that Mr. Whitman *received* inside information—not that he provided it—this evidence bears little on the existence of the charged conspiracies.

Accordingly, the principal effect if not indeed the very purpose of introducing these recordings would be to suggest that the conversations reflect some generalized bad intent or supposed propensity for improper conduct, and that certainly is the message that the jury would receive.  In the recorded conversations, Mr. Whitman and others discuss their contacts at the various companies, as well as planned or past meetings with those contacts, and presumably the government will use them to suggest that Mr. Whitman likewise sought or shared information about the companies identified in the indictment.  But this is doubly impermissible.  As an initial matter, there is nothing improper or illegal about this conduct:  analysts like Mr. Whitman are expected and allowed to contact officers and employees at the companies in which they trade in order to glean information about their performance.  *See* Mr. Whitman's Motion in Limine Concerning the Legality of Financial "Checks," Dkt. No. 60, 12-cr-125 (JSR) (July 16, 2012).  But even were that not the case, evidence that Mr. Whitman had engaged in conduct of this sort on one occasion would not be admissible to prove that he did so on some other occasion, with respect to some other company.  Moreover, the simple fact that these calls involve companies and events different than those at issue in the indictment means that their admission would create a

---

[6] For example, in response to a question about QLogic during the conversation with ▮▮▮ on December 4, 2008, Mr. Whitman states that he believes the company is "doing okay" and, after discussing the company's recent performance, that "if I had to guess right now [the company's] going to be at the low end of the range on [its] revenues and hit [its earnings per share] on the nose." Anderson Decl. Ex. 11 at 1-2. Mr. Whitman makes the same observation in the conversation with ▮▮▮ on January 19, 2009. Indeed, in the conversation on May 4, 2009, Mr. Whitman and Mr. Motey—far from sharing anything that might be deemed "inside information"—state that they have "nothing" regarding the company under discussion, Cisco. Anderson Decl. Ex. 4 at 2.

6

substantial risk of confusing the jury and unduly delaying proceedings. None of these conversations should be allowed into evidence.

> B. **Recordings Of Conversations About Marvell After The Alleged Conspiracy Are Inadmissible.**

Next, the government has designated several conversations about Marvell that occurred *after* the period of the charged Marvell conspiracy. These conversations were between Mr. Whitman and Mr. Motey (on April 14 and 22, 2009, and May 12, 13, 14, and 21, 2009) (Anderson Decl. Exs. 1-2, 5-8, 10) and between Mr. Motey and ▒▒▒▒▒ (on May 15, 2009) (Anderson Decl. Ex. 9). These, too, are not probative of the charges in the indictment.

All of the recordings occurred months after Mr. Whitman had engaged in the trades in Marvell securities alleged in the indictment, the last of which occurred in January 2009. None of them contains or reflects any transfer of information that might be deemed "inside information" on Marvell, nor do they refer back to any earlier events concerning Marvell that may be at issue in the case. These conversations thus are not direct evidence of the alleged conspiracy itself: they are not part of the "same transaction or series of transactions," nor "inextricably intertwined" with that conduct, as they would have to be in order to be direct evidence of the charged crimes. *Curley*, 639 F.3d at 58-59. On the contrary, they are, at best, tangentially related. Indeed, a close examination of their content reveals they are not related at all. Certain conversations (May 12 and 13, which are Anderson Decl. Exs. 5, 6, and 7) address a meeting between Mr. Whitman and management of Marvell in May 2009, but nowhere is it suggested that material nonpublic information was shared with Mr. Whitman at that meeting, which occurred months after the last challenged trade in Marvell. Indeed, at one point in the May 12 recording, Mr. Whitman notes his understanding that certain questions, primarily about the company's short-term earnings, would be off-limits during the meeting. Anderson Decl. Ex. 5 at 2. But even if

7

such information had been shared (it was not), this would be quite different from the actual charges in the indictment, which alleges allege that Mr. Whitman received inside information through intermediaries, not directly from Marvell management.

