UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA             :

   -v.-                             :             12 Cr. 125 (JSR)

DOUG WHITMAN,                        :

               Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


## THE GOVERNMENT'S RESPONSE TO THE DEFENSE MOTION TO EXCLUDE "OTHER ACTS" EVIDENCE

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America.


CHRISTOPHER LAVIGNE
JILLIAN BERMAN
Assistant United States Attorneys
   - Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND ..........................................................................................................2

ARGUMENT ...............................................................................................................3

    A. The Polycom Evidence Is Admissible ..............................................................4

        1. The 2004/2005 Polycom Evidence is Admissible as Background ...................5

        2. The Polycom 2008 Evidence is Direct Evidence of Counts 2-4.....................6

        3. The Polycom Evidence is Admissible Under Rule 404(b) ..............................10

    B. The Wang Evidence Is Admissible ...................................................................14

    C. The ██████████ Is Admissible....................................................................19

    D. ███████████ Information Is Admissible ......................................................19

    E. The Proffered Evidence Should Not Be Excluded Under Rule 403 ...........................22

CONCLUSION..............................................................................................................23

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :

   -v.-                                       :            12 Cr. 125 (JSR)

DOUG WHITMAN,                       :

          Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the defense motion to preclude the Government from offering evidence of "other acts" committed by the defendant. The "other acts" underpinning the defense motion consist of information the Government provided to the defense on June 25, 2012. This information primarily includes: (1) instances pre-dating the charged conspiracy in which Whitman exchanged material non-public information about publicly-traded companies ("Inside Information") with his co-conspirators; (2) instances during the time period of the charged conspiracies in which Whitman exchanged Inside Information with his co-conspirators about companies other than those referenced in the Indictment; and (3) various recorded conversations post-dating one of the conspiracy counts in which Whitman instructs a cooperating witness to contact an insider of Polycom, Inc. ("Polycom") to get Inside Information.[1]

The defense motion suffers from a number of flaws. The most obvious is that much of

_____

[1]      Because certain information contained in this motion is sensitive, including information obtained from wiretaps, we have publicly filed a redacted brief and are providing unredacted copies to the Court and defense, with the request that they be filed under seal for the time being.

"other acts" to which the defense refers constitute clear, direct evidence of the charges in the Indictment.  In the alternative, and at minimum, the proffered evidence referenced below is admissible as background to the charges and/or under Rule 404(b) of the Federal Rules of Evidence ("Rule 404(b)").

## BACKGROUND

The defendant is charged in a four-count Indictment with securities fraud offenses. Counts One and Two charge Whitman with participating in two separate conspiracies to commit securities fraud by engaging in insider trading.  Specifically, the conspiracy charged in Count One alleges that Whitman conspired with Karl Motey and others to commit securities fraud by trading the securities of public companies, including Marvell Technology Group, Ltd. ("Marvell"), on the basis of Inside Information, from at least in or about 2007 through in or about 2009.  The conspiracy charged in Count Two alleges that Whitman conspired with Roomy Khan and others to commit securities fraud by trading the securities of public companies, including Polycom and Google, Inc. ("Google"), on the basis of Inside Information, from at least in or about 2006 through in or about 2007.  Counts Three and Four charge Whitman with substantive securities fraud for executing securities transactions of Polycom and Google on the basis of Inside Information, in or about January 2006 and July 19, 2007, respectively.

Consistent with the Court's scheduling order, on June 25, 2012 the Government provided the defense with notice of acts the Government may seek to introduce pursuant to Rule 404(b). In its notice, the Government made clear that much of the evidence referenced therein is direct evidence and/or background evidence to the counts charged in the Indictment.  Nonetheless, because the Government also views such acts as admissible pursuant to Rule 404(b), the

Government made a timely 404(b) disclosure out of an abundance of caution,

## ARGUMENT

The defense motion challenges the admission of seven categories of this evidence, and has addressed each of them in its brief.  With some exceptions, the Government seeks to admit all of this evidence (the "Proffered Evidence") because it is either direct evidence or background evidence, or because it is admissible pursuant to Rule 404(b).[2]

Generally, the Proffered Evidence consists of:

- Evidence that Whitman sought or received Inside Information about Polycom, Marvell, and Intel, before or after the dates of the conspiracy, which evidence largely relates to a series of consensually recorded telephone calls between Khan and Whitman regarding Polycom in 2008 (the "Polycom Evidence");

- Evidence that Wesley Wang, a cooperating witness whom the Government anticipates will testify at trial, exchanged Inside Information with Whitman about Cisco, QLogic, and Garmin, from approximately 2002 to early 2009, and about Polycom and Marvell from 2002 to 2006 (the "Wang Evidence");

- Evidence that Whitman provided Inside Information about Marvell and QLogic to ▮▮▮▮▮, an analyst at ▮▮▮▮▮ (the "▮▮▮▮▮");

- Evidence that in 2008 and 2009, Whitman received Inside Information about ▮▮▮ from company employee ▮▮▮▮▮; and

- Evidence that Dave Karson (Whitman's co-conspirator and employee) was forbidden from contacting ▮▮▮ employees in 2007.

