UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
UNITED STATES OF AMERICA,              :
: ECF CASE
Plaintiff,              : 12 Cr. 125 (JSR)
:
vs.                     :
:
DOUG WHITMAN,                          :
:
Defendant.              :
:
------------------------------------------------------------ X

# DEFENDANT DOUGLAS F. WHITMAN'S RESPONSE TO THE GOVERNMENT'S MOTION TO PRECLUDE CERTAIN EXPERT TESTIMONY

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice* )
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

BACKGROUND .....................................................................................................................2

ARGUMENT ..........................................................................................................................3

I.    MR. MAYER'S TESTIMONY CONCERNING HISTORICAL TRADING PATTERNS OF WHITMAN CAPITAL IS ADMISSIBLE. ............................................4

    A.    Mr. Mayer's Opinions Are Relevant. ........................................................5

    B.    Mr. Mayer's Opinions Require Specialized Knowledge. ........................................7

II.    MR. KELLY'S TESTIMONY CONCERNING INDUSTRY PRACTICE AND TERMINOLOGY IS ADMISSIBLE. ...............................................................9

    A.    Mr. Kelly's Opinions Are Relevant ........................................................10

    B.    Mr. Kelly's Opinions Require Specialized Knowledge ........................................12

    C.    Mr. Kelly's Opinions Will Not Usurp The Role Of The Court. ...........................13

CONCLUSION .....................................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Borawick v. Shay*,
   68 F.3d 597 (2d Cir. 1995)..................................................................................................3, 9

*Daubert v. Merrell Dow Pharms.*,
   509 U.S. 579 (1993)............................................................................................................3, 4

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008)........................................................................13, 14, 15

*In re Blech Sec. Litig.*,
   No. 94-7696, 2003 WL 1610775 (S.D.N.Y. Mar. 26, 2003)..............................................11, 13

*Marx & Co., Inc. v. Diners' Club, Inc.*,
   550 F.2d 505 (2d Cir. 1977)...............................................................................................11, 12

*SEC v. Lipson*,
   46 F. Supp. 2d 758 (N.D. Ill. 1998) .........................................................................................9

*SEC v. U.S. Envtl., Inc.*,
   No. 94-Civ-6608, 2002 WL 31323832 (S.D.N.Y. Oct. 16, 2002)...................................6, 9, 13

*SR Intern. Business Ins. Co., Ltd. v. World Trade Center Prop., LLC*,
   467 F.3d 107 (2d Cir. 2006)...................................................................................................12

*Taylor v. Evans*,
   No. 94-8425, 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ........................................................9

United States v. Bilzerian,
   926 F.2d 1285 (2d Cir. 1991)........................................................................................ *passim*

United States v. Brown,
   776 F.2d 397 (2d Cir. 1985)......................................................................................................6

United States v. Carson,
   702 F.2d 351 (2d Cir. 1983)......................................................................................................6

United States v. Cohen,
   518 F.2d 727 (2d Cir. 1975)....................................................................................................13

United States v. Duncan,
   42 F.3d 97 (2d Cir. 1994) .......................................................................................................13

United States v. Khan,
   787 F.2d 28 (2d Cir. 1986).....................................................................................................3, 5

*United States v. Locascio*,
   6 F.3d 924 (2d Cir. 1993) ............................................................................................3

*United States v. Onumonu*,
   967 F.2d 782 (2d Cir. 1992)..........................................................................................3

*United States v. Russo*,
   74 F.3d 1383 (2d Cir. 1996)..............................................................................1, 6, 9, 13

*United States v. Scheffer*,
   523 U.S. 303 (1998) ......................................................................................................4

*Washington v. Texas*,
   388 U.S. 14 (1967) ........................................................................................................4

**RULES**

Fed. R. Evid. 401 ..................................................................................................................5

Fed. R. Evid. 702 ..................................................................................................................9

## INTRODUCTION

Defendant Douglas F. Whitman respectfully submits this response to the government's motion to preclude certain testimony of two witnesses, Michael G. Mayer and George Kelly. Gov. Mot. To Preclude Certain Expert Testimony, Dkt. No. 79 (July 23, 2012) ("Mot."). Mr. Mayer and Mr. Kelly have been designated by the defense to offer factual and expert testimony concerning the trading activity at the center of this case, and the nature and operation of the securities industry, in particular the practice of equity research analysis. The government does not challenge the qualifications of these witnesses, or the reliability of their testimony. It also does not argue that these witnesses should be excluded in their entirety. Rather, the government argues that certain of their opinions—namely, addressing whether Mr. Whitman's historical trading patterns are consistent with the allegations of insider trading, and explaining standard industry practice and unique concepts and terms—are "not relevant," do not reflect "specialized knowledge," or "usurp the Court's role." *Id.* at 1.

