# EXHIBIT A



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

| | |
|---|---|
| BEIJING | LOS ANGELES |
| BRUSSELS | NEW YORK |
| CHICAGO | PALO ALTO |
| DALLAS | SAN FRANCISCO |
| FRANKFURT | SHANGHAI |
| GENEVA | SINGAPORE |
| HONG KONG | SYDNEY |
| HOUSTON | TOKYO |
| LONDON | WASHINGTON, D.C. |

bberenson@sidley.com
(202) 736 8971

FOUNDED 1866

July 16, 2012

**By Email and First Class Mail**

Christopher L. LaVigne
Jillian B. Berman
Assistant United States Attorneys
U.S. Department of Justice
Southern District of New York
The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, NY 10007

Re:   *United States v. Doug Whitman*, 12 Cr. 125 (JSR)

Dear Mr. LaVigne and Ms. Berman:

On Thursday, July 5, 2012, defendant Doug Whitman disclosed his intention to present testimony from two expert witnesses, one of whom will also serve as a summary witness for the defense. You have disclosed to us that you have no present intention of presenting expert testimony but have indicated that you will notify us promptly if your intention changes in this regard.

Under these circumstances, Mr. Whitman is not required to provide you with any further expert witness disclosures under Rule 16 or other pertinent authority. Nonetheless, to enable a fair and orderly presentation of evidence at trial, and in keeping with the professionally courteous way in which we have been handling this matter together, this letter will describe the qualifications of Michael G. Mayer, CFA, CFE, and George Kelly, and summarize the opinions and other testimony they will offer, together with a brief description of the bases for their expert opinions.

The substance of the anticipated testimony is based upon the case as now defined by the indictment, the bill of particulars, the government's 404(b) notice, and the government's designation of recorded calls. The testimony may change, and Mr. Whitman reserves the right to amend this disclosure or designate additional experts, if warranted by subsequent changes in the



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 2

bill of particulars, 404(b) notice, or designation of recorded calls; by the production or designation of materials by the government pursuant to Rule 16, 18 U.S.C. ¶ 3500, or other discovery obligations; by unanticipated developments in other discovery; by unanticipated evidence offered by the government in its case-in-chief; or by changes in the government's stated plans with respect to presentation of any expert testimony in the prosecution's case.

If you believe that you are entitled to any additional expert disclosure at this time, please let us know so that we may consider your position.

<u>Michael G. Mayer</u>

*Qualifications:*

Michael G. Mayer is a Vice President of Charles River Associates ("CRA"). Mr. Mayer earned his B.S. with Distinction from the Kelly School of Management at Indiana University in 1983 and an MBA from the Kellogg Graduate School of Management in 1985. Mr. Mayer is a Chartered Financial Analyst and a Certified Fraud Examiner. He has been a guest speaker at the SEC, and regularly teaches at the White Collar Crime Seminar at the Federal Reserve Board/FDIC's Seidman training center in Washington DC. His *curriculum vitae* is attached hereto as Exhibit 1.

Mr. Mayer has furnished expert analysis and testimony in numerous securities-related disputes, on issues including investment suitability, trading, portfolio management, and derivatives including options. He is regularly called upon to analyze complex securities and explain their structures. Mr. Mayer has served as an advisor or consultant to the United States Department of Justice, the United States Securities and Exchange Commission, the Resolution Trust Corporation, the FDIC, the Chicago Stock Exchange, the Chicago Mercantile Exchange, the Chicago Board of Trade, and several state and municipal treasuries.

*Summary of opinions and bases for opinions:*

Mr. Mayer is being offered as both a summary witness pursuant to Fed. R. Evid. 1006 and an expert witness pursuant to Fed. R. Evid. 702.

Mr. Mayer was asked to review and analyze eleven years of portfolio and trading records for Whitman Capital (hereinafter also referred to as "the Fund") from 2000 through 2010; publicly available data regarding market movements, stock price movements and related measures of investor interest in stocks, and historical information relating to financial news during certain periods of time; documents reflecting Whitman Capital's stated investment



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 3

strategy and philosophy; and documents reflecting the government's allegations in this case, including the indictment, bill of particulars, and 404(b) notice. Although we believe all of case-specific material is already within your possession, for the avoidance of doubt and to facilitate your review, a complete set of the portfolio and trading data Mr. Mayer analyzed is being provided contemporaneously herewith under separate cover from Michael Mann in our New York office. Mr. Mann will also transmit to you the Whitman Capital documents that reflect the fund's stated trading strategy upon which Mr. Mayer has relied.

Mr. Mayer was asked to identify the trades that the government has alleged were illegal, to correlate trades with allegations that material, non-public information ("MNPI") was passed to Mr. Whitman, to evaluate the patterns of Whitman Capital's trading in the stock or related securities of the three companies at issue (Polycom, Google, and Marvell), and to evaluate Whitman Capital's trading patterns in other securities. His findings and expert opinions are summarized below, together with the bases therefor. In addition, when exhibit lists and trial exhibits are exchanged next week, you will receive a full set of the summary charts we propose to introduce into evidence through Mr. Mayer. Those charts will provide additional details of Mr. Mayer's anticipated testimony, including, for example, the specific trades Mr. Mayer will be citing as comparables for the challenged trades at issue in this case.

