UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                              :

UNITED STATES OF AMERICA,         :
                                     :   ECF CASE

                 Plaintiff,     :   12 Cr. 125 (JSR)
                                     :

         vs.                      :
                                     :

DOUG WHITMAN,               :
                                     :

               Defendant.    :
                                     :
------------------------------------------------------------- X

## DEFENDANT DOUGLAS F. WHITMAN'S SUPPLEMENTAL MEMORANDUM OF LAW ON THE ELEMENTS OF <u>SPECIFIC INTENT AND FIDUCIARY DUTY</u>

David L. Anderson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
555 California Street
San Francisco, CA
(415) 772-1200
(415) 772-7400 (fax)

David M. Rody
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
(212) 839-5599 (fax)

Bradford A. Berenson
(Admitted *pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Douglas F. Whitman*

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... ii

I.    THE ESSENTIAL ELEMENT OF SPECIFIC INTENT APPLIES TO ALL
      ELEMENTS OF THE OFFENSE. ...................................................................... 1

II.   FIDUCIARY DUTIES ARE DEFINED BY STATE LAW. ...............................5

CONCLUSION.........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Atherton v. FDIC*,
    519 U.S. 213 (1997)...............................................................................8, 9

*Barker v. Henderson, Franklin, Starnes & Holt*,
    797 F.2d 490 (7th Cir. 1986) ...............................................................7, 10

*Carpenter v. United States*,
    484 U.S. 19 (1987)......................................................................................2

*Dirks v. SEC*,
    463 U.S. 646 (1983)..................................................................................3, 5

*FAA v. Cooper*,
    132 S. Ct. 1441 (2012)................................................................................2

*Ingram v. United States*,
    360 U.S. 672 (1959)......................................................................................4

*Kamen v. Kemper Fin. Servs., Inc.*,
    500 U.S. 90 (1991).......................................................................................8

*O'Melveny & Myers v. FDIC*,
    512 U.S. 79 (1994).......................................................................................8

*Pryor v. U.S. Steel Corp.*,
    794 F.2d 52 (2d Cir. 1986).........................................................................10

*SEC v. Anton*,
    No. 06 Civ. 2274, 2009 WL 1109324 (E.D. Pa. Apr. 23, 2009) ...............3

*SEC v. Cuban*,
    634 F. Supp. 2d 713 (N.D. Tex. 2009) ...............................................6, 7, 10

*SEC v. Cuban*,
    620 F.3d 551 (5th Cir. 2010) ......................................................................9

*SEC v. Maxwell*,
    341 F. Supp. 2d 941 (S.D. Ohio 2004) .....................................................3

*Skilling v. United States*,
    130 S. Ct. 2896 (2010)..........................................................................3, 7, 9

*State Teachers Ret. Bd. v. Fluor Corp.*,
    592 F. Supp. 592 (S.D.N.Y. 1984).....................................................2, 3, 4, 5

*Stoneridge Inv. Partners v. Scientific-Atlanta*,
   552 U.S. 148 (2008)........................................................................................8

*United States v. Adler*,
   274 F. Supp. 2d 583 (S.D.N.Y. 2003).............................................................6

*United States v. Bahel*,
   662 F.3d 610 (2d Cir. 2011)...........................................................................3

*United States v. Brumley*,
   116 F.3d 728 (5th Cir. 1997) .........................................................................7

*United States v. Chestman*,
   947 F.2d 551 (2d Cir. 1991)......................................................................5, 6

*United States v. Frost*,
   125 F.3d 346 (6th Cir. 1997) .........................................................................9

*United States v. Hausmann*,
   345 F.3d 952 (7th Cir. 2003) .........................................................................6

*United States v. Kaiser*,
   609 F.3d 556 (2d Cir. 2010)...........................................................................4

*United States v. Margiotta*,
   688 F.2d 108 (2d Cir. 1982)...........................................................................6

*United States v. McGeehan*,
   584 F.3d 560 (3d Cir. 2009)...........................................................................5

*United States v. Murphy*,
   323 F.3d 102 (3d Cir. 2003)......................................................................6, 7

*United States v. O'Hagan*,
   521 U.S. 642 (1997)........................................................................................2

*United States v. Porcelli*,
   865 F.2d 1352 (2d Cir. 1989).........................................................................3

*United States v. Rajaratnam*,
   802 F. Supp. 2d 491 (S.D.N.Y. 2011)....................................................2, 3, 4

*United States v. Regent Office Supply Co.*,
   421 F.2d 1174 (2d Cir. 1970).........................................................................2