Other conversations (May 14, 15, and 21, attached as Anderson Decl. Exs. 8, 9, and 10) relate to efforts by Mr. Motey and ▉▉▉ to continue to contact Marvell employees to discuss company performance, including through use of a "Skype" account,[7] after it appeared that Marvell management had attempted to block their access to lower-level Marvell employees whom they used as sources for their company checks. None of these recordings, however, makes any reference to the scheme or trades alleged in the indictment, or suggests that any information, much less illegal inside information, was actually obtained by Mr. Motey or ▉▉▉ or conveyed to Mr. Whitman during the period of the conspiracy, through Skype calls or otherwise. Indeed, quite the opposite is true: In the May 14 recording, Mr. Whitman states expressly that he has received no exact information from his contacts at Marvell, and has only a general "good feeling" about the company. Anderson Decl. Ex. 8 at 2. Moreover, it is quite clear from the call on May 14 – six weeks after the end of the conspiracy – that this is the first time that Mr. Whitman has ever discussed opening a Skype account with Mr. Motey.

Nor are these recordings necessary to "complete the story" of the conspiracy, or otherwise useful as background. The government's story in this case—that in 2006 through 2009, Mr. Whitman purportedly received information about Marvell, Polycom, and Google from Mr. Motey and Ms. Khan, who had themselves received the information from others, and then traded on that information during that period—is already "simple and complete." *United States v. Wil-*

---

[7] Skype is a division of Microsoft that provides an internet-based messaging service to a large customer base. It is a voice-over-IP technology that is commonly used by private individuals and businesses to make telephone and video calls over the internet. *See generally* http://about.skype.com/.

8

*liams*, 585 F.3d 703, 707 (2d Cir. 2009) (evidence is not admissible as background if the prosecution's version of events is "simple and complete"). There is nothing on these tapes that sheds light on whether that earlier alleged conspiracy did or did not occur; all they show is that Mr. Whitman and Mr. Motey were interested in and discussed Marvell and attempted to learn about the company at a later point in time, a fact which is both unremarkable and undisputed. Marvell was one of Whitman Capital's largest portfolio holdings, sometimes accounting for as much as 30% of the entire fund, for more than a decade, including the entire period covered by the indictment.

The remaining conversations (the April 14 and 22 recordings, Anderson Decl. Exs. 2 and 3) do not even concern communications with Marvell but instead relate to a meeting in April 2009 between Mr. Whitman and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ No potentially "inside information" regarding Marvell is shared during these conversations. Mr. Motey, in fact, confirms to Mr. Whitman in these calls that he has been unable to speak with his contacts at Marvell.

The only use to which this evidence could be put is to invite the jury to infer that, because Mr. Whitman sought to learn appropriate information about Marvell at one point in time, that he also sought to learn *inappropriate* information at an earlier point in time. This obviously makes no sense but is a risk if the tapes are admitted. Even if one could argue that these tapes somehow reflect an intention to obtain inappropriate information, the only use of such evidence would be to suggest that Mr. Whitman has a propensity for improperly seeking illegal inside information from company insiders. That purpose is, of course, impermissible under Rule 404(b). And, it is mistaken in any event: the conduct reflected in these conversations is not improper at all. Research analysts like Mr. Whitman (and Mr. Motey and ▬▬▬▬▬▬▬ are expected and allowed to

9

pursue financial information about a company from both its employees (called "company checks") and its customers and suppliers (called "channel checks"). These efforts, although often against the wishes of a company's management, are not only lawful but, as the Supreme Court has recognized, "necessary to the preservation of a healthy market," in that they ensure more complete and accurate disclosures of information that is relevant to shareholders and traders and thereby help with accurate price discovery in the markets. *Dirks v. SEC*, 463 U.S. 646, 658 (1983). As reflected in these tapes, the interactions between Mr. Whitman and his contacts at Marvell and ▇▇▇ and any attempts by Mr. Motey and ▇▇▇ to communicate with Marvell employees, represented legitimate equity research. That the conduct might be misconstrued by a lay juror as reflecting some improper motivation is a reason to keep it out of the trial, not to admit it.