For the reasons that follow, all of this evidence is admissible.

---

[2]     The Government is not seeking to admit in its case-in-chief categories 3 or 7 referenced in the defense motion: (1) that Wang witnessed Whitman engage in insider trading relating to TelCom Semiconductor in 1999 or 2000; and (2) that Motey provided Inside Information to Whitman about Foundry in 2007 to 2009.  In the event the defense opens the door during cross examination of Government witnesses on any of these issues, the Government reserves the right to elicit it.

A.    **The Polycom Evidence Is Admissible**

The defense seeks to preclude evidence regarding "alleged efforts by Mr. Whitman to obtain information concerning Polycom, Marvell, and Intel outside of the time frame of the charged conspiracies" (Def. Mem. at 9), to which we have referred as the Polycom Evidence given that it largely applies to testimony by cooperating witness Roomy Khan and a series of 2008 consensual recordings between Khan and Whitman.  We expect that Khan will testify that she provided Inside Information to Whitman about Polycom and some other companies from approximately late 2004 until late 2007.  We also expect to introduce evidence – including 2008 consensual recordings between Khan and Whitman – that Whitman attempted to obtain Polycom Inside Information in 2008, and also attempted to obtain Inside Information through his employee Dave Karson and directly from a Polycom Executive Sunil Bhalla.[3]

In arguing this evidence is inadmissible, the defense relies on arbitrary distinctions between the scope of Whitman's conduct in 2006-2007, and his conduct outside those dates. This is of no consequence – the Polycom Evidence is directly relevant to all counts of the Indictment.  It explains Khan's relationship with Whitman and the origins of the conspiracy; it demonstrates Whitman's knowledge of the nature of Khan's relationship with Sunil Bhalla, the Polycom executive who supplied Khan with Inside Information; it shows Whitman's intent and efforts to get Polycom Inside Information, a central issue in this case; and it directly bears on Whitman's knowledge and intent in conspiring with Karl Motey to get Inside Information about Marvell (as charged in Count One).  Accordingly, it should be admitted.

---

[3]    Both Karson and Bhalla were named as co-conspirators in the Government's Bill of Particulars.

1.     The 2004/2005 Polycom Evidence is Admissible as Background

It is well-settled that evidence can be admitted to provide the jury with a complete story and the context of events relevant to the charged offense.  *See United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994).  As the Second Circuit has stated:

> [T]he trial court may admit evidence that does not directly establish an element of the offense charged, in order to provide background for the events alleged in the indictment.  Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed.

*United States* v. *Gonzalez*, 110 F.3d 936, 941 (2d Cir. 1997) (quoting *United States* v. *Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991) (internal quotations omitted)); *see also United States* v. *Lasanta*, 978 F.2d 1300, 1307 (2d Cir. 1992) (affirming decision to admit evidence of prior drug dealing to explain "how the co-conspirators came to interact with each other, and [to render] more plausible their joint participation in the heroin and cocaine conspiracies charged in the indictment."); *United States* v. *Langford*, 990 F.2d 65, 70 (2d Cir. 1993); *United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990).

The Government expects the evidence will show that after Khan met Whitman in approximately 2003, Whitman learned that Khan was friends with Sunil Bhalla, an executive at Polycom, and that Khan had access to Polycom Inside Information through Bhalla.  The Government further expects the evidence will show that Khan provided Polycom Inside Information to Whitman in or about late 2004 and early 2005, which is prior to the beginning of the charged conspiracy (January 2006) and the date of the substantive securities fraud offense charged in Count Three.  This Polycom Evidence is admissible because it explains how the

conspiratorial relationship between Whitman and Khan developed.  It is inaccurate and confusing, for example, for the jury to be left with the impression that the first time Khan and Whitman discussed Polycom Inside Information was 2006, and that Whitman's January 2006 trades were the product of an isolated tip to him from Khan.  To the contrary, the fact that Khan had previously passed Polycom Inside Information to Whitman that she received from Bhalla – including that such information proved useful – helps explain why Whitman traded on this information in January 2006.  Thus, in order for the jury to have a full understanding of Khan's and Whitman's relationship, and why Whitman trusted Khan's information enough to trade on it, and to complete the story of their own criminal conduct, it is necessary for Khan to explain her dealings with Bhalla and Whitman, and the exchange of Polycom Inside Information in 2004 and 2005.