These objections are meritless. Courts in securities cases routinely admit expert testimony on whether the defendant's historical trading patterns support the government's allegations, *see, e.g.*, *United States v. Russo*, 74 F.3d 1383, 1388-89 (2d Cir. 1996), and it is likewise well-settled that "testimony concerning the ordinary practices in the securities industry may be received to enable the jury to evaluate a defendant's conduct against the standards of accepted practice," *United States v. Bilzerian*, 926 F.2d 1285, 1295 (2d Cir. 1991). There is no reason to adopt a different rule in this case. Quite the contrary, this testimony is relevant and we anticipate quite helpful to the jury, which will likely have little or no background knowledge or understanding of hedge fund trading, options, or equity analysis, all of which are essential to an accurate appraisal of the evidence in this case. Especially in a circumstance where numerous exculpatory

fact witnesses are being kept from the stand by the government's refusal to immunize them, it would require extraordinary circumstances to justify depriving Mr. Whitman of testimony he wishes to offer pursuant to his fundamental Sixth Amendment right to present witnesses in his own defense.[1]  Here, however, the Federal Rules of Evidence clearly require that the testimony be admitted.  The motion should be denied.

## BACKGROUND

As relevant here, the indictment alleges that from 2006 through 2009, Mr. Whitman traded or conspired to trade in the securities of three companies—Marvell Technology Group, Ltd.; Polycom, Inc.; and Google, Inc.—on the basis of material nonpublic information, commonly described as "inside information."  No. 12 Cr. 125, ¶¶ 9-10, 24-25, 29 (S.D.N.Y. filed Feb. 8, 2012).  On July 5, 2012, defense counsel notified the prosecution that two expert witnesses, Michael G. Mayer and George Kelly, would be called to testify on defendant's behalf.  Letter from B. Berenson to C. LaVigne at 1 (July 16, 2012) (attached as Exhibit A to the Decl. of David L. Anderson, filed herewith).  Their testimony, as described in a disclosure letter to the prosecution on July 16, 2012, may be summarized as follows:

- *Michael G. Mayer.*  Mr. Mayer is an expert in the field of securities fraud and securities trading analysis.  He is a chartered financial analyst and a certified fraud examiner, with over 25 years of experience in the securities industry.  He will discuss whether the investment history of Whitman Capital reflects that trades in the securities at issue were made at or around the times when "inside information" was allegedly exchanged and also whether the trades challenged by the government are consistent with historical trading patterns of Whitman Capital.  In addition to his expert testimony, Mr. Mayer will also serve as a summary witness, for the purpose of summarizing

---

[1] At last count, six separate witnesses with important exculpatory evidence have refused to testify in response to defense subpoenas, citing their rights under the Fifth Amendment in light of the government's grapeshot allegations of wrongdoing.  These include such essential witnesses as Sunil Bhalla and Shammara Hussain, the alleged sources of the inside information underlying the Polycom and Google allegations, respectively.  In response to a request from the defense to immunize any of these witnesses they do not intend to charge, the government has declined.

- *George Kelly.*  Mr. Kelly is an expert in the field of equity research and analysis, with over 20 years as an industry-leading equity research in the communications network equipment sector for Morgan Stanley.  He will testify as to the role that equity research analysts play in the securities market, the relationship between researchers and company management, the accepted methods of performing equity research, and the way in which market participants tend to express views to one another—including the significance and connotations of certain language in recorded conversations between Mr. Whitman and others.  In addition to his expert testimony, Mr. Kelly will also provide brief factual observations regarding his professional interactions and experience with Mr. Whitman when working in the securities industry.

and explaining for the jury the trades and transactions put at issue by the government's allegations.

The government has not challenged the qualifications of either Mr. Mayer or Mr. Kelly, or asserted that their testimony is inadmissible in its entirety.  Rather, it moves to preclude certain opinions from the testimony of each witness.  Mot. 1.  The argument below addresses each witness separately, and discusses each category of challenged opinion testimony in turn.