As a summary witness, Mr. Mayer will identify and particularize the six sets of trades the government has identified in the bill of particulars as allegedly having been made based upon MNPI (two for Polycom, from January 12-30, 2006 and July 11-12, 2007; one for Google, on July 19, 2007; and three for Marvell, on October 8, 2008, from October 23-27, 2008, and on January 22, 2009).[1] He will identify the transactions relevant to the positions in question in these trades, and will identify and explain the nature of the transactions, their volume and timing, and the extent to which they resulted in gains or losses to the Fund. Mr. Mayer will also identify circumstances in which the Whitman Capital trading records do not reflect trades corresponding to instances in which MNPI was allegedly passed to Mr. Whitman. Mr. Mayer will also summarize the voluminous trading records for Polycom and Marvell in graphical charts that will display for the jury the nature and extent of the Fund's holdings and trading in the securities of these companies over time, including periods both before and after the challenged trades.

With respect to the six challenged trades in the securities of Polycom, Marvell, and Google (each of which trades may have involved multiple individual purchase and sale transactions, as noted above), Mr. Mayer will offer his expert opinion that they are consistent

---

[1] Unless otherwise revised in the amended, final bill of particulars due today to the defense, the defense will proceed in reliance on the fact that these are the *only* trades the government alleges and is prepared to prove Mr. Whitman made based in whole or in part on MNPI. If there are any changes to the list of challenged trades in a final bill of particulars, Mr. Mayer's analysis will be modified accordingly.



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 4

with previously observed trades and patterns of trading by the Fund. In evaluating consistency, Mr. Mayer has examined three primary factors: timing of the trade in relation to events such as earnings announcements, size/risk of the trade, and tools employed in executing the trade. In addition, Mr. Mayer is expected to testify that the observed historical patterns, as well as the challenged trades, are consistent with the stated investment strategy of the Fund. Because options are involved in numerous of the challenged trades, Mr. Mayer will also explain options to the jury and how to understand the challenged options trades.

With respect to Google specifically, Mr. Mayer will explain that the challenged trade is consistent with previous trades by Whitman Capital in Google during 2005. He will present market data indicating a rise in short interest in Google stock around the time of Mr. Whitman's challenged trade in July, 2007. He will opine that the characteristics of the challenged Google trade are consistent both with the previous Google trades and with trades in other securities by Whitman Capital, as well as with the Fund's stated investment strategy. He will also offer the opinion that the risk associated with the trade was not unusual or disproportionate for Whitman Capital in light of its trading history.

With respect to Polycom, Mr. Mayer will describe the nature and extent of the Fund's holdings in Polycom historically, and the volume and frequency of trading in Polycom. Regarding the January, 2006 trade, Mr. Mayer will explain the dates and volumes of purchases and sales of Polycom stock, and relate them to the timeline of the allegations in the case. He will opine that the characteristics of the challenged Polycom trade in January, 2006 are consistent with prior trades in Polycom and in other securities by Whitman Capital, as well as with the Fund's stated investment strategy. He will offer the opinion that the risk associated with the trade was not unusual or disproportionate for Whitman Capital in light of its trading history. Mr. Mayer is also expected to testify that, in certain respects, the trading pattern observed in the challenged January, 2006 Polycom trade is inconsistent with a hypothesis that it was based upon the receipt of MNPI. These include the fact that purchases of Polycom stock in January, 2006 began prior to any alleged tip; that the January, 2006 stock purchases were modest in size compared to prior trades and positions in Polycom stock by the Fund; and that the challenged trade was similar to an earlier trade as to which there is no allegation of improper behavior.

Regarding the second challenged Polycom trade in July, 2007, Mr. Mayer will explain that, although the trade had a number of components including short sales of stock, purchases of put options, and sales of call options, it is predominantly, and in purpose and effect, a short stock trade. Mr. Mayer will explain what such a trade is, and will offer the opinion that a short trade of this type is consistent with both the Fund's stated investment strategy and its observed trading patterns and history. He will opine that the characteristics of the challenged Polycom trade in July, 2007 are consistent with other trades in Polycom and in other securities by Whitman



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 5

Capital. He will offer the opinion that the risk associated with the trade was not unusual or disproportionate for Whitman Capital in light of its trading history. Mr. Mayer is also expected to testify that the trading pattern observed in the challenged July, 2007 Polycom trade is inconsistent with a hypothesis that it was based upon the receipt of MNPI based upon the modest size of the overall position compared to positions held in Polycom in previous years.

Regarding Marvell, Mr. Mayer will describe the extent of the Fund's holdings in Marvell historically, and the volume and frequency of trading in Marvell. With respect to the challenged trades, Mr. Mayer will explain that many are the sale of covered calls. Mr. Mayer will explain the concept of selling a covered call, and what kind of trade that represents. He will offer the opinion that these trades are not bets that the price of Marvell stock will decline but rather should be regarded as a means of harvesting premium dollars to reduce the original purchase price of the stock or provide a modest cushion against loss. Mr. Mayer will then use historical trading data to demonstrate that Whitman Capital had an established pattern of employing this strategy with respect to its holdings in Marvell and will opine that the challenged covered call transactions are consistent with this pre-existing pattern, including in respect of their size and timing.

With respect to the challenged Marvell transactions that did not involve the writing of a covered call—sales of stock on October 8, 24, and 27, 2008 and January 22, 2009, and a purchase of stock on October 24, 2008—Mr. Mayer will explain that these Marvell stock transactions were comparable in character and size with other transactions in Marvell stock.

Mr. Mayer will also testify to the timing and circumstances of the 2008 financial crisis and resulting market decline. He will testify that all of the challenged Marvell trades occurred during the period of the crisis and after the market, including Marvell stock, began a significant decline in the fall of 2008. Mr. Mayer will testify to the substantial decline in the overall value of Whitman Capital's holdings in Marvell during the period of the conspiracy alleged in Count One of the indictment. He will also explain that, even assessed in isolation, the challenged trades in Marvell in aggregate resulted in losses for Whitman Capital. Mr. Mayer will offer the opinion that the challenged Marvell trades are consistent with the pattern of trading observed in the Whitman Capital portfolio as a whole during the period of the financial crisis and market collapse, as measured by the decline in total account equity, the increase in Whitman Capital's net cash position, the increase in its short percentage, and comparable trades made in the securities of other issuers during the same period.