*United States v. Sancho*,
   157 F.3d 918 (2d Cir. 1998)...........................................................................6

*United States v. Starr*,
   816 F.2d 94 (2d Cir. 1987)..................................................................2, 3, 4

*United States v. Urciuoli*,
   513 F.3d 290 (1st Cir. 2008)...........................................................................6

*United States v. Walker*,
   191 F.3d 326 (2d Cir. 1999)............................................................................2

*United States v. Walker*,
   490 F.3d 1282 (11th Cir. 2007) .......................................................................9

*United States v. Weyhrauch*,
   548 F.3d 1237 (9th Cir. 2008) ...............................................................6, 7, 9

*United States v. Winans*,
   612 F. Supp. 827 (S.D.N.Y. 1985)...................................................................2

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994)...........................................................................................5

## STATUTES

15 U.S.C. § 78ff(a)...............................................................................................4

18 U.S.C. § 1341 ..................................................................................................1

## REGULATIONS

17 C.F.R. § 240.10b-5(a) ......................................................................................1

Defendant Douglas F. Whitman respectfully submits this supplemental brief concerning the specific intent and fiduciary duty elements of insider trading under federal securities law, with specific reference to the guidance that may be derived from authorities construing the federal mail fraud statute.

Those authorities confirm two fundamental points. *First*, both of these offenses require specific intent, with the knowledge element applying to *all* elements of the crimes, including (in mail fraud) that the defendant knew the victim suffered harm as a result of the fraud and (in insider trading) that the defendant knew the company's information was disclosed in exchange for a personal benefit. *See infra* Part I. *Second*, the existence of a fiduciary or equivalent duty cannot be decided by reference to the federal criminal statute itself, but must be based on an established outside body of law—here, state law. *See infra* Part II.

For these reasons, as well as those set forth in our prior submissions on these issues,[1] the jury should be instructed on the elements of the offense in accordance with the proposed jury instructions submitted by Mr. Whitman.

## I.    THE ESSENTIAL ELEMENT OF SPECIFIC INTENT APPLIES TO ALL ELEMENTS OF THE OFFENSE.

The federal offenses of insider trading and mail fraud share the same "intent" requirement, and use the same language to express it:  federal securities law requires proof that the defendant engaged in a "scheme, or artifice to defraud," 17 C.F.R. § 240.10b-5(a) (citing 15 U.S.C. § 78j(b)); the federal mail fraud statute likewise demands proof of a "scheme or artifice to defraud," 18 U.S.C. § 1341.  Accordingly, interpretation of one provision properly informs inter-

---

[1] *See* Def. Mot. in Limine on Personal Benefit, Dkt. No. 57 (July 16, 2012); Def. Mot. in Limine on Fiduciary Duties, Dkt. No. 52 (July 16, 2012); *see also* Def. Supp. Mem. on Fiduciary Duties, Dkt. No. 90 (Aug. 1, 2012).

pretation of the other.  *See, e.g.*, *FAA v. Cooper*, 132 S. Ct. 1441, 1454 (2012) ("same language in similar statutes [should] have the same meaning").  Indeed, considering similar analogies in the misappropriation context, the Supreme Court described mail fraud as "of the same species" as securities fraud, and quoted approvingly the government's own argument that mail fraud precedents were "a particularly apt source of guidance" in interpreting federal securities law.  *United States v. O'Hagan*, 521 U.S. 642, 654 (1997) (internal quotation marks omitted).

This relationship confirms what courts in this district have held:  to support a conviction for insider trading, the defendant must be shown to have acted with a specific intent to defraud. *State Teachers Ret. Bd. v. Fluor Corp.*, 592 F. Supp. 592, 594–95 (S.D.N.Y. 1984) (requiring "knowledge of *each element*, including the personal benefit") (emphasis in original); *United States v. Rajaratnam*, 802 F. Supp. 2d 491, 498-99 (S.D.N.Y. 2011).  A long line of cases in the mail fraud context has interpreted the language "scheme or artifice to defraud" as requiring the government to prove that the defendant acted with the "specific intent to harm or defraud the victims of the scheme."  *United States v. Walker*, 191 F.3d 326, 334 (2d Cir. 1999); *see also Carpenter v. United States*, 484 U.S. 19, 28 (1987) ("specific intent to defraud").  These holdings are "equally applicable" in the securities context.  *United States v. Winans*, 612 F. Supp. 827, 847 (S.D.N.Y. 1985).