Other considerations further support exclusion of these calls under Rule 403. Part of the April 22 conversation, for instance, includes an unexplained reference to Mr. Motey's relationship with ▇▇▇." Anderson Decl. Ex. 3 at 15. Whatever this may be referring to, it pertains only to Mr. Motey and cannot be imputed to Mr. Whitman, has nothing to do with the charged conspiracies, and has no business being put before the jury. The calls are also peppered with Wall Street jargon and trash talk, shorthand references, and lighthearted remarks that, although perfectly appropriate, may appear otherwise to a juror unfamiliar with the world of securities analysts and investors. For example, Whitman states that he heard of ▇▇▇ ▇▇▇ (April 22 recording, Anderson Decl. Ex. 3 at 8), ▇▇▇ ▇▇▇ (May 12, Anderson Decl. Ex. 5 at 5), and discusses Mr. Motey and ▇▇▇ being "cut off" from their contacts at Marvell (May 21, Anderson Decl. Ex. 10 at 2-3). None of these is evidence that inside information was shared—

10

much less, as the indictment alleges, conveyed to Mr. Whitman through Mr. Motey several months earlier—but a juror may wrongly infer that these statements somehow bespeak improper conduct. For example, a juror could easily confuse the use of an alternative phone number to help employee contacts avoid "getting in trouble" with *company management* with circumventing or getting in trouble with *law enforcement*. These recordings therefore give rise to an impermissible risk that Mr. Whitman could be convicted based on uncharged innocent actions rather than the criminal conduct actually alleged in the indictment. *United States v. Lyles*, 593 F.2d 182, 195 (2d Cir. 1979) ("[Recordings addressing other events] is especially likely to distort the emphasis at trial 'away from the crimes covered by the indictment to those not so charged.'" (quoting *United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978)). Because these recordings are not relevant for any permissible purpose, and would confuse the issues and unfairly prejudice Mr. Whitman, they should be excluded.

> C. **Recordings Of Conversations About Polycom After The Alleged Conspiracy Are Inadmissible.**

The final recordings include conversations about Polycom that occurred substantially after the period of the charged Polycom/Google conspiracy—specifically, conversations between Mr. Whitman and Ms. Khan (on July 15, 2008, and October 1 and 14, 2008) (Anderson Decl. Exs. 16-18) and between Mr. Whitman and ▮▮▮▮▮ (on December 4, 2008, and January 5, 2009) (Anderson Decl. Exs. 11 and 13). Numerous other companies also are discussed at length during these calls, including Cavium, Cisco, Citrix, Foundry, Garmin, Hitachi, Intel, Juniper, Net Logic, Samsung, and Seagate.

These recordings, like those relating to Marvell, have no actual bearing on the charges in the case. Because they all occurred a year or more after the alleged Polycom/Google conspiracy had ended, they are not direct evidence of that conspiracy or legitimate background information.

11

*See Williams*, 585 F.3d at 707; *Curley*, 639 F.3d at 58-59. Several of these calls include only passing references to Polycom—for instance, Polycom is mentioned only three times in the twenty-minute July 15 recording. The focus of this recording is, instead, on other companies, including several—such as Hitachi, Samsung, and Seagate—that are literally nowhere in the case, even if one counts the notice of "other acts" evidence under Rule 404(b). And in none of the conversations, including those addressing Polycom more directly, is information shared that might be deemed "inside information" about a company. To the contrary, as to Polycom specifically, Mr. Whitman reports that he has not picked up anything meaningful about the company (in the July 15 recording, Anderson Decl. Ex. 16 at 3), that he has had difficulty reaching his contacts at the company (October 1, Anderson Decl. Ex. 17 at 1-2) and that he "never got together" with those contacts (December 4, Anderson Decl. Ex. 12 at 1). Nothing in these discussions tends to make more or less likely the existence of a criminal insider trading conspiracy more than a year earlier.

Nor could these recordings serve any other appropriate purpose. While several of the conversations address efforts to seek information from Polycom employees, including Mr. Bhalla, none of them so "closely parallel[s]" the charged conduct such that it might be admissible to show a pattern or plan, or be deemed "part and parcel" of the conspiracy alleged in the indictment. *Curley*, 639 F.3d at 60. For example, in the October 1 call with Ms. Khan, Mr. Whitman states that he has known Mr. Bhalla "over the years" and that Mr. Bhalla has provided him with "color" regarding the company in the past. Anderson Decl. Ex. 17 at 4. But, even if "color," an innocuous term that virtually stands for the type of information a senior corporate official is authorized to provide to investors, could possibly be interpreted to mean "inside information," those transactions involved transfers of information to Mr. Whitman directly from Mr. Bhalla,

12

and thus vary materially from the transactions with which Mr. Whitman is actually charged (which involved transfers of information to Mr. Whitman from an intermediary).