The defense fails to address the significance of this background evidence, and relies on the artificial distinction that there is no allegation that Whitman "improperly traded" on the Inside Information.  (Def. Mem. at 9.)  This is of no consequence; the evidence is being offered as background to the charged conspiracy in Count Two, which does not require any trading for guilt to be established, as well as Counts Three and Four, all of which may be proven through circumstantial evidence.

2.    The Polycom 2008 Evidence is Direct Evidence of Counts 2-4

The Polycom 2008 Evidence largely consists of a series of consensually recorded telephone calls that Khan made to Whitman between July 2008 and October 2008, after she

began cooperating with the FBI.[4]  These recorded telephone calls share a central theme –

consistent with Whitman's prior dealings with Khan, Whitman repeatedly asks Khan in 2008 to

contact Bhalla and get information about Polycom's financial performance.  Indeed, two of the

five calls fall within almost two weeks of Polycom's third quarter 2008 earnings announcement,

which is entirely consistent with Whitman's interactions with Khan in 2006 and 2007, when

Whitman would ask Khan, shortly before Polycom announced its earnings, to call Bhalla to get

information.

  This Polycom 2008 Evidence is admissible as direct evidence of Counts Two through

Four of the Indictment.  It makes a fact "of consequence" to these charges – Whitman's state of

mind and the existence of an agreement to exchange Inside Information with Khan – "more . . .

probable than it would be without the evidence."  FRE 401(a).  It includes direct admissions by

Whitman of getting Inside Information from Bhalla via Khan, and it is evidence of how Whitman

went about seeking that information.

  By one example, after acknowledging that his co-conspirator Dave Karson (Whitman's

analyst) still has sources at Polycom, the following conversation on September 4, 2008 ensues:

---

   [4]  The Government understands that the defense is filing a separate motion to
preclude the admission of various recordings between Khan and Whitman from July 2008 to
October 2008.  Notably, in the instant motion, the defense is *not* contending that all of the
Khan/Whitman recordings are inadmissible, nor could it plausibly do so.  Throughout various
portions of these calls, for example, Whitman makes express admissions about his past criminal
conduct with Khan, noting in one instance that Bhalla **"like, with you, has gone outside what
[the CEO] would like,"** and explaining in another instance that Marvell **"wasn't like Polycom
where you happen to get a number and hardly anybody else did.  Maybe [] did
occassionally.  But, but everybody was getting, it would be like everybody getting a number
on Polycom."**  In the event the defense does seek to preclude admission of these calls in its
subsequent motion, the Government will respond accordingly.

KHAN:        Because David [Karson] had some good sources there.
WHITMAN: He still does, but you know.  But, ah, you know.
KHAN:        Maybe we should check notes.
WHITMAN: His source was not like yours.
KHAN:        I know.
WHITMAN: Okay.  And you stopped calling your source you told us.
KHAN:        No, I'll, I'll, I'll try, he called me actually the other day so I'll try to
             call him when he comes back.  He's in, he's overseas.
WHITMAN: K.

When Khan continues to express reservations about calling Bhalla, the following conversation

ensues:

WHITMAN: What value are you if you're not a slime ball?  I don't know if I'll talk
             to you anymore. . . .  I'm not sure I'm gonna talk to you anymore.
KHAN:        Why?  Because I'm not . . .
WHITMAN: You're not gonna be a slime ball, what do I wanna talk to you for.

During another such conversation on August 22, 2008, Whitman and Khan say the

following:

WHITMAN: You know what would make you feel better?
KHAN:        Yeah.
WHITMAN: Calling Sunil and getting a good call on Polycom and helping us short
             it.
KHAN:        [Laughing]
WHITMAN: That would really make you feel better and your neighbors.[5]
KHAN:        Yeah but I could go to jail while doing that too.
WHITMAN: You would not.
KHAN:        No, I can never trade that stock because I know him and you know
             people can connect...
WHITMAN: You've traded Polycom in the past.
KHAN:        I've actually never traded it.  You would be surprised.  I never traded
             it because I just feel like I'd get in big trouble.  You know it's easy for
             me, for them to connect my calls to him.
WHITMAN: Use the skype phone number [Laughing].
KHAN:        I'm sorry.
WHITMAN: Get skype and use that number.

_____

[5]        The evidence will show that Khan and Whitman were neighbors.