## ARGUMENT

Testimony by a qualified expert is generally admissible under Federal Rule of Evidence 702 if it reflects "specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."  This standard is a "liberal one."  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 587 (1993).  So long as the testimony is "minimal[ly] relevan[t]" to a disputed issue, and provides explanation or information that a lay juror would find useful, the "testimony should normally be admitted."  *United States v. Onumonu*, 967 F.2d 782, 786 (2d Cir. 1992); *United States v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986).  In this regard, expert testimony is not limited to "scientific" or "technical" topics, but may address any issue in the case on which an "untrained layman" might benefit from "enlightenment from those having a specialized understanding of the subject."  *United States v. Locascio*, 6 F.3d 924, 936 (2d Cir. 1993).  Indeed, the Second Circuit has admonished that, when considering expert testimony, courts should apply "a presumption of admissibility."  *Borawick v. Shay*, 68 F.3d 597, 610 (2d Cir. 1995).

3

That presumption has even greater force in the criminal context, where the Sixth Amendment guarantees the defendant's right to present testimony "relevant and material to the defense." *Washington v. Texas*, 388 U.S. 14, 23 (1967). "The right to offer the testimony of witnesses ... is in plain terms the right to present a defense [and, thus,] ... a fundamental element of due process of law." *Id.* at 19; *see also id.* ("Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense."). Only if the proposed testimony is plainly irrelevant or unreliable, or otherwise clearly barred by applicable procedural rules, may it properly be excluded from trial consistent with the Sixth Amendment. *See id.*; *see also, e.g.*, *United States v. Scheffer*, 523 U.S. 303, 308-10 (1998).

The testimony of Mr. Mayer and Mr. Kelly challenged by the government is clearly admissible. Testimony concerning the trades at issue in this case, the background trading patterns of Whitman Capital against which they take place, and the manner by which research-driven portfolio managers such as Mr. Whitman legitimately pursue their trade are undoubtedly relevant to the insider trading charges against Mr. Whitman, *see infra* pp. 4-6, 10-11, and they implicate "specialized knowledge" that will help jurors to understand the evidence, *see infra* pp. 6-9, 12-13. This testimony more than satisfies the "liberal" standard of the Federal Rules of Evidence. *Daubert*, 509 U.S. at 587.

## I. MR. MAYER'S TESTIMONY CONCERNING HISTORICAL TRADING PATTERNS OF WHITMAN CAPITAL IS ADMISSIBLE.

The government challenges Mr. Mayer's testimony insofar as it relates to his analysis of historical trading patterns of Whitman Capital, on the grounds that it (i) is "irrelevant" and (ii) does not require "specialized knowledge." Mot. 7-9. Neither argument has merit.

4

### A.     Mr. Mayer's Opinions Are Relevant.

Testimony concerning the historical trading patterns at Whitman Capital are not only relevant to the allegations against Mr. Whitman, they are central to accurately understanding them. In the indictment, the bill of particulars, and the Rule 404(b) notice, the government asserts that Mr. Whitman received inside information on a variety of companies over the course of several years and, in some circumstances, executed trades of securities in those companies on the basis of that information. Mr. Mayer will offer testimony on whether and when Mr. Whitman executed trades on these securities, and in particular whether those trades corresponded to the alleged receipt of inside information, such that the trades might be deemed to be "on the basis of" inside information. Mot. Ex. A. 3-5 (Defendant's Expert Disclosure). That testimony is thus directly relevant to the allegations against Mr. Whitman. Mr. Mayer also will testify to whether the trades challenged by the government are consistent with the historical trading patterns of Whitman Capital where the government does not allege the trades were based on inside information. *Id.* at 3. Certainly whether the trades are consistent or inconsistent with prior patterns of untainted trading activity "has a tendency to make … more or less probable," Fed. R. Evid. 401(a), whether these trades are tainted by illegality. Far beyond the "minimal relevance" required by the Federal Rules of Evidence, *Khan*, 787 F.2d at 34, this testimony could be dispositive in disproving certain aspects of the allegations in this case.