Finally, Mr. Mayer is expected to testify that, in certain respects, the trading pattern observed in the challenged Marvell trades is inconsistent with their having been based on negative MNPI regarding Marvell. The lack of profitability of the trades, their consistency with established patterns of trading by Whitman Capital in Marvell securities, the fact that the Fund



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 6

remained a significant net long in Marvell at all times, and the broader context of the financial crisis and market collapse all, in Mr. Mayer's opinion, are generally inconsistent with the trades having been based upon negative MNPI regarding Marvell.

George Kelly

*Qualifications:*

George Kelly is currently CEO of GJKelly Associates, LLC, a consulting firm specializing in the communications and network equipment industries. Prior to founding that firm in 2007, he spent twenty-three years as an equity research analyst and industry investment banking consultant in the field of communications networking technology as a Managing Director of Morgan Stanley. Eighteen of those years were spent in Global Equity Research as a Senior Research Analyst for communication equipment and group leader in the technology research group. He was consistently ranked in the top four positions in the Institutional Investor All-Star rankings. He began his career with a combined fifteen years at IBM and AT&T and holds a B.S Industrial Engineering (1967) from the Newark College of Engineering (now known as New Jersey Institute of Technology). His *curriculum vitae* is attached hereto as Exhibit 2.

*Summary of opinions and bases for opinions:*

Mr. Kelly is being called to explain the role in the public securities markets of equity research analysts and their counterparts on the buy side of the market, and to explain accepted usages and industry practice within the field of equity research. Mr. Kelly knows Mr. Whitman and had a professional relationship with him during some of Mr. Kelly's years at Morgan Stanley. He is aware that Mr. Whitman's background was as an equity research analyst on both the buy side and sell side of the market and will testify that Mr. Whitman employed that general approach in his work as a portfolio manager. Nonetheless, with minor exceptions, Mr. Kelly's testimony will focus primarily on general industry practice in the field of equity research and analysis, especially in the technology sector.

We have identified Mr. Kelly as a potential expert and disclosed the substance of his anticipated testimony in this disclosure to account for the potential need for him to offer certain expert opinions as described below; however, we expect that much of his testimony could properly be characterized as factual in nature. Mr. Kelly will explain what equity researchers do and how they do it, including the relationship between researchers and incumbent company management, and their differing incentives and modes of interaction. He will explain accepted methods of performing equity research. And he will define accepted industry usages and meanings of terms such as "getting color," "having an edge," and "getting a read."



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 7

Mr. Kelly will explain that equity research analysts have frequent and regular direct interaction with senior management of the companies that they cover, and that they have such contact in a variety of settings. He will explain the value of such meetings to the analysts and to the public markets, and will opine that such direct contacts and communications are customary and appropriate.

He will also explain that high-quality equity research analysts do not confine themselves to publicly reported financial statements or official communications from corporate management. Instead, analysts constantly question, check, and verify the representations of management, thereby contributing to accurate price discovery for publicly traded securities. Analysts do so through a variety of means, including checks and contacts with lower-level employees of the companies they cover, channel checks with suppliers and distributors of those companies, competitor checks, and checks with other industry sources. Mr. Kelly will offer the opinion that all such checks are standard practice in the industry, and are openly acknowledged and accepted as such. Because management sometimes attempts to frustrate analyst efforts to speak to lower-level company employees, in part to maintain a tighter control of the flow of information to the investment community, analysts also commonly employ techniques to initiate or maintain communications with such employees. These techniques are designed to counteract management's efforts at information control, protect sources inside companies, and facilitate communication. Mr. Kelly will testify that these techniques are not improper in themselves, even though they may be contrary to the wishes of management, and that they do not necessarily suggest any intent to obtain material, non-public information. Depending upon the government's proof at trial, Mr. Kelly may be asked to offer his opinion of techniques such as the use of Skype or *67 to facilitate incoming telephone calls.

We expect that Mr. Kelly will explain that analysts on some occasions hear from corporate officers or employees in the course of their work information that might qualify as material, non-public information. He will explain that it can sometimes be very difficult to tell whether information falls into this category and explain why that is so. He will explain that the consequences of learning such information are simply that one may not trade.

Mr. Kelly will also explain the nature, type, and frequency of other conversations and interactions that buy-side and sell-side equity research analysts have with other market participants who are not corporate officers or employees. He will describe certain aspects of the culture of Wall Street, and the way in which market participants tend to express opinions, conjecture, and views to one another. He will explain that discussions of anticipated quarterly earnings announcements and company performance are virtually constant among market participants of all kinds, and that such conversations typically include considerable amounts of rumor, gossip, speculation, opinion, and predictions that are difficult to differentiate from actual



Christopher L. LaVigne
Jillian B. Berman
July 16, 2012
Page 8

information and whose reliability is often difficult to assess. The line between what a reasonable analyst would regard as actual information and more general, less specific, or less reliable views can be exceptionally unclear. Again depending upon the government's proof at trial, Mr. Kelly may be asked to review passages of tape-recorded telephone calls introduced into evidence during the government's case-in-chief and to offer his opinion concerning their significance and connotations.