This specific intent requires, for mail fraud, that the defendant at least knew of the fraudulent nature of the conduct.  *United States v. Starr*, 816 F.2d 94, 98 (2d Cir. 1987).  It is not enough that that the defendant was merely aware of the conduct itself:  he or she must have understood that the conduct was deceptive or misleading.  *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180 (2d Cir. 1970).  For example, in cases involving bribery or kickbacks, it does not suffice for the prosecution to prove that the defendant knew that money had been

transferred; rather, the government must also show that the defendant understood the money had

been given "in exchange for" a corrupt *quid pro quo*.  *United States v. Bahel*, 662 F.3d 610, 635-

36 (2d Cir. 2011) (emphasis omitted); *see also Skilling v. United States*, 130 S. Ct. 2896, 2926

(2010).  Similarly, in cases of fraud upon an individual, it must be shown that the defendant

"contemplated some actual harm or injury to their victim[ ]," and knew that the victim had been

"cheated" out of the benefit of the offered agreement.  *E.g.*, *Starr*, 816 F.2d at 98 (emphasis

omitted).  The defendant must, in other words, understand and appreciate that the victim actually

has been defrauded.  *Id.*[2]

The same is true in the securities context.  A defendant cannot be convicted of securities

fraud unless he or she knew and understood that the conduct at issue was itself fraudulent.  *See*

*SEC v. Maxwell*, 341 F. Supp. 2d 941, 947–48 (S.D. Ohio 2004); *SEC v. Anton*, No. 06 Civ.

2274, 2009 WL 1109324, at *9 (E.D. Pa. Apr. 23, 2009).  In insider trading cases, this requires

proof that the defendant had knowledge of "each element," including that the information at is-

sue had been disclosed by a company insider in exchange for a "personal benefit."  *State Teach-*

*ers Ret. Bd.*, 592 F. Supp. at 594; *Rajaratnam*, 802 F. Supp. 2d at 498-99.  The transfer of ma-

terial nonpublic information by a company insider is not itself fraudulent or unlawful, but be-

comes so only when the transfer is done for a personal benefit to the insider.  *Dirks v. SEC*, 463

U.S. 646, 662 (1983) ("[T]he test" for determining whether an insider has improperly given ma-

terial, non-public information to a tippee is "whether the insider personally will benefit ... from

his disclosure.").  Accordingly, a defendant who is an alleged "tippee" of inside information

cannot be found to have an intent to defraud unless he or she knows that an insider disclosed the

---

[2] "Specific intent" in this context requires knowledge that the conduct was fraudulent, not that
the conduct actually violated a particular statute.  *United States v. Porcelli*, 865 F.2d 1352, 1358
(2d Cir. 1989).

information in breach of fiduciary duties and in exchange for a personal benefit.  *State Teachers Ret. Bd.*, 592 F. Supp. at 594–95 ("Derivative liability can attach only if the tippee recognizes that the relationship between tipper and tippee is such that the tippee has effectively become a 'participant after the fact in the insider's breach.'") (quoting *Dirks*, 463 U.S. at 659)); *Rajaratnam*, 802 F. Supp. 2d at 498-99.[3]

This interpretation finds further support in language of the Securities Exchange Act requiring proof that the defendant acted "willfully."  15 U.S.C. § 78ff(a).  The willfulness requirement has been interpreted strictly in criminal insider trading cases, because "insider trading does not necessarily involve deception, and it is easy to imagine an insider trader who receives a tip and is unaware that his conduct was illegal and therefore wrongful."  *United States v. Kaiser*, 609 F.3d 556, 569 (2d Cir. 2010).  Indeed, it would be anomalous to conclude that securities fraud—which requires *both* a "scheme to defraud" and a "willful[]" violation—has a lower *mens rea* than mail fraud, which requires a "scheme to defraud" but otherwise sets forth no *mens rea* element at all.