Other conversations are even further removed from the allegations in the indictment. In the January 5 recording, for instance, Mr. Whitman asks ▮▮▮▮▮▮▮▮ about Cisco, and ▮▮▮▮▮▮▮▮ asks Mr. Whitman about Polycom, but neither reports any actual information. Anderson Decl. Ex. 13 at 1-2. Even if information had been passed, and even if it were material and nonpublic— and there is no evidence suggesting any such thing—seeking inside information on a company is not itself a crime, *see Dirks*, 463 U.S. at 659-60, and the indictment in this case alleges that Mr. Whitman *received* information on Polycom, whereas in the calls he is asked to *provide* it.

This evidence could serve no other purpose than to suggest to the jury that there is something intrinsically suspect about Mr. Whitman's investment business, whose strategy always involved researching and trying to understand a small number of companies in a limited sector of the economy. Seeking to create that inference is legally impermissible for a whole host of reasons, including under Rules 403 and 404(b). But that is the inference we fear the prosecution will attempt to encourage the jury to draw, expressly or implicitly, if for no reason other than the colorful or loose language that is sometimes employed in these conversations.

This evidence also should not be admitted because it would lead to additional "confusion of the issues and undue delay in a trial that promises to be complex and lengthy even in [their] absence." *United States v. Stein*, 521 F. Supp. 2d 266, 270 (S.D.N.Y. 2007). This case does not involve any charge that Mr. Whitman unlawfully executed trades on the basis of information conveyed in the recordings, or any trades that are discussed in these recordings. Period. Yet, because the recordings involve the same individuals and, on occasion, discussions about the same companies identified in the indictment, there is a substantial risk that the jury will be con-

13

fused or misled into thinking otherwise. *Lyles*, 593 F.2d at 195 (excluding recorded conversations from trial). Moreover, if the government were to attempt to claim that those conversations suggest illegal insider trading in the securities of other companies being discussed, this case will necessarily devolve into a series of lengthy mini-trials; after all, the government will be required to offer separate proof of the financial status and disclosures of each of those companies—nearly a dozen—to establish that the information was material and nonpublic, as well as detailed evidence regarding the manner and means by which such information was supposedly transmitted to Mr. Whitman with his knowledge of its illegality, and the defense will need to respond in kind. This conduct was not charged in the indictment and will be of no real assistance to the jury in deciding whether the charges in this case are actually true. *See United States v. Hatfield*, 685 F. Supp. 2d 320, 324-25 (E.D.N.Y. 2010) (excluding evidence that would require separate "mini-trial[s]" and cause undue delay). This is precisely the situation Rules 403 and 404(b) are designed to avoid.

\* \* \*

Surreptitiously recorded telephone calls have an overwhelming tendency, by their very nature, to imply to the jury that the defendant must be a criminal. To be sure, recordings that actually satisfy the Rules of Evidence are admissible and may be received. But larding up a case with extraneous or marginal recordings—recordings made entirely after the events at issue, principally relating to companies other than those identified in the indictment, and having no real tendency to make the indictment's charges any more or less likely to be true—can have no real justification. They do not satisfy the test for direct evidence that applies to such tangential allegations, and they can have no purpose than to take advantage of the ugly and unfair inferences created by the mere existence of government-sponsored surreptitious recordings. Under the cir-

14

cumstances, they should be excluded from the trial.  *See, e.g.*, *United States v. DiCarlo*, 131 F. Supp. 2d 537, 539 (S.D.N.Y. 2001).

## **CONCLUSION**

For the foregoing reasons, this Court should grant this motion in limine and exclude the challenged audio recordings.

Dated:  July 16, 2012                                                   Respectfully submitted,

 s/ David L. Anderson

David L. Anderson
(dlanderson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
(drody@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(bberenson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*