-8-

The defense argues that the fact "[t]hat Mr. Whitman *sought* information, even if true, is not a crime itself and cannot support the existence of a conspiracy to *exchange* insider information, much less to trade on it." This is illogical. It intentionally ignores the content of the recorded calls the Government will seek to admit, in which, by way of example, Whitman counsels Khan about how to evade detection in contacting Bhalla in response to Khan's statement that she could go to jail, and later says he will not talk to her if she will not be a "slime ball." While these communications do not result in trades (notably because Khan was cooperating, she did not pass Inside Information to Whitman at the time), they need not be so specific to be relevant. The Second Circuit has repeatedly stated that:

> [t]o be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency. Relevant evidence is not confined to that which directly establishes an element of the crime.

*Gonzalez*, 110 F.3d at 941; *see also United States* v. *Libera*, 989 F.2d 596, 601 (2d Cir. 1993) (emphasizing in securities fraud prosecutions that *mens rea* may be proved through "inferences from circumstantial evidence"); *accord United States* v. *Mylett*, 97 F.3d 663, 668 (2d Cir. 1996).

Indeed, the Polycom 2008 Evidence – particularly Khan's recorded telephone calls with Whitman in 2008 – is directly relevant to the charges contained in Counts Two through Four. In them, Whitman acknowledges that Khan has received and provided him with Polycom Inside Information from Bhalla in the past; Whitman expresses an understanding about Khan's close relationship with Bhalla; Whitman encourages Khan to contact Bhalla again; and when Khan expresses concern about going to jail if she contacts Bhalla or that what she is doing is wrong, Whitman advises her on how to evade detection and tells her to be a "slime ball."

For the same reasons, evidence that Whitman sought and/or obtained Polycom Inside Information from co-conspirators Dave Karson and Sunil Bhalla is admissible, as it shows Whitman's intent to obtain Polycom Inside Information, particularly his knowledge of the difficulty in getting such information and his consequent need to use Khan. This is a central theme of the recordings referenced above – while Whitman had various avenues to get Inside Information about Polycom (including Karson and Bhalla), he used Khan because Bhalla was most forthcoming with her. During one recording about two weeks before Polycom's October 2008 earnings announcement, for example, Whitman discusses with Khan the difficulty he has encountered in reaching Bhalla and suggests Khan try and contact Bhalla for him, which, again, is consistent with their prior dealings.

> 3.    The Polycom Evidence is Admissible Under Rule 404(b)

In the alternative, the Polycom Evidence as a whole is admissible under Rule 404(b), as to all Counts of the Indictment, as evidence of the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). The Second Circuit "has long adopted an 'inclusionary' approach to the admission of uncharged crime evidence, under which evidence of prior crimes, wrongs, or acts 'is admissible for any purpose other than to show a defendant's criminal propensity.'" *United States* v. *Paulino*, 445 F.3d 211, 221 (2d Cir. 2006) (quoting *United States* v. *Pitre*, 960 F.2d 1112, 1118-19 (2d Cir. 1992)). "Subsequent acts are [also] admissible under Rule 404(b)." *United States* v. *Curley*, 639 F.3d 50, 61 (2d Cir. 2011).

Applying this approach, the Second Circuit has routinely approved of the admission of "other crimes" evidence with respect to the issues of knowledge, intent and/or motive. *See, e.g.,*

-10-

*United States* v. *Thomas*, 54 F.3d 73, 81-82 (2d Cir. 1995); *United States* v. *Meyerson*, 18 F.3d 153, 166-67 (2d Cir. 1994). Moreover, the Second Circuit has consistently recognized that evidence of the defendant's involvement in prior similar crimes is not only probative of his intent, but where, as here, the defendant claims his conduct has an innocent explanation, the admission of such evidence of prior acts is particularly appropriate. *See, e.g.*, *United States* v. *Zackson*, 12 F.3d 1178, 1182 (2d Cir. 1993) ("Where a defendant claims that his conduct has an innocent explanation, prior act evidence is generally admissible to prove that the defendant acted with the state of mind necessary to commit the offense charged."); *United States* v. *Gordon*, 987 F.2d 902, 908-09 (2d Cir. 1993); *United States* v. *Caputo*, 808 F.2d 963, 968 (2d Cir. 1987) (allowing "evidence of appellants' involvement with previous credit card schemes" because it was "probative of their intent in possessing the 'access devices' for which they were charged"). The defendant's knowledge and intent are at issue unless the defendant has unequivocally conceded that element of the offenses with which he is charged. *See, e.g.*, *United States* v. *Colon*, 880 F.2d 650, 656-57 (2d Cir. 1989); *see also United States* v. *Ramirez*, 894 F.2d 565, 568 (2d Cir. 1990).