The government's contrary arguments border on the frivolous. The prosecution suggests that testimony about trades that do not "correspond[ ] to instances in which [inside information] was allegedly passed to Mr. Whitman" is irrelevant because "[t]he fact that Mr. Whitman Capital may have made lawful trades on [some] occasions" does not establish whether he did or did not engage in insider trading. Mot. 7. But, as should be clear, the point of this testimony is not to show that Mr. Whitman *made* certain lawful trades, but rather to establish that he *did not make*

5

unlawful ones—*i.e.*, that on a number of occasions when Mr. Whitman allegedly received material nonpublic information he did not trade in that company's securities. This bears directly on whether, at the times at issue in the indictment, Mr. Whitman had an intent to profit from trading on inside information. The government also asserts that testimony about whether the challenged trades are "consistent with previously observed trades and patterns of trading" is irrelevant because, "[i]f the jury concludes that [Mr.] Whitman traded on inside information, their conclusion should not change merely because [Mr.] Whitman's unlawful trades may have resembled past trades that were not based on insider information." Mot. 7-8. This assertion simply begs the question: the question is whether this information will help the jury determine whether the challenged trades were based on inside information. One fact of overwhelming relevance is whether those trades are consistent with a previously established pattern of indisputably clean trades.

It is for this reason that courts, including the Second Circuit, have consistently approved the admission of "pattern" testimony of this type, in both securities cases and others. *E.g.*, *Russo*, 74 F.3d at 1388-1389; *see also SEC v. U.S. Envtl., Inc.*, No. 94-Civ-6608, 2002 WL 31323832, at *3 (S.D.N.Y. Oct. 16, 2002); *cf. United States v. Brown*, 776 F.2d 397, 401 (2d Cir. 1985); *United States v. Carson*, 702 F.2d 351, 369 (2d Cir. 1983). There can be little doubt that if the challenged trades were *inconsistent* with Mr. Whitman's trading history—for example, if they were of a type, timing, or volume that had no precedent in the fund's previous activities—the government would be arguing that such evidence is highly probative of guilt and pressing for its admission, as it has successfully done in other cases. *E.g.*, *U.S. Envtl.*, 2002 WL 31323832, at *2 (collecting cases). That such "pattern" evidence here undermines rather than supports the government's allegations does not justify any different result, and particularly not where it is necessary to vindicate Mr. Whitman's constitutional right to present witnesses in his defense.

6

### B. Mr. Mayer's Opinions Require Specialized Knowledge.

The challenged portions of Mr. Mayer's testimony also clearly are based upon "specialized knowledge." Mot. 9. To reach his opinions regarding the challenged trades, Mr. Mayer reviewed all of the trades made by Whitman Capital over more than a decade in light of relevant market movements, earnings announcements from public companies, and Whitman Capital's stated investment strategy. Mot. Ex. A 2-3. This assessment plainly required "specialized knowledge," including a thorough understanding of (among other things) the nature and effects of trading decisions on an investment portfolio, factors that normally bear on the valuation of a security for these purposes, put and call options and strategies commonly employed in integrating the use of such options in hedge fund trading, and information that would generally be available and relied upon by an investor. *Id.* Mr. Mayer then assessed each of the challenged trades at issue in this case and conducted qualitative and quantitative comparisons of these trades against the trading history of Whitman Capital to determine whether they were or were not consistent with previously established patterns of trading and strategies employed by the fund. *Id.* at 3. This additional (and critical) layer of analysis required further "specialized knowledge," including an understanding of the differences among the various securities, in both stated value and associated risk, and an ability to account for such differences in comparing one trade (for instance, one allegedly based on material nonpublic information) against others. *Id.* Surely a lay juror could not conduct this sophisticated analysis, much less on the fly during the course of trial, or comprehend the factors relevant to such analysis without expert guidance.

The government offers no real argument to the contrary, other than to assert in a single conclusory sentence that "[t]he jury can consider the historical patterns and the timing of trades, and decide for themselves whether the challenged trades ... were based on inside information." Mot. 9. This is an absurd oversimplification. To construct the relevant "historical patterns," one

cannot simply prepare a timeline of trades in the relevant securities, as the government suggests. *Id.* Rather, it requires detailed consideration of the nature and circumstances of each trade, the context in which that trade was executed (including contemporaneous market movements, the timing of potentially relevant earnings or other announcements by the companies in question), the profits or losses realized by the transactions (including in relation to historical profits and losses), and the stated investment strategy and overall investment holdings of the fund as a whole. Mot. Ex. A 2-3. For example, in testimony rebutting the government's allegations that Mr. Whitman sold "call options" in Marvell based upon negative material nonpublic information—in essence, that Mr. Whitman was betting that the price of Marvell securities would drop—Mr. Mayer will explain that these transactions were not isolated options trades but were instead the sale of "covered calls," call options sold against a very large net long position in Marvell shares. He will explain why they are not in fact bets against Marvell's share price at all, which helps to refute the notion that there was any tip of negative material nonpublic information that prompted them. And Mr. Mayer will also explain that these sales of covered calls were part of an established long-term strategy Whitman Capital had employed in this stock for years. It is unlikely in the extreme that a lay juror would come to court with the experience and knowledge necessary to appreciate these important facts without the assistance of an expert such as Mr. Mayer.[2]