Very truly yours,

Bradford A. Berenson

Attachments

# EXHIBIT 1



## MICHAEL G. MAYER, CFA, CFE
Vice President

M.B.A. Finance and
Management Policy,
Kellogg Graduate School
of Management,
Northwestern University

B.S. Marketing and
Management Policy,
Indiana University
School of Business

### CONSULTING EXPERIENCE

Michael G. Mayer is a Vice President of Charles River Associates. He has performed numerous business valuation assignments and has evaluated numerous claims for economic loss in a range of business, banking, securities, derivatives and insurance disputes. He has also performed financial investigations of brokerage firms, hedge funds, savings & loans, banks, and insurance companies as well forensic accounting work in FCPA cases. He has testified as an expert with respect to financial and economic issues including investment suitability, portfolio management, valuation, lost profits, loss of principal and prejudgment interest.

In litigation matters, Mr. Mayer has been most actively involved in the determination of damages in securities fraud and breach of fiduciary duty cases, broker/dealer litigation, failed mergers/acquisitions, bankruptcy, lender liability, and shareholder disputes. He is regularly called upon to analyze complex securities and explain their structures. Additionally, he has significant experience in other areas of commercial litigation including, antitrust, accountant's liability, breach of contract, business interruption, and insurance. He has assisted counsel with respect to discovery and document management, deposition and cross-examination assistance and trial exhibit preparation.

Outside of litigation, Mr. Mayer regularly consults on financial issues relating to mergers, acquisitions, joint ventures, and licensing. He has analyzed and negotiated deal structures on behalf of clients in a broad range of industries ranging from pharmaceuticals to industrial rubber products. Additionally, he has performed business and intangible asset valuations for some of the largest companies in the country. Mr. Mayer has been widely quoted in the press including the Wall Street Journal, CFO Magazine, Inside Counsel Magazine, Securities Law360, and the Chicago Tribune, among others.

### EDUCATIONAL BACKGROUND AND SELECTED AFFILIATIONS

- MBA, Finance and Management Policy, Kellogg Graduate School of Management, Northwestern University
- B.S. with Distinction, Marketing and Management Policy, Indiana University School of Business
- Academic Awards include Beta Gamma Sigma Honorary Fraternity, Sigma Phi Epsilon Merit Scholarship and Dean's List
- Chartered Financial Analyst (CFA)
- Certified Fraud Examiner (CFE)
- International Society of Investment Analysts
- Investment Analysts Society of Chicago, Ethics Committee
- Association for Investment Management and Research

- Chicago Derivatives Society
- Licensing Executives Society
- Course Leader, American Management Association
- Arbitration Panelist, FINRA
- Instructor, Advanced White Collar Crime Conference, Federal Financial Institutions Examination Council
- Former Vice-Chairman, Board of Directors, New Tech Tool, L.L.C.
- Principal, Ascent Financial, L.L.C.
- Executive Committee, Charles River Associates
- Member, Board of Trustees, Chicago Yacht Club Foundation

## OTHER INFORMATION

Mr. Mayer has testified as an expert in more than 70 matters and notably has served as Damages Consultant to the Enron Creditors Committee. Twice, Mr. Mayer has spoken to sections of the American Bar Association on issues surrounding expert disclosure. Additionally, Mr. Mayer developed and instructed the American Management Association's two-day course on *Forensic Accounting and Litigation Support* - and has been a regular instructor on fraud issues at the *Advanced White Collar Crime* school and the *Mortgage Fraud Symposium* for the Federal Financial Institutions Examination Council (FFIEC members include the FDIC, OTS, Board of Governors of the Federal Reserve, Office of the Comptroller of the Currency and the NCUA). He has also served as a guest speaker at the Securities and Exchange Commission and University of Chicago Graduate School of Business.

Mr. Mayer co-founded Chicago based IPC Group, Inc. in 1988. In 1999, IPC Group was acquired by InteCap, Inc. InteCap, Inc. was subsequently acquired by Charles River Associates in 2004. Mr. Mayer has served on the Executive Committee of all three firms. Prior to 1988, Mr. Mayer was a Financial Consultant for a large national business consulting firm and a Merchandise Analyst for a major national department store chain.

## PREVIOUS TESTIMONY

Securities and Exchange Commission v. Morando Berrettini and Ralph J. Pirtle, United States District Court, Northern District of Illinois, Case No. 10-cv-01614, April 17, 2012, Affidavit

Richie Risk-Linked Strategies Trading (Ireland), Limited and Richie Risk-Linked Strategies Trading (Ireland) II, Limited v. Coventry First, LLC, The Coventry Group, Inc., Montgomery Capital, Inc., and LST I, LLC, United States District Court, Southern District of New York, Case No. 07-cv- 03494 (DLC), February 21, 2012, Deposition Testimony

Securities and Exchange Commission v. Compania Internacional Financiera S.A., Coudree Capital Gestion S.A., and Chartwell Asset Management Services, United States District Court, Southern District of New York, Case No. 11 Civ. 4904 JPO ECF Case, January 26, 2012, Deposition Testimony

Securities and Exchange Commission v. Luis Martin Caro Sanchez, United States District Court, Northern District of Illinois, No. 10-cv-5268, October 13, 2011, Affidavit



In Re: January 2, 2006 Sago Mine Incident, Circuit Court of Kanawha County, West Virginia, No. 06-C-1684, August 31, 2011, Deposition Testimony

Picatinny Federal Credit Union v. Federal National Mortgage Association, Superior Court of New Jersey, Law Division: Morris County, No L-713-09. May 5, 2011, Deposition Testimony

Securities and Exchange Commission v. R. Brook Dunn and Nicholas P. Howey, United States District Court, District of Nevada, No. 2:09-cv-02213, April 28, 2011, Deposition Testimony