Requiring proof of specific intent to violate the law, as well as knowledge of all essential factual elements of the offense, including personal benefit, is especially important in a case like

---

[3] The intent requirement is the same for the conspiracy charges as for the substantive charges. *Ingram v. United States*, 360 U.S. 672, 678 (1959) ("Conspiracy to commit a particular substantive offense cannot exist without at least the degree of criminal intent necessary for the substantive offense itself.").  The government argues that "there can be no requirement that the Government establish for [the conspiracy charges] that the defendant 'knew that the company insiders ... acted to gain a personal benefit for themselves,'" because a conspiracy charge does not require proof that the defendant actually committed the underlying substantive offense.  Gov't Response to Def. Mot. in Limine on Knowledge of Personal Benefit at 3, Dkt. No. 77 (July 23, 2012).  But, while the government need not prove that an insider *actually* obtained a personal benefit in exchange for inside information to establish a conspiracy charge, it must prove that the defendant *intended* for an insider to obtain such a personal benefit.  *See, e.g.*, *Starr*, 816 F.2d at 98 (in mail fraud, while "the government is not required to prove that an intended victim was actually defrauded," it must prove "that defendants possessed a fraudulent intent").

this one, where a fund manager such as Mr. Whitman relies on third-party researchers or other intermediaries.  Managers in these situations are entitled to assume that these researchers are obeying the law, and they cannot be deemed to have a "specific intent" to defraud a company and its shareholders unless they have a particular reason to know that the information provided by the researcher or analyst was obtained improperly through payments to a company insider—*i.e.*, through transfer of a "personal benefit."  *See Dirks*, 463 U.S. at 662–63.  Without such knowledge, a defendant such as Mr. Whitman would have no intent to defraud; indeed, he would have no wrongful intent at all.

Thus, in the securities context, as in the mail fraud context, the government must prove that the defendant acted with "specific intent" with respect to all elements of the offense.  *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994) (scienter requirement applies to each "elemental fact" that makes conduct criminal).  For an insider trading charge, this requires, among other elements, that the defendant knew that the material nonpublic information had been transferred by an insider in exchange for a "personal benefit."  *State Teachers Ret. Bd.*, 592 F. Supp. at 594.

## II.    FIDUCIARY DUTIES ARE DEFINED BY STATE LAW.

Unlike specific intent, as to which the statutory language for both mail fraud and securities law is similar and the intent requirement serves the same function, the element of fiduciary duty serves somewhat different roles under federal securities and mail fraud statutes.[4]  So while breach of a fiduciary or equivalent duty is an element of both insider trading and honest-services

---

[4] *Compare United States v. McGeehan*, 584 F.3d 560, 568 (3d Cir. 2009) (describing duty requirement for mail fraud as a "limiting principle" on scope of statute), *with United States v. Chestman*, 947 F.2d 551, 568 (2d Cir. 1991) (characterizing duty requirement for insider trading as extending liability under securities laws).

fraud,[5] mail fraud cases are not as directly helpful in interpreting this aspect of the federal securities laws.  To the extent these authorities are relevant, however, they support the rule we previously have articulated: state law governs the issue of fiduciary duty.

Courts assessing fiduciary duty in the mail fraud context routinely have looked to state law to define the existence and scope of that duty.  Several cases have expressly held that "state law *must* provide the specific honest services owed by the defendant in a fiduciary relationship." *United States v. Murphy*, 323 F.3d 102, 116 n.5 (3d Cir. 2003) (emphasis added) (quoting *United States v. Brumley*, 116 F.3d 728, 734 (5th Cir. 1997)).[6]  Other courts, including the Second Circuit, have relied on state law to determine whether the defendant breached a cognizable "legal duty" for these purposes, while declining to decide whether it is "necessary" to do so in all circumstances.  *E.g.*, *United States v. Urciuoli*, 513 F.3d 290, 298 (1st Cir. 2008); *see also, e.g.*, *United States v. Hausmann*, 345 F.3d 952, 956 (7th Cir. 2003); *Sancho*, 157 F.3d at 921; *United States v. Margiotta*, 688 F.2d 108, 124 (2d Cir. 1982), *recognized as abrogated in United States v. Adler*, 274 F. Supp. 2d 583, 587 (S.D.N.Y. 2003).  Those cases that decline to consider state law often involve charges against public officials—who have been held to owe an independent, federally recognized duty to the public at large, *United States v. Weyhrauch*, 548 F.3d 1237, 1245 n.5 (9th Cir. 2008)—and often explicitly recognize that a different rule may apply in cases

---

[5] *Chestman*, 947 F.2d at 568; *United States v. Sancho*, 157 F.3d 918, 921 (2d Cir. 1998).  While this case has been charged as a "classical" insider trading case, *see* Def. Mot. in Limine on Personal Benefit at 5 n.4, Dkt. No. 57 (July 16, 2012), the same element—of a "fiduciary duty or similar relationship of trust and confidence"—applies to "misappropriation" cases.  *Chestman*, 947 F.2d at 566.