Here, Whitman clearly has placed his intent and knowledge at issue: he has argued in court filings that Whitman acted "with a wholly innocent state of mind" (4/13/12 Def. Mem. at 10) and "[without] any suggestion that information being provided to Mr. Whitman by Mr. Motey or Khan had been procured by them unlawfully by giving improper personal benefits to insiders to induce them to breach legal duties." (*Id.* at 11). *See United States* v. *Aminy*, 15 F.3d 258, 260 (2d Cir. 1994).

Thus, evidence of Whitman's statements and actions with Khan in 2008, which reflect his

-11-

knowledge that Khan had improperly obtained Polycom Inside Information from Bhalla in the past, and which directly bear on his intent in tasking Khan with contacting Bhalla in 2006 and 2007 is admissible under Rule 404(b). *See United States* v. *Rutkoske*, 506 F.3d 170, 176-78 (2d Cir. 2007) (upholding admission of a conversation of a separate but similar securities fraud scheme that occurred four years after the conclusion of the charged conduct, given the "similarity" to the charged scheme and the defendant's claim of lack of knowledge of the fraudulent scheme); *see also United States* v. *Germosen*, 139 F.3d 120, 128 (2d Cir. 1998).

The logic of *Rutkoske* applies here.  The conversations between Khan and Whitman in 2008 occur less than a year after Khan's dealings with Whitman that are charged; they relate to the exact same stock (Polycom) and insider (Bhalla) as existed previously; Whitman makes repeated references to their past improper arrangements and to Khan's relationship with Bhalla; Whitman continues to press Khan to get Polycom Inside Information even after Khan notes that she could go to jail and that it is wrong; and their conversations mirror their prior dealings – two of the five calls occur within two weeks of Polycom's third quarter 2008 earnings announcement, during which time Whitman asks Khan to contact Bhalla on his behalf.

The Polycom 2008 Evidence is also admissible under Rule 404(b) as to Count One, which spans from 2007 to 2009 and centers around Whitman's receipt of Marvell Inside Information from Motey.  Whitman's conversations with Khan occur before Motey is cooperating, and these conversations corroborate Motey's testimony that Whitman knew the information Motey was providing to Whitman was confidential and obtained improperly.  The arrangement between Whitman and Khan was similar to that between Whitman and Motey. Whitman relied on both individuals to get him Inside Information – unavailable to the public –

by forging relationships with corporate insiders, which Whitman knew was improper.  The fact

that Whitman instructed Khan to continue to contact Bhalla notwithstanding Khan's statements

that she could go to jail and/or that it was wrong, reflect Whitman's intent and consciousness of

guilt with respect to his actions which form the basis of Count One – which were occurring

around the same time as Whitman was communicating with Khan.   These communications also

place Whitman's actions with Motey in proper context.  Indeed, when in 2009 Motey explains to

Whitman that he has lost his Marvell contacts and they will not call him back, Whitman tells

Motey to use Skype, just like Whitman did with Khan.  Given that Whitman's defense is that he

lacked criminal intent, the Polycom 2008 Evidence is highly probative of Whitman's intent and

motive as to Count One.

>     And finally, focusing purely on the Polycom 2004/2005 Evidence, such evidence also is

admissible under Rule 404(b).  Whitman's prior interactions with Khan in 2004 and 2005 in

which Khan provided him Polycom Inside Information bear on his state of mind when he asked

Khan to obtain, and when she did obtain, Polycom Inside Information from 2006 and 2007.  *See*

*Zackson*, 12 F.3d at 1182; *Gordon*, 987 F.2d at 908-09.

>     Accordingly, the Polycom Evidence should be ruled admissible.[6]

---

[6]     In moving to exclude the Polycom Evidence, the defense also seeks to exclude any evidence that Whitman sought Inside Information on Intel.  The only evidence the Government seeks to introduce on this point is a brief segment of a 2008 consensual call between Khan and Whitman, in which Whitman asks Khan if she has any information on Intel, and makes reference to anyone she could be "buddies with."  The Government believes this portion of the conversation should be admitted under Rule 404(b) for the reasons articulated in sections A.3 and B of this brief, as it bears on Whitman's knowledge and intent in seeking Inside Information.

### B.      The Wang Evidence Is Admissible

The defense also seeks to exclude a category of evidence regarding "a series of interactions, which allegedly occurred from 2002 through 2009 . . . in which Mr. Whitman and Mr. Wang . . . shared information regarding . . . Cisco, QLogic, and Garmin" (Def. Mem. at 4) and concerning Whitman "shar[ing] Polycom and Marvell information with [Wang] from 2002 to 2006" (Def. Mem. at 9), to which the Government refers as the Wang Evidence.