---

[2] The point can be further appreciated by a graphical exhibit Mr. Mayer intends to use during his testimony, which charts Whitman Capital's historical holdings and trading patterns in Marvell securities. *See* Anderson Decl. Ex. B. That chart identifies the different types of trades—including "short call," "long call," and "short put" observed historically in the fund—and specifies the particular transactions challenged by the government. *Id.* The chart, which will illustrate certain critical points about the challenged Marvell trades, plainly requires the "specialized knowledge" of someone like Mr. Mayer to prepare and explain.

8

This is why, again, courts routinely admit precisely this type of testimony, in precisely this type of case, to provide helpful "specialized knowledge" to the jury. *E.g.*, *Russo*, 74 F.3d at 1388-89; *see also Bilzerian*, 926 F.2d at 1294 (expert testimony is "[p]articularly" helpful "in complex cases involving the securities industry"); *U.S. Envtl.*, 2002 WL 31323832, at *2 (same). None of the cases cited by the government excludes such testimony, and each of them is, indeed, utterly inapposite. *See, e.g.*, *Taylor v. Evans*, No. 94-8425, 1997 WL 154010, at *1 (S.D.N.Y. Apr. 1, 1997) (in civil rights case, excluding testimony of "matrimonial attorney" regarding legality of conduct of child welfare agents).[3] The government has offered no basis to rebut the "presumption of admissibility" that attaches to this testimony. *Borawick*, 68 F.3d at 610. It should be allowed.

## II. MR. KELLY'S TESTIMONY CONCERNING INDUSTRY PRACTICE AND TERMINOLOGY IS ADMISSIBLE.

Mr. Kelly was a Managing Director of Morgan Stanley in its research department for almost twenty years, including all of the years of the tech boom and bust. He was one of Wall Street's leading equity analysts in the very sector of high technology that lies at the heart of this case. And he has a tremendous body of knowledge and experience about the business and practice of equity research and analysis on both the buy and sell sides of the market. As the court is aware from previously-filed motions, the manner and methods employed by Mr. Whitman in seeking to obtain information about the financial health and prospects of companies such as Po-

---

[3] The government also suggests that Mr. Mayer may not offer expert opinions regarding certain facts because he has not "ever worked at Whitman Capital" or otherwise participated in the specific conduct that he analyzed. Mot. 10. The argument—which the government also raises as to Mr. Kelly, *id.*—hardly merits response. This is what separates the fact from the expert witness, almost by definition. An expert must of course analyze the facts on which he bases his opinion, Fed. R. Evid. 702(b); *see SEC v. Lipson*, 46 F. Supp. 2d 758, 761 (N.D. Ill. 1998), but need not have *participated* in the conduct in order to analyze it.

lycom, Marvell, and Google lie at the very center of the allegations in this case, and Mr. Whitman's defense to those allegations.

The government challenges aspects of Mr. Kelly's testimony in which he will explain to the jury certain standard practices employed in equity research, as well as the meaning and significance of certain terminology used by those within the industry. This testimony, according to the government, (i) is "irrelevant," (ii) does not require "specialized knowledge," and (iii) would improperly "usurp the Court's role." Mot. 1. These arguments, too, are meritless.

### A. Mr. Kelly's Opinions Are Relevant.

The challenged testimony is directly relevant to the charges against Mr. Whitman. One of the principal issues in this case, as the government's own recent filings reflect, is whether Mr. Whitman's efforts to contact lower-level employees of the companies he was researching—as well as the language he used in discussing these efforts with others—reflected a "corrupt[ ]" intent to seek "inside information" and knowledge that he was in fact receiving such information. Mot. 8; *see also* Def. Mot. in Limine on Financial "Checks," Dkt. No. 60, No. 12-cr-125 (July 16, 2012). Mr. Kelly's testimony bears directly on this issue. He will testify that these efforts, commonly referred to as "company checks," are "standard practice" in the industry, and are not intrinsically corrupt or improper in any way. Mot. Ex. A 7. Mr. Kelly will also explain the meaning of certain phrases that appear in conversations between Mr. Whitman and others—for example, industry jargon such as "getting color" from a senior executive of a company—to assist the jury in understanding what those terms connote and whether they imply improper conduct or information. *Id.* at 6. This testimony is directly relevant to rebutting the prosecution's allegations of wrongdoing.