Williams Electronic Games, Inc., et al v. Arrow Electronics, Inc. et al, Circuit Court of Cook County, Illinois, Law Division, No. 06 CH 19128, September 13, 2010, Deposition Testimony

The Estate of William Bass, Deceased, et al v. Melvin Katten and Katten Muchin Zavis Rosenman, a Professional Corporation, Circuit Court of Cook County, Illinois, Law Division, No. 08 L 1224, September 1, 2010, Deposition Testimony

Apparel Sales, Inc. v. Cellcards of Illinois, LLC and Coinstar, Inc., Circuit Court of Cook County, Illinois, Chancery Division, No. 05 CH 15012 July 30, 2009 and September 9, 2009, Deposition Testimony

Temporary Services Insurance Ltd (Cayman) v. Michael J. O'Donnell and Advantage Services Group, et al., United States District Court Middle Florida, Orlando Division, No. 6:07-cv-1507-JA-UAM, June 4, 2009, Deposition Testimony

Phones Plus, Inc. Plan Administrator On Behalf of Itself and All Others Similarly Situated v. The Hartford Financial Services Group and The Hartford Life Insurance Company, United States District Court for the District of Connecticut, June 2, 2009, NO. 3:06-CV-1835, Deposition Testimony

SER Holdings, Inc. v. Vista Equity Fund II, LP, et al, American Arbitration Association, September 16, 2008, Deposition Testimony.

In the Matter of Application of Brad Berk, et al v. Pali Holdings, Inc., Supreme Court of the State of New York, County of New York, September 16, 2008, Affidavit.

Funai Electric Company, Ltd. v. Daewoo Electronics Corporation, et al., United States District Court, Northern District of California, May 8, 2008, Deposition Testimony.

Bradley McGill and Delta Rangers, Inc. v. CME Group and the Board of Trade of the City of Chicago, Inc., American Arbitration Association, January 26, 2008, Arbitration Testimony.

LaSalle Technology Inc. et al. v. ABN AMRO, et al., Circuit Court of Cook County, State of Illinois, October 16, 2007, Deposition Testimony.

Federal National Mortgage Association v. National Union Fire Insurance Company of Pittsburgh, PA., et al., United States District Court, District of Columbia, October 11, 2007, Deposition Testimony.

C. Clark Hodgson, Jr., as receiver for Philadelphia Asset Management Co., et al. v. Man Financial Inc., et al., United States District Court, Eastern District of Pennsylvania, May 30, 2007, Deposition Testimony.

Richard and Catherine Lopardo v. Financial Square Partners, SG Cowen Securities Corporation and Lehman Brothers, Inc., National Association of Security Dealers, April 25, 2007, Arbitration Testimony.

Renaissance Learning, Inc. v. Omron Corporation, et al., Circuit Court for Winnebago County, State of Wisconsin, January 2, 2007, Affidavit.

Securities and Exchange Commission v. Daniel Calugar and Security Brokerage, Inc., United States District Court, District of Nevada, July 30, 2004 and May 17, 2006, Affidavits.

M.J. Select Global Limited (In Compulsory Liquidation) v. Oceanic Bank and Trust Company Limited, et al., Commonwealth of the Bahamas in the Supreme Court, October 18, 2005, Trial Testimony.

Alan Yale and Judith Yale v. SG Cowen Securities Corporation, Lehman Brothers Inc., et al., National Association of Security Dealers, April 18, 2005, Arbitration Testimony.

TruServ Corporation v. Ernst & Young LLP, American Arbitration Association, February 29, 2004, Deposition Testimony, January 27, 2005, March 1, 2005, Arbitration Testimony.

Estate of Ann Cuneo v. S.G. Cowen Securities Corporation et al., National Association of Security Dealers, November 5, 2004, Arbitration Testimony.

Carl Fazio, Sr. et al. v. Lehman Brothers Inc. and S.G. Cowen Securities Corporation, New York Stock Exchange, September 24, 2004, Arbitration Testimony.

Sandra Schuessler v. SG Cowen Securities Corporation et al., New York Stock Exchange, July 19, 2004, Arbitration Testimony.

Maria Giordano v. SG Cowen Securities Corporation et al., New York Stock Exchange, June 17, 2004, Arbitration Testimony.

Kaye D. Jacobs v. Lehman Brothers Inc. and SG Cowen Securities Corporation, New York Stock Exchange, June 10, 2004, Arbitration Testimony.

Washington Mutual, Inc., et al. v. Gulf Insurance Company and Great American Insurance Company, United States District Court, Southern District of Texas, Houston Division, No. 4:02CV02265, March 23, 2004, Deposition Testimony.

Anthony Sarantakis, et al. v. Hambrecht & Quist, Inc., Lehman Brothers Inc., SG Cowen Securities Corporation, et al., New York Stock Exchange, February 17, 2004, Arbitration Testimony.

Power Resources Operating Company, Inc. v. Sprague Energy Corp., In the Court of Common Pleas Stark County, Ohio, No. 2003 CV 0108, November 21, 2003, Deposition Testimony, December 12, 2003, Trial Testimony.

Hamburger Versicherungs, et al. v. Interpool, Inc., et al., United States District Court, Southern District of New York, No. 02-CIV-10225, November 7, 2003, Deposition Testimony.

Verizon Wireless et al. v. Primeco Wireless Communications LLC, American Arbitration Association, No. 14-199-01143-02, September 26, 2003, Deposition Testimony.

Pulse Software, LLC v. NCMIC Insurance Company, United States District Court, District of New Jersey (Newark), No. 01-CV-4626, August 27, 2003, Deposition Testimony.