[6] The decision of the District Court for the Northern District of Texas in *SEC v. Cuban*, 634 F. Supp. 2d 713 (N.D. Tex. 2009), although subsequently reversed by the Fifth Circuit (without analysis of this particular point), offers a good example of how state law properly applies to supply the relevant fiduciary (or equivalent) duty standard in this context.  *Id.* at 720-22, *rev'd*, 620 F.3d 551 (5th Cir. 2010)

involving private actors, whose relationships have traditionally been governed by law of the states.  *Id.*  So while jurisprudence in this area is marked by neither "clarity [n]or consistency," *Skilling*, 130 S. Ct. at 2929, courts generally accept that the applicable fiduciary duty must be defined by reference to a body of law other than the mail fraud statute itself, which will often, if not invariably, be state law.

The reasons for this are clear.  As with federal securities law, nothing in the text of the mail fraud statute defines the duties an individual may owe, or the circumstances in which a breach may be recognized, or in any way indicates that the federal judiciary ought to attempt to craft a body of federal common law on the subject.[7]  *See, e.g.*, *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 496 (7th Cir. 1986); *see also Brumley*, 116 F.3d at 734 ("We find nothing to suggest that Congress was attempting in § 1346 ... to establish ... [a federal] ethical regime."); *Cuban*, 634 F. Supp. 2d at 720 ("The law of insider trading is not based on a federal statute ....").  It would, indeed, hardly be reasonable to hold that the breach of fiduciary duty— required to prove a violation of these statutes—is found in the statutes themselves.  Such an analysis would be self-evidently "circular."  *Barker*, 797 F.2d at 496.  The requisite duties must, rather, "come from a [source] outside securities [or mail fraud] law."  *Id*.  Unless another statutory scheme defines and imposes duties of this sort, this source must be found in state law.  *Id.*; *see also Murphy*, 323 F.3d at 104 ("Without the anchor of a fiduciary relationship established by state or federal law, it was improper for the District Court ... to create one.").

This approach also is compelled by longstanding principles governing federal common law.  The Supreme Court repeatedly has admonished, including in the securities context, that

---

[7] Notably, the government still has not identified any source of law, other than federal common law, that might define the "duty" applicable here.  Gov. Supp. Mem. on Fiduciary Duties at 3, Dkt. No. 91 (Aug. 1, 2012) ("Gov. Supp.").

courts are not free to fill "interstices" in federal statutes through judge-made federal common law; "matters left unaddressed in ... a [federal statutory] scheme are presumably left subject to the disposition provided by state law." *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 85-86 (1994); *see also Stoneridge Inv. Partners v. Scientific-Atlanta*, 552 U.S. 148, 165 (2008); *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 95 (1991).  This is particularly true when the "matter[ ] left unaddressed" is one that has traditionally been governed by state law—including, as relevant here, the existence and scope of "fiduciary duty."  *Atherton v. FDIC*, 519 U.S. 213, 219-20 (1997); *O'Melveny*, 512 U.S. at 88-89.  Only in the truly "extraordinary case[ ]" where there is shown to be a "significant conflict between some federal policy or interest and the use of state law," may federal common law be created.  *O'Melveny*, 512 U.S. at 80, 88-89.  Here, the only such interest even articulated by the prosecution is a general plea for "uniformity," *e.g.*, Gov. Supp. 3, but the Supreme Court repeatedly has held that this is not the type of "specific, concrete federal policy" that might justify federal common lawmaking.[8]  *Id.*  The "interstices" in the fiduciary duty elements of federal securities and mail fraud law must therefore be filled not by creating federal common law but by "incorporat[ing] state law."  *Kamen*, 500 U.S. at 95; *see Atherton*, 519 U.S. at 219-20.

Those courts that have reached other conclusions in the context of mail fraud (no court has held otherwise in the securities field) have either misapplied, or failed to apply, these foundational principles.  Most simply assert that "[f]ederal law governs the existence of fiduciary duty

---

[8] It also is difficult to see how the government's argument for a federal common law of fiduciary duty would serve the claimed interest in uniformity.  On the government's own account, state common law still could "help to inform" whether a duty exists as a matter of federal common law, and federal courts would decide for themselves—presumably on an *ad hoc* basis—whether a particular principle of state law should be incorporated into federal law.  Gov. Supp. 5.

under the mail fraud statute" without recognizing or addressing the underlying issues.[9]  Cases

that do address the issue in greater detail generally rely on the same "generic" interest in uniformity of federal law that the Supreme Court specifically has rejected.[10]  None offers a justification

for creating a body of federal common law that is in any way consistent with the principles discussed above.