This argument lacks merit.  As explained below, Wang's discussions with Whitman about Cisco, QLogic, and Garmin between 2006 to 2009 are admissible as direct evidence of the charges in the Indictment, or, in the alternative, under Rule 404(b), and Wang's interactions with Whitman before 2006 are admissible to show background to his relationship with Whitman or under Rule 404(b).

The Government expects that Wang will testify that both before and within the time frames of Counts One and Two of the Indictment (2006 to 2009), he received information from Whitman about Polycom, Marvell, and QLogic as part of his agreement with Whitman to exchange inside information on various companies.  Wang will discuss his interactions with Whitman during this time period, including that Wang provided Whitman with Inside Information about other companies, most notably Cisco. ████████████████
████████████████████████████████████████

The defense claims that this evidence is inadmissible, primarily arguing that because Wang provided Whitman information about Cisco (a company not specified in the Indictment), conversations between Whitman and Wang "cannot plausibly serve as evidence of the charged conduct," "[n]or could they be deemed proof of Whitman's state of mind, his *modus operandi*, or

otherwise a pattern of conduct." (Def. Mem. at 4-5.)  Yet the Wang Evidence is not merely

admissible pursuant to Rule 404(b).  It is clear, direct evidence of the conspiracy charges in

Counts 1 and 2 of the Indictment, as Whitman agreed to provide Wang Inside Information on

Polycom, Marvell, and QLogic in exchange for Wang's information on other companies,

including Cisco, which Wang indicated was Inside Information.

Importantly, "'evidence of uncharged criminal activity is not considered other crimes

evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of

transactions as the charged offense, if it is inextricably intertwined with evidence regarding the

charged offense, or if it is necessary to complete the story of the crime on trial.'" *United States*

v. *Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *Gonzalez*, 110 F.3d at 942).  *See also United*

*States* v. *Kaiser*, 609 F.3d 556, 571 (2d Cir. 2010); *United States* v. *Rosa*, 11 F.3d 315, 333-34

(2d Cir. 1993); *Pitre*, 960 F.2d at 1119; *United States* v. *Roldan-Zapata*, 916 F.2d 795, 804 (2d

Cir. 1990).

Here, the Wang Evidence, is, *quite literally*, "inextricably intertwined with evidence

regarding the charged offense[s]."  It is next to impossible for Wang to explain to the jury the

substance of his conversations with Whitman without including facts relating to other

companies,[7] as this evidence is intertwined with Wang's testimony about Polycom, Google and

Marvell.  By way of example, ████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[7]        The companies referenced in the defense motion were all specified in the
Government's Bill of Particulars.



▬▬▬▬ Wang would get information from Whitman relating to Polycom and Marvell, which Whitman indicated was from his "contacts" and, in exchange, Wang would provide Whitman with Inside Information on Cisco and other companies.  During many of these conversations, ▬▬▬▬▬▬▬▬▬▬▬▬ Whitman would also discuss QLogic. Without evidence of the full extent of these communications – which includes references to several companies – the jury would be left with an inaccurate view of the facts, and without a clear basis to interpret the defendant's words.  *See, e.g.*, *United States* v. *Inserra*, 34 F.3d 83, 89 (2d Cir. 1994) ("evidence of other bad acts may be admitted to provide the jury with the complete story of the crimes charged by demonstrating the context of certain events relevant to the charged offense").

      The defense's suggestion that this information does not "add anything to this" case, and

that the Court must distinguish between instances where Whitman "received" information from instances where he "provided" information (Def. Mem. at 5), is baseless.  The acts at issue in this case did not take place in a vacuum; they were part of an ongoing series of communications between Whitman and his co-conspirators over several years.  Wang's testimony would make no sense if it were limited to Inside Information he received from Whitman.  The jury would speculate as to why Whitman was providing Wang with Inside Information, having no evidence before it that Wang was providing something very valuable in return.  This would mislead the jury and cause it to question Wang's credibility unnecessarily and unfairly.

Nor – as the defense argues – will evidence of Wang's conversations with Whitman about other companies prolong the trial because of a need to establish that information provided by Wang was, in fact, material and/or non-public.  The Government does not intend to offer testimony from a Cisco witness that information provided by Wang was in fact accurate or confidential, and there is no need for the Government do so given that the Government is offering this evidence to show Whitman's state of mind and intent – *i.e.* that he agreed with others to exchange Inside Information for the purpose of executing securities transactions, and that he believed the information he received from Wang (which purportedly was coming from an insider) was Inside Information.  It is well-settled that "[w]hat matters in a conspiracy prosecution is whether the defendants agreed to commit the underlying offense, not whether their conduct would actually have constituted that offense."  *United States* v. *Rosa*, 17 F.3d 1531, 1543 (2d Cir. 1994) (citation omitted); *see also United States* v. *Shellef*, 507 F.3d 82, 105 (2d Cir. 2007) ("'[I]t . . . 'does not matter that the ends of the conspiracy were from the beginning unattainable.'").