The government's sole contrary argument is that "[t]he question here [is not] whether, in general, analysts undertake efforts to circumvent company management and speak to lower-level

10

employees," but rather "whether [Mr.] Whitman and others obtained insider information corruptly and deceptively, and through improper means." Mot. 8. That is true, but it again begs the question: in evaluating whether Mr. Whitman's actions were improper, it surely will help the jury to understand the baseline of what is accepted and standard within the industry. Disallowing this testimony would leave the jury vulnerable to being misled about what is or is not indicative of nefarious intentions on the part of an equity research analyst and lacking the context necessary to make an informed judgment whether Mr. Whitman's conduct deviated from accepted norms. Indeed, the government elsewhere has tacitly recognized the importance of how such activity is understood or characterized. It has asserted, for example, that Mr. Whitman's conduct in performing these "company checks" is, in and of itself, proof that Mr. Whitman acted with an intent to deceive *because* that conduct is "corrupt." *Id.* Contrary testimony explaining that such conduct is not necessarily indicative of corruption or an improper purpose is plainly relevant to defending against the government's case.

The Second Circuit and the Southern District of New York have relied on precisely this rationale in admitting such evidence. "Testimony concerning the ordinary practices of those engaged in the securities business is admissible under the same theory as testimony concerning the ordinary practices of physicians or concerning other trade customs: to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." *Marx & Co., Inc. v. Diners' Club, Inc.*, 550 F.2d 505, 508-509 (2d Cir. 1977); *see also, e.g.*, *Bilzerian*, 926 F.2d at 1295; *In re Blech Securities Litigation*, No. 94-7696, 2003 WL 1610775, at *19-21 (S.D.N.Y. Mar. 26, 2003). Unsurprisingly, the government cites no case to support its contrary position.

11

### B. Mr. Kelly's Opinions Require Specialized Knowledge.

It also is clear that Mr. Kelly's testimony is based on "specialized knowledge." Many practices and concepts utilized within the securities industry will be unfamiliar to individuals who have not worked within that field. *See, e.g.*, *SR Intern. Business Ins. Co., Ltd. v. World Trade Center Prop., LLC*, 467 F.3d 107, 132 (2d Cir. 2006) ("[A]n expert may be qualified based on his experience"). A lay juror could not, for example, reasonably be expected to understand the concept of a "channel check" or why a research analyst would attempt to contact a lower-level employee—particularly against the wishes of company management—without an explanation of the way in which equity research analysts relate to company management and go about the business of accurate price discovery in a highly competitive market. *See, e.g.*, *Marx*, 550 F.2d at 508-09. Similarly, a lay juror is unlikely to understand phrases such as "getting color" and "having an edge," which are commonly used within the professional investment community but may have different connotations outside of it (to the extent thy are used at all). *See Bilzerian*, 926 F.2d at 1295. Indeed, to the extent that a lay juror has encountered one of these phrases in everyday conversation, it is particularly important that the juror hear evidence regarding the particular meaning that the phrase has acquired within the securities industry. *See id.*

The government claims that no expert testimony is needed because its own "witnesses will testify … about these terms and put them in context." Mot. 10. That is all well and good, but the defense is also entitled to have witnesses explain disputed evidence. And even if the government's witnesses do testify on these points, it surely does not show that Mr. Kelly's testimony is unnecessary or lacking the requisite "specialized knowledge" to make a worthwhile contribution to the conversation. If anything, it heightens the need for his testimony: insofar as those government witnesses present the government's view of what those phrases mean, or the practices that are standard and accepted within the industry, Mr. Kelly's testimony is all the more

12

essential to a fair trial.  That countervailing view could not be offered by a lay witness, who would have no knowledge or ability to testify as to industry practice, but could be provided only by an expert with experience and specialized knowledge in the field, such as Mr. Kelly.