Kevin Boyle *et al.* v. Letco Partners, LLC *et al.*, Before the Chicago Board Options Exchange Director of Arbitration, No. 02 M 008, May 21, 2003, Testimony at Hearing.

The Union Illinois 1995 Investment Limited Partnership., *et al.* v. Union Financial Group, Ltd., Court of Chancery of the State of Delaware in and for New Castle County, No. 19586, April 11, 2003, Deposition Testimony, September 29, 2003, Trial Testimony.

Frank J. Wsol, Sr., and the International Brotherhood of Teamsters Local 710 Pension Fund, *et al.* v. Fiduciary Management Associates Inc. and East West Institutional Services, Inc., United States District Court, Northern District of Illinois, Eastern Division, No. 01 C 3438, September 13, 2002, Affidavit Testimony.

In Re: Enron Corp., *et al.*, Debtors, United States Bankruptcy Court, Southern District of New York, No. 01-16034, July 30, 2002, Affidavit Testimony.

Novak *et al.* v. InCapital Holdings *et al.*, Circuit Court of Cook County, State of Illinois, No. 01 CH 06147, April 26, 2002, Deposition Testimony.

Bell-Litho, Inc. v. James J. Gruper and Northland Graphic Supplies, *et al.*, Circuit Court of Cook County, State of Illinois, No. 02 CH 6726, April 12, 2002, Affidavit Testimony.

Enterprise Rent-A-Car Company, *et al.* v. Fireman's Fund Insurance Companies, *et al.*, Circuit Courts of St. Louis, State of Missouri, No. 0000-000270 J CV, June 1, 2001, Deposition Testimony.

Eastown Distributors, Co. *et al.* v. Fred R. Long, Esq., West Coast Industrial Relations Association, Inc, *et al.*, Circuit Court for the County of Wayne, State of Michigan, No. 98-837089, April 4, 2001, Affidavit Testimony.

ABB Power T&D Company, Inc. v. Alstom Esca Corporation, *et al.*, United States District Court, Northern District of California, San Jose Division, No. C99-21242 SW PVT ENE, March 15-16, 2001, Deposition Testimony, and September 2002, Trial Testimony.

Pennecom, B.V. v. Elektrim, S.A., International Court of Arbitration of the International Chamber of Commerce, No. 10 609/BWD, January 30, 2001, Testimony at Hearing.

Frank J. Wsol, Sr., and the International Brotherhood of Teamsters Local 710 Pension Fund, *et al.* v. Great Northern Asset Management *et al.*, United States District Court, Northern District of Illinois, Eastern Division, No. 99 C 2004, February 4, 2000, Affidavit, August 10, 2000, Deposition Testimony.

Donna Lee H. Williams, Insurance Commissioner for the State of Delaware, *et al.* v. UFH Apartments, Inc., *et al.*, United States District Court for the Southern District of New York, No. 97-CV-9050 (BDP), May, 2000, Affidavit, October, 2000, Deposition and Trial Testimony.

Frank J. Wsol, Sr., and the International Brotherhood of Teamsters Local 710 Pension Fund, *et al.* v. Fiduciary Management Associates Inc. and East West Institutional Services, Inc., United States District Court, Northern District of Illinois, Eastern Division, No. 99 C 1719, Various Dates in 1999 and 2000, Trial and Deposition Testimony.

Lyme Investments, Ltd. v. Frank J. Husic *et al.*, United States District Court, Northern District of Texas, Fort Worth Division, No. 4-98-CV-357-Y, October 7, 1999, Deposition Testimony.

Arthur B. Laffer v. ClickTheButton.Com, Inc. et al., United States District Court, Southern District of California, No. CV 99-1473 IEG (CGA), Various dates in September, 1999, Affidavits.

James J. Morrow, et al. v. Theodore H. Roberts, LaSalle-Talman Bank et al., Circuit Court of Cook County, Illinois, County Department, Chancery Division, No. 96 CH 11208, Affidavit and Deposition Testimony, various dates in 1999.

Bard Manufacturing Co., et al. v. Crispaire Corporation, United States District Court, Northern District of Ohio, Western Division, No. 3:95-CV-7103, May 25, 1999, Affidavit Testimony.

Roosevelt University and Theodore Gross v. Auditorium Theatre Council, Inc., Fred Eychaner, and Betty Lou Weiss, Appellate Court of Illinois, First Judicial Circuit, No. 94 CH 11328, February 19, 1999, Affidavit Testimony.

Sidney R. Wilhite, Louisiana Plastic Industries, Inc. and Louisiana Plastic Converting Corp. v. KPMG Peat Marwick and Ernst & Young, Fourth Judicial District Court, Parish of Ouchita, State of Louisiana, No. 90-1510, March 24, 1998, Deposition Testimony.

California Ironworkers Funds v. Loomis, Sayles & Co. et al., United States District Court, Central District of California, No. N6-4036 WJR (JGx), Various Dates, Deposition Testimony and Testimony at Trial.

Archer-Daniels-Midland Company, et al. v. Phoenix Assurance Company of New York, Marine Indemnity Insurance Company of America, Commonwealth Insurance Company, Navigators Insurance Company, Albany Insurance Company, and Hartford Fire Insurance Company, United States District Court, Southern District of Illinois, No. 95-4001 JLF, September 23, 1997, Deposition Testimony.

J. Michael Brown v. Trailmobile, Inc., Circuit Court of Cook County, Illinois, Law Division, No. 94L-014827, August, 19, 1997, Deposition Testimony.

Syncor International Corporation v. Sierra Pharmacy Services, Inc., and Dennis J. Latino, United States District Court, District of Nevada, No. CV-N-96-00155-HDM, May 19, 1997, Deposition Testimony.