There is simply no permissible basis to create a new body of federal common law of fiduciary duty in securities fraud cases.  To do so would violate the precepts stated above and

render the field hopelessly vague and indeterminate, calling the constitutionality of these provisions into serious doubt.  This was the core of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896 (2010).  In *Skilling*, the Court invalidated much of the case law addressing honest services fraud under the mail fraud statute—including many of the cases discussed

above—on the ground that those cases disclosed no consistent limiting principle and had found

an actionable breach of fiduciary duty in a wide and ever-changing array of contexts.  *Id.* at

2929-30; *see also id.* at 2935-38 (Scalia, J., concurring in judgment).  To adopt a similarly vague

federal common law conception of fiduciary duty here—and particularly one that, as the government advocates, *see supra* note 8, would unpredictably look to state law in some undefined

way—would introduce the same problem into federal securities law.  The sounder approach is

the one already accepted in this and other circuits:  This Court should hold that fiduciary duty for

purposes of an insider trading charge must be defined by reference to established bodies of ap-

---

[9] *United States v. Frost*, 125 F.3d 346, 366 (6th Cir. 1997); *see also, e.g.*, *Cuban*, 620 F.3d at 555; *United States v. Walker*, 490 F.3d 1282, 1299 (11th Cir. 2007).

[10] *Compare Weyhrauch*, 548 F.3d at 1245-46, *with Atherton*, 519 U.S. at 218; *see also id.* ("[T]he existence of related federal statutes [does not] automatically show that Congress intended courts to create federal common-law rules ....")

plicable state law.[11]  *See Barker*, 797 F.2d at 496; *Pryor v. U.S. Steel Corp.*, 794 F.2d 52, 58 (2d Cir. 1986)

## CONCLUSION

For the foregoing reasons, the Court should instruct the jury in accordance with Mr. Whitman's proposed instruction on specific intent and fiduciary duties.

---

[11] As explained in earlier filings, the applicable state law in this case is that of California.  Def. Supp. Mem. on Fiduciary Duties, Dkt. No. 90 (Aug. 1, 2012).  California law defines the circumstances under which an individual will be deemed to owe a "fiduciary duty" to a company, as well as when an agreement between an individual and a company may give rise to an equivalent "relationship of trust and confidence."  *Id.* at 5 (quoting *Chestman*, 947 F.2d at 567); *cf. Cuban*, 634 F. Supp. 2d at 727 (issue of whether agreement establishes fiduciary or equivalent duty is governed by "[s]tate common law").

Dated:  August 6, 2012                    Respectfully submitted,

                                          /s/ David L. Anderson
                                          _____

                                          David L. Anderson
                                          (dlanderson@sidley.com)
                                          (Admitted *pro hac vice*)
                                          SIDLEY AUSTIN LLP
                                          555 California Street
                                          San Francisco, CA
                                          (415) 772-1200
                                          (415) 772-7400 (fax)

                                          David M. Rody
                                          (drody@sidley.com)
                                          SIDLEY AUSTIN LLP
                                          787 Seventh Avenue
                                          New York, New York 10019
                                          (212) 839-5300
                                          (212) 839-5599 (fax)

                                          Bradford A. Berenson
                                          (bberenson@sidley.com)
                                          (Admitted *pro hac vice*)
                                          SIDLEY AUSTIN LLP
                                          1501 K Street, N.W.
                                          Washington, D.C. 20005
                                          (202) 736-8000
                                          (202) 736-8711 (fax)

                                          *Attorneys for Douglas F. Whitman*

11

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 6th day of August, 2012, I caused a true and correct copy of

Defendant Douglas F. Whitman's Supplemental Memorandum of Law on the Elements of Spe-

cific Intent and Fiduciary Duty to be served via ECF filing notification on the following counsel

of record:

> Jillian Berman, AUSA
> Christopher LaVigne, AUSA
> United States Attorney's Office
> Southern District of New York
> One Saint Andrew's Plaza
> New York, NY 10007

Dated:  August 6, 2012                                    /s/ David L. Anderson
                                                         ―――――――――――――――――

                                                         David L. Anderson
                                                         (dlanderson@sidley.com)
                                                         (Admitted *pro hac vice*)
                                                         SIDLEY AUSTIN LLP
                                                         555 California Street
                                                         San Francisco, CA
                                                         (415) 772-1200
                                                         (415) 772-7400 (fax)

                                                         *Attorneys for Douglas F. Whitman*