Finally, in addition to being "inextricably intertwined" with Wang's testimony on Polycom, Google, and Marvell, the Wang Evidence is admissible under Rule 404(b), as it shows Whitman's knowledge, intent, and motive with respect to all counts of the Indictment. We expect, for example, that Wang will testify that: (1) he told Whitman that the Cisco Inside Information he provided to Whitman came from a company insider; (2) Whitman repeatedly asked for this information from Wang; and (3) Whitman, in exchange, provided information about Marvell, Polycom, and QLogic regarding earnings, revenue and other topics, prior to those companies' quarterly anouncements, which Whitman indicated came from his sources, including Karl Motey. This *is* a similar pattern of conduct that Whitman exhibited with Khan and Motey – Whitman tasked them with getting Inside Information from Polycom and Marvell, and provided them benefits in exchange for that information, including Inside Information on other companies (for Khan) and money (for Motey). Thus, Wang's testimony is admissible under Rule 404(b) – it is evidence of Whitman's intent, his state of mind, his knowledge █████████████████ ████████████████ of the necessity of providing items of value to insiders to get inside information, and his pattern of conduct.

Nor should Wang's testimony be limited to his interactions with Whitman from 2006 to 2009, which overlap with the dates of the charged conspiracies. As explained above regarding the Polycom Evidence, such testimony is admissible to show background to Wang's relationship with Whitman, *see Lasanta*, 978 F.2d at 1307, and under Rule 404(b) to show his knowledge and intent during his 2006 to 2009 interactions with Whitman, *see Zackson*, 12 F.3d at 1182.

Accordingly, the Wang Evidence should be admitted as direct evidence of the counts in the Indictment or, in the alternative, under Rule 404(b) or as background to the conspiracy.

-18-

C.      The █████████████ is Admissible

The defense also seeks to exclude the █████████████ (Def. Mem. at 6).  The portion of this evidence that the Government intends to introduce is limited, straightforward, and admissible as direct evidence.  In the alternative, it is admissible under Rule 404(b).[8]

This evidence will consist of a handful of instant messages that Whitman sent to ████ In those messages, Whitman passes along Marvell Inside Information that Whitman obtained from Motey, and Whitman makes comments about Motey.  In one exchange, for example, after having provided ████ with information Whitman received from Motey, Whitman writes: "time to start paying mr. Motey."  In another instant message, Whitman writes to ████ "you need to start paying karl m he has info you need on mrvl."  This is direct evidence of Count One of the conspiracy; it helps establish that Whitman in fact received Inside Information from Motey, it relates to Marvell, and it demonstrates that Whitman valued the information he was receiving from Motey.  It also provides evidence of Whitman's knowledge that he obtained valuable Marvell information from Motey, as well as Whitman's intent to do so.

The fact that Whitman "provided" this information rather than "received," or was the "tipper" rather than the "tippee" (*see* Def. Mem. at 5, 7) is of no moment.  To suggest otherwise, and argue that such evidence is inadmissible, is beyond a stretch.

D.      ████ and ████ Information is Admissible

The defense also seeks to exclude the ████ and ████ Evidence that the Government seeks to offer (Def. Mem. at 12 - 15).  This evidence also is extremely limited in scope and is

_____

[8]      The Government does not intend to introduce evidence that Whitman provided information to ████ about QLogic.

-19-

admissible because it is inextricably intertwined with Motey's testimony and is evidence of Whitman's criminal intent.

The ████ Evidence, for example, consists of statements that Whitman obtained from an employee of ████, a company that supplies wafers to semiconductor companies including Marvell, that relate to Marvell.  Specifically, on several occasions captured on consensual recordings and in instant message communications with Motey, Whitman conveys to Motey information he obtained from the ████ employee that relates to Marvell.  Whitman provides this information to Motey so that Motey can verify with his Marvell inside sources whether this information is accurate and/or its significance.  Thus, this evidence of information Whitman received from the ████ employee is offered not to establish that Whitman received non-public information about ████, but because Whitman then uses that information in a dialogue with Motey that pertains to Motey's inside sources at Marvell.