On this issue, too, the law runs contrary to the government's argument.  Courts consistently recognize such testimony as implicating "specialized knowledge," and therefore admissible under Rule 702.  *E.g.*, *United States v. Cohen*, 518 F.2d 727, 737 (2d Cir. 1975).  Indeed, this is "particularly [true] in complex cases involving the securities industry, [where] expert testimony may help a jury understand unfamiliar terms and concepts."  *Bilzerian*, 926 F.2d at 1294; *see also, e.g.*, *Russo*, 74 F.3d at 1388-89; *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994); *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008); *U.S. Envtl.*, 2002 WL 31323832, at *2; *Blech*, 2003 WL 1610775, at *19.

### C. Mr. Kelly's Opinions Will Not Usurp The Role Of The Court.

The government's final argument, that this testimony will "usurp the role of the court" by allowing Mr. Kelly to opine on applicable legal standards, is easily rejected.  Mr. Kelly will discuss standard industry practice and his understanding of certain phrases, but he will not opine as to whether any particular conduct is legal or whether Mr. Whitman committed insider trading or had the intent to do so.  Mot. Ex. A 6-7.  The only purpose his testimony will serve, as it should, is to provide jurors with essential context and background—from one with recognized experience in the field—against which to evaluate some of the most important evidence in the case.  *See Bilzerian*, 926 F.2d at 1295.  It will remain the exclusive province of the Court to instruct the jury on legal standards by which they should consider the charges and assess the evidence, including the testimony of Mr. Kelly, and the exclusive province of the jury to decide whether the evidence meets those standards.  *See id.*

The government therefore is simply mistaken to characterize this testimony as "little more than [Mr.] Kelly's views on what the law is or should be" or as "tantamount to an argument that [Mr.] Whitman should be found not guilty because 'everyone else is doing it.'" Mot. 12-13. Mr. Kelly will make no such argument. He will testify to his understanding of common practice of equity research analysis and help the jury understand how people like Mr. Whitman customarily perform their roles in the public markets. Without such testimony the jury will have few if any resources to decide between the competing characterizations of the prosecution and the defense as to whether certain behavior or comments by Mr. Whitman are shocking or innocuous. Nor will Mr. Kelly testify as to Mr. Whitman's actual intent, as the government suggests. *Id.* Rather, he will, "based upon his experience, point to factors indicating to him" the significance and connotation of the conduct and conversations involving Mr. Whitman, such as whether they reflect what a reasonable analyst would regard as a transfer of material nonpublic information or as simply predictions, gossip, or an exchange of general views about the market or a company. *Highland Capital*, 551 F. Supp. 2d at 183. It is fully appropriate, as courts have recognized, for an expert to testify as to this sort of information and for a jury to consider it in evaluating the elements of the charges, including the defendant's intent. *See, e.g., id.*

\*   \*   \*

Ultimately, the admissibility of the testimony challenged by the government does not present a close question. The testimony of both Mr. Mayer and Mr. Kelly is the archetype of admissible expert opinion: concededly reliable, plainly relevant, and reflecting deep experience and "specialized knowledge" that will aid the jury's attempt to understand complex facts in an unfamiliar area. That is why in the numerous cases cited above such testimony has been approved, and also why the government can cite no analogous case in which such evidence has

been rejected. Likewise here, and particularly in light of Mr. Whitman's constitutional right to mount an effective defense, the testimony should be allowed.

## CONCLUSION

For the foregoing reasons, the government's motion in limine should be denied and the evidence challenged herein should be admitted at trial.

Dated: July 30, 2012

Respectfully submitted,

 /s/ David L. Anderson
 _____

David L. Anderson
(dlanderson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
(drody@sidley.com)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(bberenson@sidley.com)
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July, 2012, I caused a true and correct copy of (1) Defendant Douglas F. Whitman's Response to the Government's Motion to Preclude Certain Expert Testimony; and (2) a Declaration of David L. Anderson in Support of Defendant Douglas F. Whitman's Response to the Government's Motion to Preclude Certain Expert Testimony, and accompanying exhibits; to be served via ECF filing notification on the following counsel of record:

> Jillian Berman, AUSA
> Christopher LaVigne, AUSA
> United States Attorney's Office
> Southern District of New York
> One Saint Andrew's Plaza
> New York, NY 10007

Dated:  July 30, 2012                    /s/ David L. Anderson
                                         _____
                                         David L. Anderson
                                         (dlanderson@sidley.com)
                                         (Admitted *pro hac vice*)
                                         SIDLEY AUSTIN LLP
                                         555 California Street
                                         San Francisco, CA
                                         (415) 772-1200
                                         (415) 772-7400 (fax)

                                         *Attorneys for Douglas F. Whitman*