Robinson & Belew, Inc. v. Ranger Insurance Company, United States District Court, Western District of Tennessee, Eastern Division, No. 96-1050, March 21, 1997, Deposition Testimony, September 17, 1997, Trial Testimony.

Syncor International Corporation v. Premier Pharmacy Services, P.C., and Stephen L. Piepenbrink, United States District Court, Southern District of Indiana, District of Indianapolis, No. IP94 1557 C, January 15, 1997, Deposition Testimony.

Rodger M. Arst v. Stifel, Nicolaus & Company, Inc. and Odis E. Shoaf, Jr.,United States District Court, District of Kansas, No. 93-1299-JTM, November 7, 1996, Affidavit.

IBEW Local Union Nos. 570 and 518 and Saguaro Chapter NECA Pension Trust Fund, et al. v. EMG Advisors, Inc. and Raymond James & Associates, Inc. et al., United States District Court, District of Arizona, No: CV 95-277-TUC-ACM, October 14, 1996, Affidavit.

Scattered Corporation v. Midwest Clearing Corporation, Circuit Court of Cook County, Illinois, County Department, Law Division, No. 93 L 10216, March 15, 1996, Deposition Testimony.



Michael J. Starshak v. Morris Anderson & Associates, Ltd., et al., Circuit Court of Cook County, County Department, Chancery Division, No. 94 CH 2872, December 20, 1995, Deposition Testimony.

Marketview Software, Inc. v. Wesley G. Cole, MVS Enterprises and Susan M. Cole, Circuit Court of Cook County, Illinois, County Department, Chancery Division, No. 93 CH 010764, September 22, 1995, Deposition Testimony and September 27, 1995, Trial Testimony.

In Re Cuyahoga County S.A.F.E. Fund, Cuyahoga County Grand Jury, Cleveland, Ohio, May 16, 1995, Testimony before the Grand Jury.

In Re Chicago Flood Litigation, ITT Hartford v. City of Chicago and Great Lakes Dredge & Dock Company, Circuit Court of Cook County, Illinois, County Department, Law Division, No. 92 L 14894 Cons. w/ 92 L 5422, March 23, 1995, Deposition Testimony.

Circle Metal Specialties, Inc., v. Peter Stohr, Circuit Court of Cook County, Illinois, Chancery Division, No. 91 CH 3842, February 24, 1995, Deposition Testimony.

George Weiland and the Trustees of the Bridge, Structural and Reinforcing Ironworkers Local #1 Pension Trust Fund, et al. v. M.D. Sass Associates, Inc., et al., United States District Court, Eastern District of Louisiana, MDL Docket N. 863, No. 92-2684 "G", October 27, 1994, Affidavit and Deposition Testimony.

Sora Loan Corporation v. George Bagley & Company, et al., Circuit Court of Cook County, Illinois, Law Division, No. 90 L 15167, August 4, 1994, Deposition Testimony.

State of West Virginia v. Morgan Stanley & Co. Inc. Salomon Brothers, Inc., and Goldman Sachs & Co., Circuit Court of Kanawha County, West Virginia, No. 89-C-3700, Various Dates in 1991, 1992, and 1993, Affidavits, Deposition Testimony, and Testimony at Trial.

City State Bank and Sharon Bancshares, Inc. v. Borod & Huggins, et al., In the 27th Judicial District of the State of Tennessee, # 1663, October 5 and 6, 1992, Deposition Testimony.

Sweet N' Counter, Inc. v. Joseph R. Marcus, Circuit Court of Cook County, Illinois, Law Division, No. 86 L 24788, January 4, 1992, Deposition Testimony.

Chicago Truck Drivers, Helpers and Warehouse Workers Union (Independent) Pension Fund v. Wolf, Webb, Burk and Campbell, American Arbitration Association Arbitration, Chicago, Illinois, April 30, 1991, Testimony at Hearing.

Firemen's Annuity and Benefit Fund of Chicago v. Union Planters National Bank, U.S. District Court for the Northern District of Illinois, #87 C 0106, December 10, 1990, Affidavit.

Merl L. Marcy and Gerald J. Marcy v. Merlin L. Markiewicz and Inland Real Estate Corporation, et al., Circuit Court of Cook County, Illinois, Law Division, No. 86 CH 3588, October 20, 1990, Deposition Testimony.

Amanda Kane v. Shearson Lehman Hutton, Inc. and Robert E. Dunlap, New York Stock Exchange Arbitration, Boston, Massachusetts, January 25, 1990, Testimony at Hearing.

## SPEECHES AND PUBLICATIONS

Fundamentals of Event Studies, Guest Speaker, United States Securities and Exchange Commission (SEC), Division of Enforcement, Chicago, Ilinois, June 25, 2012

Finanical Crimes Seminar, Instructor, FDIC/FRB/FFIEC, Washington, DC, March 12, 2012, June 11, 2012.

Use of Experts, Guest speaker, Washington & Lee University School of Law, Securities Fraud Practicum, Arlington, VA, April 13, 2011

Leveraging Outside Expertise, Guest speaker, United States Securities and Exchange Commission (SEC), Division of Enforcement, Chicago, Illinois, October 14, 2010

Experts in ADR Forums, Guest speaker, Loyola University Law School, Alternative Dispute Resolution class,  April 21, 2010, Chicago, Illinois, November 16, 2010

Mortgage Fraud and the Economy, Mortgage Fraud Symposium sponsored by the Federal Financial Institutions Examination Council (FFIEC).  Arlington, Virginia, July 14-15, 2009

Handling Experts:  How To Properly Disclose Experts Without Losing Your License and Being Sued for Malpractice, Panelist, American Bar Association Insurance Coverage Litigation Committee CLE Seminar, Tucson, Arizona, February 27 – March 1, 2008.