In addition, during certain conversations with Motey that encompass references to the ████ employee, Whitman makes statements that reflect his intent to obtain confidential information improperly.  For example, during an April 14, 2009 call with Motey, Whitman states: "**I do not want to communicate with [the ████ employee] about anything too particular by email 'cause, I know, you know, times are watching, guys.** . . . **Um, so I'd rather do it in person.**"  In a call on April 22, 2009, Whitman again shares with Motey information from the ████ employee.  When Motey asks what else this individual said, Whitman states: "**I was in Hawaii, so we couldn't, we didn't end up hooking up.  It was all by email and um, he's really careful and so am I with him, ah, stuff on email . . . And I don't really call him anymore on his office phone or I hit \*67.  Turn off the caller ID because I**

-20-

**don't want to be ah, identified . . . with him. . ."**

Accordingly, the ███ evidence the Government seeks to elicit – which is limited and not time-consuming – is admissible because it is: (1) inextricably intertwined in recorded calls and other communications between Motey and Whitman that reflect Whitman's knowledge that Motey has inside sources at Marvell, and Whitman's intent that Motey use these sources to verify and/or explain the significance of certain information; and (2) probative as to Whitman's intent to evade detection from authorities when communicating with company insiders.

The ███ Evidence the Government seeks to introduce is even more limited.  This evidence includes a reference made by Whitman (in the course of a recorded conversation with Karl Motey) about his employee Dave Karson previously being "cut off" from contacting individuals at ███ – a public company – by its management because Karson repeatedly attempted to contact ███ sales employees directly.  The Government is introducing these facts because they place a number of Whitman's statements in proper context.  For example, prior to Whitman's comments about Karson, Motey tells Whitman that Motey's Marvell sources are not returning Motey's calls, to which Whitman shares Karson's experience at ███ and explains ways that Karson was able to contact company employees without being caught, such as using Skype and "Gmail" email addresses (instead of work email addresses).

As a whole, this evidence is again admissible to Whitman's knowledge of permissible boundaries of speaking company insiders and his intent in attempting to do so.  The limited evidence the Government seeks to introduce regarding ███ is necessary to place Whitman's conduct and statements in proper context, which directly bear upon his criminal intent and reflect his consciousness of guilt.  This evidence will consist of only a few minutes of testimony, and is

-21-

not unduly prejudicial.

### E.    The Proffered Evidence Should Not Be Excluded Under Rule 403

And finally, there is no basis to exclude the Proffered Evidence under Rule 403.  There

is no danger of unfair prejudice as the proffered fraudulent conduct is no more inflammatory than

the charged conduct, which includes two substantive counts of securities fraud in which

Whitman is alleged to have yielded over $900,000 in profits.  The Second Circuit has held that

unfair prejudice cannot result from 404(b) evidence that does not involve conduct more serious

or sensational than the charged crime.  *See United States* v. *Williams*, 205 F.3d 23, 34 (2d Cir.

2000); *Pitre*, 960 F.2d at 1120 (Rule 403 did not preclude evidence of prior narcotics

transactions that "did not involve conduct any more sensational or disturbing" than the charged

crime) (citation omitted); *Roldan-Zapata*, 916 F.2d at 804.  Evidence is unfairly prejudicial "only

when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or

issue that justified its admission into evidence."  *United States* v. *Figueroa*, 618 F.2d 934, 943

(2d Cir. 1980).  "Because virtually all evidence is prejudicial to one party or another, to justify

exclusion under Rule 403 the prejudice must be *unfair*."  *Costantino* v. *Herzog*, 203 F.3d 164,

174 (2d Cir. 2000) (emphasis in original).  Here, there is nothing unfair in the admission of the

Proffered Evidence – it is directly relevant to the defendant's commission of the charged

offenses, identity, knowledge, and intent and motivation; it deals with the same course of conduct

as charged in the Indictment; and, in many instances, is direct evidence of *that conduct*.

Finally, the proposed Rule 404(b) evidence would not lengthen the trial in any

significant way.  The evidence would be introduced through witnesses whom the Government

already plans to call to testify about the conduct occurring during the conspiracy period.   Finally,

to the extent that this evidence poses any danger of unfair prejudice, that risk can be addressed with a limiting instruction from the Court on the proper consideration of Rule 404(b) evidence.

Accordingly, none of the Proffered Evidence should be excluded under Rule 403.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court deny the defendant's motion to preclude other acts evidence.

Dated:   New York, New York
         July 16, 2012

                              Respectfully submitted,

                              PREET BHARARA
                              United States Attorney

                         By: _____
                              CHRISTOPHER LAVIGNE
                              JILLIAN BERMAN
                              Assistant United States Attorneys
                              Telephone: (212) 637-2325/2197

-23-