Experts and Ethics: Are the Rules Changing? Presentation to the American Bar Association Tort Trial and Insurance Conference, San Antonio, Texas, April 14-16, 2005.

Detecting and Investigating Fraud, Advanced White Collar Crime Conference, Instructor, Sponsored by the Federal Financial Institutions Examination Council. (FFIEC Members: Board of Governors of the Federal Reserve System, Federal Deposit Insurance Corporation, National Credit Union Administration, Office of the Comptroller of the Currency, Office of Thrift Supervision), Arlington, Virginia, Quarterly, August 1999 – December 2001.

Derivatives Litigation, Presentation to the Investment Analysts Society of Chicago Derivatives Group, July 7, 1999.

Fundamentals of Forensic Accounting, with Sterl Greenhalgh, Sponsored by the American Management Association, Atlanta, New York City, San Francisco, Washington DC, Various dates in 1993 and 1994.

Cablecorp, A Case Study in Damages Analysis, Presented to Professor Roman Weil's Advanced Issues in Accounting Class, University of Chicago Graduate School of Business, Spring 1989.

**EXHIBIT 2**

George J. Kelly

Communications Industry Consultant

GJKelly Associates, LLC

227 Lees Hill Road, Basking Ridge NJ  07920

Tel: (973)441-2060   Fax: (973)441-2053   Mobile: (201)919-7650

**September 2007 – Present.  CEO, GJKelly Associates, LLC.** This consulting company was founded to provide strategic and financing advice to communications equipment companies of all sizes, both public and private. Services include reviews of, and recommendations for improvement of, corporate strategic plans, partnering activities and financing alternatives.

Activities and client references will be provided upon request.

**October 1984 – September 2007.  Managing Director, Morgan Stanley & Co.** Morgan Stanley is one of the world's most respected global investment banks. Its global technology practice has been consistently regarded as one of the best in terms of financing activity and M&A advisory services.

2002 – 2007. Investment Banking Division, Technology Group (New York). Reported directly to the Global Head of Technology Investment Banking. My role was to act as Morgan Stanley's Senior Advisor to communications equipment companies and work with local coverage teams to win and help execute financing and M&A advisory mandates.

1984 – 2001. Equity Research, Technology Group (New York). Reported directly to the Head of Global Equity Research. I had two roles in Equity Research. As Group Leader I was involved in leading the efforts of Morgan Stanley's technology research team. As a team, we were consistently ranked as one of the top two technology research organizations by institutional investors.

Secondly, during my 18 years in Equity Research I was a highly regarded Communications Equipment Analyst and was consistently ranked in the top three positions in the annual Institutional Investor Magazine All-Star Poll. This is a highly publicized event where the top institutional investors cast ballots for the analysts they believe are the most knowledgeable in

their respective industry segments. As a Senior Analyst I had multiple roles including researching the communications equipment industry trends, providing specific written research and stock recommendations on the 12 – 15 companies in my coverage universe and visiting the top institutional investors globally to discuss my research.

Additionally, I worked with our Investment Banking team on financing and M&A advisory activities. I participated in over 30 IPOs. Many of those companies, like Cisco, Akamai and Broadcom, were very transformative and helped revolutionize the technology used in building the Internet infrastructure.

During my twenty-three years at Morgan Stanley I progressed through a steady series of promotions from starting in a non-officer role when I joined in 1984 to Vice President, then Executive Director and finally to Managing Director in 1996.

**July 1982 – September 1984. Vice President, Equity Research – A. G. Becker Paribas.** This was my entry into Wall Street Equity Research. Due to poor financial results Banque Paribas sold parts of the firm to Merrill Lynch and ceased operations in the rest.

**June 1981 – June 1982. Division Manager - AT&T, American Bell Division.** American Bell was a unit of AT&T focused on selling unregulated equipment to U.S. enterprise customers. Previously, customer premise equipment such as PABX's, key systems, modems, etc. could only be offered on a tariff basis. Recent changes in the U.S. regulatory environment allowed AT&T to create an unregulated subsidiary to handle such equipment sales which led to the creation of American Bell. To launch this new unit AT&T hired dozens of senior executives and managers from IBM to lead the new division.

I entered American Bell as a District Manager in Systems Marketing and was promoted to Division Manager in less than one year. The forty people in my organization were responsible for the marketing introductions of new products including the System 75 and System 85 PABX's and Merlin Key Systems.

**June 1967 – May 1981.** IBM Corporation.

**1979 – 1981. Senior Systems Evaluation Specialist, Data Processing Product Group.** I worked with IBM's Systems Communications Division (SCD) executives on product plans and budgets for front end processors and Local Area Networks.

1978-1979. **Senior Planner, Systems Communications Division.** I was part of a team that evaluated the strategic alternatives available to IBM to enter the U.S. PABX market including internal development, partnering or acquisition.

1975-1978. **Systems Engineering Manager, Data Processing Division.** I was the manager of 15 Systems Engineers in the Westchester, New York Branch Office

1973-1975. **Systems Marketing Specialist, Data Processing Division.** I worked on developing marketing plans for Intermediate Systems in the Eastern Region.

1970-1973. **Marketing Representative, Data Processing Division.** I sold IBM mainframe systems to manufacturing industry customers in northern and central New Jersey.

1967-1970. **Advisory Systems Engineer, Data Processing Division.** I helped manufacturing industry customers install mainframe and communications systems.


**Education:**  B.S Industrial Engineering (1967) Newark College of Engineering (now known as New Jersey Institute of Technology)

**Personal:** Married, two daughters